**CONFIDENTIAL**
**FILED UNDER SEAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MHL CUSTOM, INC., <br><br> Plaintiff, <br><br> v. <br><br> WAYDOO USA, INC. and SHENZHEN WAYDOO INTELLIGENCE TECHNOLOGY CO., LTD, <br><br> Defendant. | C.A. No. 21-0091-RGA <br><br> **CONFIDENTIAL – FILED UNDER SEAL** |

## NOVEMBER 10, 2022 LETTER TO THE HONORABLE MARY PAT THYNGE FROM BLAKE BENNETT

Dennis D. Murrell (KY 84017, *pro hac vice*)
dmurrell@middletonlaw.com
Robert J. Theuerkauf (KY 89068, *pro hac vice*)
rjt@middletonlaw.com
Brian P. McGraw (KY 90447, *pro hac vice*)
bmcgraw@middletonlaw.com
Megan E. Gibson (KY 97237, *pro hac vice*)
mgibson@middletonlaw.com
**MIDDLETON REUTLINGER**
401 S. Fourth Street, Suite 2600
Louisville, Kentucky 40202-3410
Telephone: (502) 584-1135

Blake A. Bennett
bbennett@coochtaylor.com
**COOCH AND TAYLOR, P.A.**
The Nemours Building
1007 N. Orange Street, Suite 1120
Wilmington, DE 19899
Telephone: (302) 984-3889

*Attorneys for Plaintiff/Counter Defendant, MHL Custom, Inc.*

**November 10, 2022**

**CONFIDENTIAL**
**FILED UNDER SEAL**

The Honorable Judge Mary Pat Thynge
United States District Court for the District of Delaware
844 North King Street
Wilmington, DE 19801-3555

Dear Judge Thynge,

Defendants seek to force MHL to produce the following: (1) MHL's intellectual property enforcement insurance policy; (2) "all communications" between MHL and anyone else related to the enforcement policy; and (3) all legal opinions of counsel provided "to any party related to the policies." (The "Requested Materials"). Defendants' request should be denied because: (a) the Requested Materials fall outside the scope of permissible discovery, (b) production of the Requested Materials is disproportionate to the needs of the case, and (c) such production would require the disclosure of privileged information. Despite multiple "meet and confer" conferences over the course of months, Defendants have not been able to articulate, and MHL still doesn't understand, why Defendants are seeking this information.

For background, MHL obtained an Intellectual Property Infringement Enforcement Cost Reimbursement Insurance Policy through Intellectual Property Insurance Services Corporation ("IPISC"), who is a managing general agent for insurance carriers who issue intellectual property insurance policies ("the Policy"). *See* Declaration of Chuck Baxter ("Baxter Dec."), ¶ 2, attached as Ex. 1. For further background on IPISC and what it does, please refer to paragraphs 3 through 8 of the attached Declaration. The Policy generally covers MHL's assertion of, *inter alia*, patent infringement claims asserted under the patents-in-suit.

Defendants first claim that the Requested Materials, namely the Policy itself, should have been disclosed through Plaintiff's initial disclosures under Rule 26(a)(1)(A)(iv). However, Plaintiff was under no obligation to disclose or produce the Policy under Rule 26 because the

<u>**CONFIDENTIAL**</u>

<u>**FILED UNDER SEAL**</u>

Policy is not an insurance agreement "under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." In prior communications, counsel for Defendants argued that since it filed counterclaims against MHL the policy should have been disclosed. However, MHL's enforcement policy has nothing to do with Defendants declaratory judgment counterclaims. The only financial-related judgment that could even possibly enter against MHL on those counterclaims would be a judgment for attorneys' fees. MHL does not believe that IPISC would be obligated to satisfy or otherwise indemnify MHL for such an award under the Policy.

Defendants next argue that their requests for MHL to produce "all documents" concerning "any communications" related to the patents-in-suit or concerning any financial interest in the outcome of the litigation, triggered an obligation for MHL to produce the Requested Materials. Defendants ignore the fact the MHL immediately objected to those requests as being overly broad and disproportionate (in addition to being vague and overly broad in that "financial interest" and "outcome" were not defined). *See* Ex. 1 to Defendants' letter (Nos. 16 and 25). Defendants have never raised any issues with these objections and never once even asked for a privilege log to be produced that might identify responsive, but privileged communications. MHL does not believe that any of the Requested Materials fall under the reasonable definition of an "agreement reflecting any financial interest that any person has … in the patents-in-suit." In any event, as a compromise, MHL produced the Declarations section of the Policy.

