IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MHL CUSTOM, INC.,<br>　　　　　Plaintiff,<br>　　v.<br>WAYDOO USA, INC., *et al.*,<br>　　　　　Defendants. | C.A. No 21-91-RGA-MPT |

# ORDER

At Wilmington, on this 1st day of December, 2022;

1. Presently before the court is Defendants' motion to compel Plaintiff to produce the following materials: (a) Plaintiff's insurance policy related to litigation funding; (b) correspondence between Plaintiff and others concerning this insurance policy; and (c) four opinion letters related to the patents in suit and apparently relied upon in the underwriting for the insurance policy.[1] Defendants maintain that these documents are covered by its Requests for Production Nos. 16 and 25, attached as Exhibit 1 to its letter brief.[2] Plaintiff opposes the motion on various grounds, including relevance, privilege, and burden.[3] The parties have submitted letter briefs[4] and supporting exhibits.[5] Notably, despite claiming various privileges and burdens, the only

---

[1] D.I. 90; D.I. 96.

[2] D.I. 96-1, Ex. 1 at 12, 17. These requests include Request No. 16 for "All Documents and Things concerning any Communications between You (including Your counsel) or any Predecessor in Interest and any Defendant or third party regarding any Patent in Suit, any Related Patent, this action, and/or the inventions described in the Patents in Suit" and Request No. 25 for "All Documents and Things concerning any financial interest that any Person holds or has held in any Patent in Suit, any Related Patent, or the outcome of this action." *Id.*

[3] *See generally* D.I. 97. This letter brief oddly does not include page numbers.

[4] D.I. 96; D.I. 97.

[5] D.I. 96-1, Exs. 1-4; D.I. 97-1, Ex. 1.

evidence presented by Plaintiff is a declaration by Mr. Charles T. Baxter, who is the general counsel of Intellectual Property Insurance Services Corporation ("IPISC"), which is not a party to the litigation.[6]  The record is devoid of any evidence from Plaintiff supporting its claims of burden and privilege.  This judge heard telephonic oral argument on November 15, 2022.[7]

2. **Facts.**  Plaintiff is the assignee and owner of U.S. Patent Nos. 9,359,044 and 9,586,659.[8]  Plaintiff alleges that Defendants infringe these patents.[9]  This lawsuit is substantially underway.  Fact and expert discovery is closed,[10] and the parties are in the process of briefing dispositive motions.[11]  Trial is set for March 27, 2023.[12]

3. During the course of fact discovery, Defendants learned that Plaintiff had obtained an insurance policy to pay for this lawsuit.[13]  Mr. Baxter states that Plaintiff "**is insured through IPISC** pursuant to [an Intellectual Property Infringement Enforcement Cost Reimbursement Insurance Policy] . . ., and the underlying litigation has been authorized as a covered litigation within the scope of the Policy."[14]  This policy was issued by Lloyds, London on September 20, 2020.[15]  The declarations page of the policy identifies IPISC as the "Correspondent" and states that the "Correspondent is not

---

[6] D.I. 97-1, Ex. 1.

[7] D.I. 117 (transcript of 11/15/2022 discovery teleconference, hereinafter "Tr.").

[8] D.I. 1 at ¶¶ 9–11.

[9] *Id.* at ¶¶ 21–52.

[10] D.I. 19; D.I. 65.

[11] Id.

[12] D.I. 19.

[13] *See* D.I. 96-1, Ex. 2 (containing e-mail exchanges mentioning the insurance policy); *id.*, Ex. 3 (excerpting portions of deposition transcripts confirming the existence of the insurance policy); *id.*, Ex. 4 (documenting the declarations page of said policy).

[14] D.I. 97-1, Ex. 1 at 3, ¶ 9 (emphasis added).