Further, the Requested Materials are not relevant to any claim or defense in the case.[1] Defendants have only stated in a conclusory fashion that the Requested Materials relate to the

---

[1] Defendants draw a parallel with litigation funding. Courts in Delaware routinely hold that information related to litigation funding is irrelevant. *See United Access Techs., LLC v. AT&T*

**CONFIDENTIAL**

**FILED UNDER SEAL**

"valuation of the asserted patents" and could involve issues such as validity, infringement, valuation, damages and royalty rates. However, when pressed, Defendants have been unable to articulate specifically how the Requested Materials would be probative to any issues presented to the Jury. Moreover, Defendants' late-stage request to produce this information is not proportionate to any need articulated by opposing counsel. In short, there is no need for the material since it bears no relevance to any claim or defense asserted by the parties. Any such need would be dwarfed by the burden to MHL in having to go back, further search for, and then produce potentially hundreds of communications, over the course of multiple years, which broadly relate to the Policy.

Finally, as to privilege, communications between an insurer and insured are generally cloaked with the same privilege as communications between an attorney and client. For example, in *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 282-83 (W.D. Pa. 2014), the court determined that the attorney-client privilege and work product doctrine protect disclosures from the client to agents necessary to implement representation of the client. Here, legal opinions obtained from independent legal counsel are unquestionably privileged. Moreover, communications between MHL and IPISC (or their respective attorneys) were and are designed to further the legal representation of MHL – including primarily with assistance in the enforcement and funding of the litigation. Baxter Dec., ¶¶ 8, 13. All of the legal opinions, as well as the pre-litigation communications at issue, were made not just to make a determination as to whether there

---

*Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *1 (D. Del. June 12, 2020); and *United Access Techs., LLC v. AT&T Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *1 (D. Del. June 12, 2020). Other courts hold this material to be protected from disclosure by privilege and work product. *See Miller UK Ltd. V. Caterpillar Inc.*, 17 F. Supp.3d 711 (N.D. Ill. 2014), *In Re Intern. Oil Trading Company, LLC*, 548 B.R. 825 (Bankr. S.D.Fla. 2016).

**CONFIDENTIAL**

**FILED UNDER SEAL**

was coverage under the policy, but for IPISC to assist in evaluating the grounds and arguments supporting the present lawsuit.

Defendants claim that any privilege that may have once existed to the Insurance Information has been waived. The basis of the waiver, according to Defendants, is MHL's disclosure of the opinions (and communications) to IPISC in order to obtain coverage for the present lawsuit. However, it cannot reasonably be disputed that there is a community of interest between MHL and IPISC which allows the privilege to be maintained. IPISC provides insurance that is grounded in legal analysis and potential litigation. Baxter Dec., ¶ 1. Based on its legal analysis, IPISC determines whether to issue a policy and insure a party. *Id*., ¶¶ 5, 8. In the event there is a lawsuit, IPISC, per the governing policy, assists the insured in enforcement of its IP rights and paying attorneys' fees up to certain policy limits. By its very unique nature, IPISC's work in connection with a "claim", and even the issuance of a policy, is always in connection with litigation and rooted in the opinions and assistance of counsel – and reflect interests identical to those of the underlying insured. *Id*., ¶¶ 5, 11, 13.

It is along these same lines that privileges are also maintained with respect to communications between IPISC and MHL, IPISC and MHL counsel, and/or IPISC counsel and MHL/MHL counsel. The decision to issue and fund an intellectual property enforcement policy is necessarily grounded in legal analysis of the merits of claims and the costs of potential litigation. The dominant purpose of any of the requested communications is to assist in enforcement of MHL's patent rights and the successful prosecution of the case. MHL should be free to communicate freely with attorneys and IPISC in furtherance of their common interests, without fear of forced disclosure. MHL would welcome the opportunity to brief this matter in full should the Court so desire.

**CONFIDENTIAL**
**FILED UNDER SEAL**

The following attorneys of record for Plaintiff will appear at the telephonic conference scheduled for November 15, 2022: Blake Bennett, Brian McGraw, Robert Theuerkauf.