[15] D.I. 96-1, Ex. 4.

an Insurer."[16]  The Insurers of the policy are "Underwriters at Lloyd's, London."[17]  Mr. Baxter states that "[t]he insurer for whom IPISC manages this insurance stands to share in the economic benefit of any success in this action, and loss of its patent rights would harm both the insured and insurer's interests."[18]

      4.      At some point in time, Plaintiff obtained opinion letters related to this case.[19]  Plaintiff argues—but does not cite to any supporting evidence—that it provided "sensitive information to IPISC in an effort to not only obtain insurance, but also to get approval for coverage."[20]

      5.      Plaintiff filed the complaint in this matter on January 27, 2021.[21]

      6.      **IPISC.**  Defendants characterize IPISC as a "broker" for the insurance policy.[22]  Plaintiff avers—without any evidentiary support—that "IPISC is not just an insurance broker," rather it "actually does pay the litigation expenses for the plaintiff and also shares in the outcome of the litigation."[23]  And yet, IPISC's general counsel, Mr. Baxter, states that IPISC manages the policy on behalf of an insurer, and it is the **insurer**, not IPISC, that stands to gain or lose depending on the outcome of this litigation.[24]  The case docket does not reflect IPISC as a party, third-party, intervenor, or

---

[16] D.I. 96-1. Ex. 4.

[17] *Id*.

[18] D.I. 97-1, Ex. 1 at 3–4, ¶ 11.

[19] D.I. 96-1, Ex. 3 at Page 24 of 32 (deposition of Nicholas Leason, one of Plaintiff's founders).

[20] Tr. at 23:14–24.

[21] D.I. 1.

[22] *E.g.*, Tr. at 12:11–18.

[23] Tr at 20:12–22.

[24] *See supra* note 18.

3

in any other capacity.[25]  Also, aside from Plaintiff, no other party (including IPISC or the insurer) has an assignment or security interest in the patents-in-suit as identified on the U.S. Patent & Trademark website.[26]  Thus, the only evidence in the record is that IPISC is a "Correspondent" for the insurance policy and is an agent of the insurer.

7.     **Initial disclosures.**  Defendants argue that Plaintiff was obligated to disclose this policy as part of its initial disclosures.[27]  Plaintiff responds that it "was under no obligation to disclose or produce the Policy under Rule 26 because the Policy is not an insurance agreement 'under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.'"[28]  Since Defendant's counterclaims are for declaratory relief and not money damages, the court agrees with Plaintiff that there is no monetary judgment at issue that would require such a disclosure.  The prospect of attorney's fees at this stage in the litigation[29] is too remote to warrant disclosure.

8.     **Relevance.**  During the teleconference, Defendants split their document request into three separate groups of materials:  (a) the insurance policy; (b) correspondence between Plaintiff and IPISC concerning the insurance policy; and (c) the opinion letters.[30]  Defendants maintain that the insurance policy is relevant to the issues of ownership,[31] "valuation of the asserted patents and MHL's claim of

---

[25] For example, Federal Rule of Civil Procedure 7.1 states that with its "first appearance," a "nongovernmental corporate party must file 2 copies of a disclosure statement that:  (1) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or (2) states that there is no such corporation."  Fed. R. Civ. P. 7.1.  Defendants filed this document.  D.I. 16.  Plaintiff has not.

[26] https://assignment.uspto.gov.

[27] D.I. 96 at 1–2.

[28] D.I. 97 at 1–2 (quoting Fed. R. Civ. P. 26(a)(1)(A)(iv)).

[29] *Id.* at 2.

[30] Tr. at 8:3–14.

[31] Tr. at 11:5–11.

4

privilege."[32]  As to the communications with IPISC, Defendants argue that "the communications discuss MHL's claims as they are related to central issues in this case, such as validity and infringement, valuation, damages, and royalty rates."[33]  Finally, Defendants contend that the opinion letters are relevant, because "they disclose [Plaintiff's] views regarding patent validity and alleged infringement which speak to [Plaintiff's] claims or defenses."[34]  Plaintiff responds with two arguments.  Plaintiff first asserts that "Courts in Delaware routinely hold that information related to litigation funding is irrelevant."[35]  Next, Plaintiff contends that these documents are not relevant, because they would not be admissible at trial.[36]

9. The requested insurance policy, correspondence, and opinion letters are clearly relevant to the instant litigation.  Requests Nos. 16 and 25 are standard requests in patent litigation and relate to funding and financial interests in addition to perceived value, strengths, and weaknesses of the patents in suit.  The case law cited by Plaintiff does not establish a general rule in Delaware that litigation funding materials are not relevant.  Instead, the cited case law reflects a fact-based inquiry.  For example, in the *United Access Technologies* matter, Judge Stark reviewed the materials *in camera* before ruling on their relevance.[37]  Here, the only aspect of the insurance policy

---

[32] *Id*.