                                          Respectfully,

                                          */s/ Blake A. Bennett*

                                          Blake Bennett (#5133)

BAB:cls
Cc: All Counsel of Record (via CM/ECF)
Enclosures

# **EXHIBIT 1**

**Plaintiff's November 10, 2022 Submission**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MHL CUSTOM, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>WAYDOO USA, INC. and SHENZHEN WAYDOO INTELLIGENCE TECHNOLOGY CO., LTD,<br><br>        Defendant. | C.A. No. 21-0091-RGA<br><br>**CONFIDENTIAL – FILED UNDER SEAL** |

### DECLARATION OF CHARLES T. BAXTER IN SUPPORT OF MHL CUSTOM, INC.'S OPPOSITION TO DEFENDANTS' REQUEST FOR PRODUCTION OF INSURANCE INFORMATION

I, Charles T. Baxter, declare and state the following:

1. I am General Counsel of Intellectual Property Insurance Services Corporation ("IPISC"). I submit this declaration in support of Plaintiff, MHL Custom, Inc.'s opposition to Defendants' attempt to compel the production of certain insurance information in the above-captioned matter. I am over the age of eighteen, and, if called to testify before the Court, I could and would competently testify to the facts set forth herein. I make this declaration based upon my personal knowledge, and based upon information and documents available to me.

2. Kentucky-based, IPISC is a pioneer in the field of insurance, offering, among other things, a form of insurance known as an intellectual property infringement defense policy. IPISC is a Managing General Agent for insurance carriers who issue such policies. In order to offer this form of insurance, IPISC relies heavily on the advice of counsel, both in-house and those retained from independent law firms.

3. The insurance products provided through IPISC are not typical in the insurance industry. For example, when obtaining life insurance, a potential insured provides health information, information about habits (*e.g.*, smoker), and family health history. The insurance company then applies actuarial statistics to decide whether it will insure the risk and, if so, at what cost. No legal analysis is necessary to make that insurance underwriting decision for life insurance.

4. In contrast, █████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████

5. Moreover, unlike other types of insurance, the covered "claims" are based in litigation. Whereas in the context of life insurance, the "event" triggering coverage is an insured's death and the insurance company pays out funds to the beneficiaries, in the case of the insurance offered through IPISC, the insured is sued for a form of intellectual property infringement, and IPISC, per the policy, assists the insured in enforcement of the action, and paying attorneys' fees up to certain policy limits. IPISC's work in connection with a "claim," and even the issuance of a policy, is therefore always in connection with litigation and rooted in the opinions and assistance of counsel, both in-house and retained.

6. ███████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

2

valuable rights through patent infringement litigation, especially against an aggressive competitor, based on the costs of litigation alone.



7. ███████████████████████████████████████

8. ███████████████████████████████████████

9. One type of policy offered by IPISC is an Intellectual Property Infringement Enforcement Cost Reimbursement Insurance Policy, which can provide funds for legal expenses to enforce intellectual property rights and cover the costs of attorneys' fees up to policy limits. Plaintiff in the above captioned action, MHL Custom Inc. ("MHL"), is insured through IPISC pursuant to such a policy (the "Policy"), ███████████████████████████████.

10. Consistent with the Policy, IPISC, through counsel, has assisted MHL in connection with the enforcement of the above captioned lawsuit.

11. IPISC understands that the Defendants in the above captioned lawsuit have filed counterclaims against MHL seeking declarations that MHL's asserted patents are invalid and that Defendants are not infringing those patents. The insurer for whom IPISC manages this insurance

stands to share in the economic benefit of any success in this action, and loss of its patent rights would harm both the insured and insurer's interests.

12. IPISC understands that the Defendants in the above captioned lawsuit seek to compel MHL to produce the Policy, as well as all communications between MHL, MHL's counsel, IPISC and IPISC counsel. This material includes confidential communications between IPISC and its counsel and those on behalf of its insured. Moreover, Defendants seek documents prepared by counsel in anticipation of litigation, and specifically, the work product of IPISC and/or its agent attorneys on behalf of its insured in connection with this lawsuit. These items are not shared publicly, and, with the exception of the rate offered for the policy, are not even shared with IPISC's insureds.

13. It is IPISC's position that it shares a common interest with MHL with respect to this litigation, issuance of the Policy, and coverage under the policy and that all communications between it (and any party working on IPISC's behalf) and MHL and MHL's attorneys, related to this litigation and the Policy are subject to privilege or otherwise subject to the attorney work product doctrine.

\* \* \* \* \* \* \* \* \* \*

I, Charles T. Baxter, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 10, 2022, pursuant to 28 U.S.C. §1746.

_____
Charles T. Baxter

4