[33] D.I. 96 at 2 (citation omitted).

[34] *Id*.

[35] D.I. 97 at 2 n.1 (citing *United Access Techs., LLC v. AT&T Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *1 (D. Del. June 12, 2020)).

[36] *Id.* at 3 ("Defendants have been unable to articulate specifically how the Requested Materials would be probative to any issues presented to the Jury.").

[37] *United Access Techs., LLC v. AT&T Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *2 (D. Del. June 12, 2020).  The other cases cited by Plaintiff do not establish any rule related to the relevance of litigation funding.  *See, e.g., Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 728 (N.D. Ill. 2014) (Finding a litigation funding agreement irrelevant when it could not "support" various unpled defenses).  In fact, in one of the cases cited by Plaintiffs, D.I. 97 at 2 n.1, the bankruptcy court found a funding

available to the court is the declarations page of that policy, which does not provide much information.[38] Further, admissibility at trial has never been the touchstone of relevance at the discovery stage.

10. **Privilege.** Plaintiff argues that the insurance policy is not relevant but makes no argument why the policy is privileged. Since Plaintiff carries the burden of proving that the privilege applies,[39] the court declines to speculate.[40]

11. As to the opinion letters, Plaintiff has a viable claim of attorney-client privilege. In the court's experience, these types of documents contain legal advice from an attorney directed to a client for the purpose of providing requested legal advice.[41]

12. At issue here is whether Plaintiff shared the opinion letters with IPISC and waived privilege.[42] Plaintiff asserts two separate theories of privilege for all pre- and

---

agreement to be relevant but ordered redactions necessary to protect "mental impressions and opinion" subject to the work product doctrine, *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 838–39 (Bankr. S.D. Fla. 2016).

[38] D.I. 96-1, Ex. 4.

[39] *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (internal quotations and citations omitted) ("[T]he burden of proving that the attorney-client privilege applies is placed upon the party asserting the privilege.").

[40] *See United States v. Sineneng-Smith*, 206 L. Ed. 2d 866, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'").

[41] *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (internal quotation marks and citation omitted) ("The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."). These opinion letters could also be subject to the work product doctrine, should Plaintiff produce evidence (as opposed to attorney argument) that these opinions were prepared in anticipation of the litigation at bar.

[42] *Id.* at 361 ("Disclosing a communication to a third party unquestionably waives the privilege.").

post-filing communications between it and IPISC:  (a) insurer-insured privilege,[43] and (b) community of interest privilege.[44]

14. First, with respect to communications between Plaintiff and IPISC, Plaintiff contends that these communications "were and are designed to further the legal representation of [Plaintiff] – including primarily with assistance in the enforcement and funding of the litigation."[45]  In support, Plaintiff cites *Serrano v. Chesapeake Appalachia, LLC*,[46] a case applying Pennsylvania attorney-client privilege law, and argues that "communications between an **insurer and insured** are generally cloaked with the same privilege as communications between an attorney and client."[47]  This citation is conclusory.  Plaintiff does not explain why Pennsylvania law should govern the privileges asserted here and offers no analysis of the facts as applied to the law.[48]

14. Second, in terms of facts, although the Baxter declaration provides detailed information about how IPISC generally conducts business, the record is short on details about the nature of the specific relationship between Plaintiff and IPISC.  For example, Plaintiff maintains that there was no waiver of attorney-client privilege under the **community of interest** doctrine, because, citing the Baxter declaration, "IPISC's work in connection with a 'claim', and even the issuance of a policy, is always in connection with litigation and rooted in the opinions and assistance of counsel – and reflect interests identical to those of the underlying insured."[49]  The identity of interests

---

[43] D.I. 97 at 3.

[44] *Id.* at 4.

[45] D.I. 97 at 3.

[46] 298 F.R.D. 271 (W.D. Pa. 2014) (applying Pennsylvania law governing attorney-client privilege).

[47] D.I. 97 at 3 (emphasis added) (citing *Serrano*, 298 F.R.D. at 282–83).

[48] *Id*.

[49] *Id.* at 4 (citing D.I. 97-1, Ex. 1 at ¶¶ 5, 11, 13 (Baxter declaration)).

is a legal determination necessary for the community of interest privilege to apply.[50] And yet, IPISC's Mr. Baxter states that the insurer (and not IPISC) "stands to share in the economic benefit of any success in this action, and loss of its patent rights would harm both the insured and insurer's interests."[51]  Mr. Baxter does not state that the insured and insurer's interests are "identical," nor does the word appear anywhere in his declaration.  He does, however, state that "[i]t is IPISC's position that it shares a common interest" with Plaintiff "and that all communications between [IPISC] (and any party working on IPISC's behalf) and [Plaintiff] and [Plaintiff]'s attorneys, related to this litigation and the Policy are subject to privilege or otherwise subject to the attorney work product doctrine."[52]  This is a legal conclusion masquerading as a statement of fact.  It is also confusing, because Mr. Baxter states that IPISC claims privilege to materials, such as correspondence between Plaintiff and its attorneys, when no party has sought documents from IPISC and the privileges asserted are unique to Plaintiff.

15.     Having reviewed the cited cases and the body of case law governing privilege in federal courts, many of these cases involve a privilege log, something that Plaintiff admits it has not created.[53]  Absent a privilege log and a clear articulation of: (a) the identity of the party asserting the privilege; (b) the specific privileges asserted; (c) the legal basis for each asserted privilege; (d) the factual basis for each asserted privilege; and (e) a detailed explanation as to why each asserted privilege applies to each and every responsive document that Plaintiff has chosen to withhold, Plaintiff's

---

[50] *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. CV 16-453-RGA, 2018 WL 798731, at *2 (D. Del. Feb. 9, 2018) (internal quotation marks and citations omitted) ("To show that there is a proper community of interest, the interests must be identical, not similar, and be legal, not solely commercial.").

[51] D.I. 97-1, Ex. 1 at ¶ 11.

[52] *Id.* at ¶ 13.

[53] *Id.* at 2.  Plaintiff maintains that Defendants must request this privilege log for Plaintiff to produce it.

8

claims of privilege remain vague and ambiguous. As the party asserting privilege, it is Plaintiff's burden to prove that the privilege applies.[54] It has not done so.

16.    **Burden.** Plaintiff contends that any purported relevance of the materials sought is "dwarfed by the burden to [Plaintiff] in having to go back, further search for, and then produce potentially hundreds of communications, over the course of multiple years, which broadly relate to the Policy."[55] Plaintiff offers no factual basis to support its hand waving. Since Plaintiff has already collected and produced ESI in the form of communications involving one or more custodians, the production shall be limited to those custodians.

Therefore, it is ORDERED that:

1. Defendants' motion to compel production of Plaintiff's intellectual property insurance policies is GRANTED. Plaintiff shall produce these documents within SEVEN (7) days[56] of this order;

2. Defendants' motion to compel production of all communications between Plaintiff and any party related to the intellectual property insurance policies is GRANTED. Within SEVEN (7) days of this order, the parties shall meet and confer on appropriate search terms. Once the parties agree to search terms, Plaintiff shall produce any responsive communications within FOURTEEN (14) days thereafter;

---

[54] *See supra* note 39.
[55] D.I. 97 at 3.
[56] *See* Fed. R. Civ. P. 6(a)(1) (outlining computation of time).

3. Defendants' motion to compel production of all opinions of counsel Plaintiff provided to any party related to the intellectual property insurance policies is GRANTED. Plaintiff shall produce these documents within SEVEN (7) days of this order.

                                                       /s/ Mary Pat Thynge
                                        Chief United States Magistrate Judge