1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3

4     MHL CUSTOM, INC.,                )
                                       )
5                   Plaintiff,         )
                                       ) C.A. No. 21-91-RGA-MPT
6     v.                               )
                                       )
7     WAYDOO USA, INC. and SHENZEN     )
      WAYDOO INTELLIGENCE TECHNOLOGY   )
8     CO., LTD.,                       )
                                       )
9                   Defendants.        )

10
                                    J. Caleb Boggs Courthouse
11                                  844 North King Street
                                    Wilmington, Delaware
12
                                    Friday, February 17, 2023
13                                  9:04 a.m.
                                    Oral Argument
14

15    BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

16    APPEARANCES:

17              COOCH & TAYLOR, P.A.
                BY:  ANDREW A. RALLI, ESQUIRE
18
                         -and-
19
                GRAY ICE & HIGDON, PLLC
20              BY:  ROBERT THEUERKAUF, ESQUIRE

21                                  For the Plaintiff

22

23

24

25

1    APPEARANCES CONTINUED:

2
            SWARTZ CAMPBELL
3            BY:  JOSEPH S. NAYLOR, ESQUIRE

4                    -and-

5            HUSCH BLACKWELL LLP
            BY:  RUDY TELSCHER, ESQUIRE
6
                            For the Intervenor IPISC
7

8            RICHARDS LAYTON & FINGER, P.A.
            BY:  DORRONDA R. BORDLEY, ESQUIRE
9
                    -and-
10
            HAUG PARTNERS LLP
11            BY:  ROBERT E. COLLETTI, ESQUIRE

12                            For the Defendants
08:53:11
08:53:11 13

08:58:10 14            ***  PROCEEDINGS  ***

08:58:10 15

09:04:11 16            THE COURT:  All right.  Good morning and please

09:04:15 17    be seated.

09:04:20 18            Ms. Bordley I know.  I'm just trying to figure

09:04:23 19    out which one of you all I know.

09:04:23 20            MR. NAYLOR:  Good morning, Judge Andrews.  Joe

09:04:25 21    Naylor.  I'd like to introduce Rudy Telscher for Intervenor,

09:04:29 22    IPISC.

09:04:31 23            THE COURT:  I'm sorry.  Who are you?

09:04:32 24            MR. NAYLOR:  My name is Joe Naylor.

09:04:34 25            THE COURT:  Joe, yeah.  Mr. Naylor, I've seen

09:04:37 1    your name on lots of things.  I can't recall ever actually

09:04:40 2    seeing you in person.

09:04:41 3                   Okay.  And who's with you here?

09:04:44 4                   MR. NAYLOR:  Rudy Telscher who was present on

09:04:47 5    December 15th.

09:04:48 6                   THE COURT:  Okay.  Good morning, Mr. Telscher.

09:04:53 7                   MR. TELSCHER:  Good morning.

09:04:54 8                   MR. RALLI:  Andrew Ralli from Cooch & Taylor on

09:04:57 9    behalf of the Plaintiffs.  With me is Robert Theuerkauf from

09:04:59 10   Gray Ice & Higdon.  Mr. Theuerkauf is admitted pro hac vice.

09:05:03 11                  THE COURT:  Okay.  All right.  And I have seen

09:05:05 12   you all before just not -- all right.

09:05:08 13                  And, Ms. Bordley, you have Mr. Colletti with

09:05:11 14   you?

09:05:12 15                  MS. BORDLEY:  Yes, Your Honor.

09:05:12 16                  THE COURT:  All right.  Okay.  Well, thank you.

09:05:15 17                  So, Mr. Colletti, one of the things that's a

09:05:28 18   puzzle to me is -- well, so, my understanding is you've got

09:05:34 19   the four opinions of counsel, and you've got some discovery

09:05:38 20   pursuant to search terms around about December 22nd or 3rd.

09:05:43 21                  MR. COLLETTI:  That's correct, Your Honor.

09:05:45 22                  THE COURT:  So, what of that stuff do you think

09:05:47 23   is actually going to be admissible at the trial?

09:05:49 24                  MR. COLLETTI:  I think it could be admissible.

09:05:51 25   The opinions could be admissible.

09:05:53 1    THE COURT: On what?

09:05:55 2    MR. COLLETTI: Well, through their CEO, through

09:05:57 3    the witness who received them.

09:06:00 4    THE COURT: No, no. I'm not saying who would say

09:06:02 5    this is an opinion of counsel. What would be the value?

09:06:07 6    What would it tend to prove?

09:06:08 7    MR. COLLETTI: In terms of relevance, the scope

09:06:10 8    of the patents, Your Honor, and relevance -- the evaluation

09:06:13 9    for infringement as opposed to the evaluation.

09:06:16 10    THE COURT: But the evaluation is by lawyers in

09:06:18 11    this law firm somewhere; right?

09:06:20 12    MR. COLLETTI: Correct.

09:06:20 13    THE COURT: Are they experts in the sciences

09:06:24 14    involved here?

09:06:24 15    MR. COLLETTI: No.

09:06:24 16    THE COURT: So, it's not going to be admissible

09:06:28 17    for that purpose. Do you want to try another one?

09:06:30 18    MR. COLLETTI: The relevance of them to us, Your

09:06:33 19    Honor, would be the scope of the patents, potential

09:06:35 20    admissions. That would be our --

09:06:39 21    THE COURT: Well, so do the lawyers who wrote

09:06:42 22    these opinions say, you know, the CEO of the Plaintiff said,

09:06:48 23    Well, the Defendants don't infringe, but see if you can't

09:06:51 24    find something?

09:06:52 25    MR. COLLETTI: There are -- the opinions are

09:06:56 1 relatively bare-boned and they --

09:06:59 2        THE COURT: Making it even less likely that

09:07:02 3 they --

09:07:02 4        MR. COLLETTI: Well, but there is an issue in

09:07:03 5 there. The issue in this case is stability. And the

09:07:06 6 opinions, I'm trying not to categorize the opinions, but

09:07:13 7 they don't speak to stability.

09:07:14 8        THE COURT: Okay. Well, so then they have no

09:07:18 9 relevance.

09:07:18 10        MR. COLLETTI: Well, I would argue that they

09:07:20 11 have relevance to the position that the Plaintiff is taking

09:07:24 12 in this case with regard to infringement and the relevance

09:07:27 13 of stability.

09:07:28 14        THE COURT: This is just some third party that

09:07:30 15 was hired who's not even an expert doing claim construction.

09:07:37 16 And, you know, I'm the only one who is allowed to do claim

09:07:41 17 construction around here.

09:07:42 18        You know, it's weird. I mean, obviously, and I

09:07:44 19 think maybe there was some reference to this maybe in the

09:07:46 20 papers, you know, if you were the one who wanted to

09:07:49 21 introduce similar things to show lack of willfulness,

09:07:53 22 that's, you know, a plausible use of opinion of counsel.

09:07:58 23        There's no plausible use because their state of

09:08:02 24 mind is not at issue. And, otherwise, it's just hearsay on

09:08:10 25 things that aren't even that -- they're not -- that while

09:08:13 1  they are legally qualified to give opinions about, that's

09:08:16 2  not the same thing as -- you know, it's not like I can say,

09:08:20 3  Okay, well, we've heard from them.  Mr. Colletti, why don't

09:08:22 4  you testify what you think.  Mr. Theuerkauf -- sorry.

09:08:26 5            MR. THEUERKAUF:  It's Theuerkauf.

09:08:29 6            THE COURT:  Theuerkauf.  That's it?

09:08:30 7            MR. THEUERKAUF:  Yes.  Easier to say than spell.

09:08:32 8            THE COURT:  Well, I just need phonetic

09:08:36 9  spellings.  Mr. Theuerkauf.

09:08:37 10            You know, then I have Mr. Theuerkauf say what

09:08:39 11  his opinion is.  The lawyers' opinions don't matter in terms

09:08:43 12  of infringement, invalidity, damages.

09:08:47 13            So, besides for the opinions of counsel, how

09:08:51 14  much other discovery did you get pursuant to these search

09:08:53 15  terms?

09:08:54 16            MR. COLLETTI:  Well, the history here, we got

09:08:57 17  some communications between the parties.  So, they did

09:09:00 18  produce maybe another, I guess, about a hundred pages of

09:09:05 19  communications.

09:09:06 20            THE COURT:  All right.  And are any of these

09:09:09 21  communications germane to anything?

09:09:13 22            MR. COLLETTI:  Again, Your Honor, I mean, none

09:09:15 23  of this is -- I don't see this as going to the key issue in

09:09:20 24  the case.  This was a dispute that arose, and we divided the

09:09:25 25  categories here.  When we went to Magistrate Thynge, we were

09:09:28 1    initially --

09:09:28 2                THE COURT:  No, no, no.  I'm not talking

09:09:30 3    about -- to be crystal clear, because I didn't actually say

09:09:35 4    this, I'm wondering:  How important is this dispute at this

09:09:40 5    time?  Because you've now looked at these things, and I'm

09:09:43 6    wondering whether there's any reason to even go any further

09:09:46 7    with this because, based on what I had understood was

09:09:52 8    produced, which I had a clearer idea on the opinions on

09:09:57 9    counsel than the other hundred pages, I'm like, Well, why

09:10:01 10   are we spending time arguing on this unless there's

09:10:03 11   something important going on here?

09:10:05 12               MR. COLLETTI:  I don't disagree with that, Your

09:10:07 13   Honor.

09:10:07 14               THE COURT:  And when you say you "don't disagree

09:10:16 15   with that," what you mean is if it's not important, you

09:10:21 16   don't want to argue about it?  But are you agreeing it's not

09:10:24 17   important?

09:10:25 18               MR. COLLETTI:  I am agreeing that it's not all

09:10:29 19   that important in the grand scheme of the trial, Your Honor.

09:10:32 20   These are documents that we moved to compel.

09:10:37 21               THE COURT:  Yeah, yeah, yeah.  No, I mean, I've

09:10:39 22   read your or I've read their motion to intervene.  I've read

09:10:45 23   their objections.  I've read your responses to all these

09:10:48 24   things.  I read both of -- I forget the name of the lawyer

09:10:54 25   for IPISC, both of his declarations.

09:11:00  1          MR. COLLETTI:  Mr. Baxter.

09:11:00  2          THE COURT:  I'm sorry?

09:11:00  3          MR. COLLETTI:  Mr. Baxter.

09:11:02  4          THE COURT:  Mr. Baxter.  I'm sorry.  Yeah, the

09:11:03  5  one he actually gave, and the one he wishes he gave.  You

09:11:09  6  know, things are kind of a mess, and so I prefer to just

09:11:16  7  say, okay, they're not going to use -- well, sorry.  You're

09:11:21  8  not going to use any of these documents and, in fact, give

09:11:24  9  them back.  And then we're done with this.

09:11:27 10          MR. COLLETTI:  What I was trying to --

09:11:29 11          THE COURT:  And I'm sorry.  I didn't mean to

09:11:32 12  prevent you from trying to say whatever you want to say.

09:11:35 13          MR. COLLETTI:  What I was trying to say is there

09:11:37 14  may be an opportunity for us to use them in the midst of

09:11:40 15  putting our Pretrial Order together now.  We have thought

09:11:42 16  about this.  You know, are we going to use them?  How are we

09:11:45 17  going to use them?  Do we want to use them?  And I just

09:11:47 18  was -- I guess, I'm standing here not wanting to preclude

09:11:50 19  myself from the opportunity of using them.

09:11:53 20          THE COURT:  Well, so why don't we do this:  I'll

09:12:05 21  give you -- you tell me, but I was thinking of giving you to

09:12:09 22  some day next week where, if you can articulate an actual

09:12:16 23  use for any of this that you anticipate, that you send the

09:12:24 24  relevant documents to me, I would say, ex parte, but, of

09:12:34 25  course, they know what the documents are.  But I don't --

there's no reason to put them on the docket even under seal.

But send it with some cover letter saying whatever it is you're sending to me and put the cover letter on the docket.  You know, if it's convenient, just give them a copy of the documents, too.

Send a separate letter that would be under seal explaining what the relevance of any of the documents are that you actually send me.  And I have a relative optimism that you won't be able to articulate any actual use for any of these things and that that would be the best way to resolve this matter.

But when would you like to have as a deadline to do this?

MR. COLLETTI:  Can we have the week until next Friday?

THE COURT:  Yeah, that would be fine.  All right.  So, thank you, Mr. Colletti.

You know, I did think about Mr. Naylor and his friend, Mr. Telscher's motion to intervene.  And, you know, my original thought was that I was going to deny it as untimely, but it occurred to me that I wasn't really looking at things correctly.  The thing that I was thinking was untimely was the submission of new evidence and argument.

You know, if this thing has a life that continues on, it does seem that it's timely in the sense of

09:14:36 1   you'd be more interested in arguing, even if you're limited

09:14:42 2   to the record that exists right now as to why the Magistrate

09:14:47 3   Judge was clearly erroneous, or abuse of discretion or

09:14:50 4   committed some error of law.  And that it was a separate

09:14:57 5   issue as to whether I would allow you to use any of this new

09:15:02 6   stuff which, honestly, I will not be inclined to allow you

09:15:06 7   because the whole point of having these discovery disputes

09:15:10 8   before a judge is for everyone to put their best arguments

09:15:15 9   forward.  And it seems clear to me that based on both the

09:15:20 10  briefing and the fact that Mr. -- was it Baxter?

09:15:26 11              MR. COLLETTI:  Yes.

09:15:26 12              THE COURT:  You know, Mr. Baxter had a

09:15:28 13  declaration which, as I said, I read the four-page

09:15:31 14  declaration, that you did have notice of what was going on.

09:15:40 15  You participated.

09:15:42 16              From reading Mr. Baxter's declaration, I don't

09:15:45 17  think MHL drafted a declaration and told him to sign.  I

09:15:52 18  think he supplied the information himself because I don't

09:15:56 19  think that's necessarily stuff that MHL would know.

09:15:59 20              And so, I think in a very real way, IPISC was

09:16:06 21  participating in the proceeding before the Magistrate Judge,

09:16:11 22  albeit no counsel was there who represented IPISC as opposed

09:16:16 23  to MHL.  And, you know, one of our sort of cardinal rules

09:16:22 24  around here is you don't object to the Magistrate Judge's

09:16:29 25  opinion or decision based on stuff that wasn't before the

09:16:34 1  Magistrate Judge.  It's a terrible way to run the railroad.

09:16:38 2          So, this is all to say that I am going to grant

09:16:45 3  the motion to intervene.  So, I'll sign some document.  I

09:16:49 4  think you probably submitted an Order with it, so I will

09:16:53 5  sign that document.

09:16:54 6          But I'm going to strike your ten pages of

09:17:11 7  objections that are at DI-125-5 because, as you candidly

09:17:19 8  state on Page 10 of that, that you're including additional

09:17:24 9  factual arguments and additional legal arguments.  And if we

09:17:30 10 need to -- and so, I would give you the opportunity to file

09:17:37 11 objections based on the record that's made, but not to -- in

09:17:41 12 other words, to follow the rules.

09:17:44 13         And I certainly can see that, as I said, if this

09:17:47 14 goes down the road, MHL probably has very little interest in

09:17:52 15 this as a one-time insured whose case is going to be won or

09:18:01 16 lost on other things, but I can understand that IPISC -- you

09:18:09 17 know, I read all the stuff about threat to the business.  I

09:18:11 18 don't actually think that's very likely because clearly a

09:18:18 19 discovery dispute is based on a particular record.  And, you

09:18:23 20 know, if the record isn't what you wish it had been, that's

09:18:28 21 the reason why it is only applicable to the one case.

09:18:33 22         All right.  So, that's really all I think I'm

09:18:36 23 going to do this morning.

09:18:42 24         Mr. Theuerkauf, if Mr. Colletti goes and submits

09:18:49 25 documents and says, Yeah, we want to introduce this because

it's relevant to this or that, I will look at it very

quickly. If I need a response from you, I'll ask for it,

but don't feel -- you know, if it's a subtle argument that's

being made, I may need a response. But if I look at it and

I say, No, then I will basically just declare these things

irrelevant, and I would imagine that you all could negotiate

what to do about that under those circumstances.

But if it turns out that Mr. Colletti has some

theories that are not exactly at hand right now and, you

know, all of a sudden decides -- sorry, I don't want to make

it sound like Mr. Colletti is being frivolous here. If upon

reflection of a few days, you know, there's something that's

really important that they want in or, I would say, you

know, is admissible for some purpose or another, we may be

back here another time discussing the objections.

And in that regard, Mr. Theuerkauf -- no, not

Mr. Theuerkauf. Mr. Telscher. You don't have to tell me

right now, unless you know the answer. I would give you the

opportunity, if you wanted it, to submit objections based on

the record that was actually before the Magistrate Judge.

But as I'm optimistic that won't actually be necessary,

rather than starting the clock running today, which we have

a pretty short time frame for doing this, and I believe

you're going to be copied on this correspondence so you'll

see at the same time as everyone else what's happening and

09:21:10 1  what I'm going to do about it.  But I may issue an Order,

09:21:17 2  depending on what happens, telling you you have a relatively

09:21:20 3  short amount of time to make objections.

09:21:22 4          Okay?

09:21:23 5          MR. TELSCHER:  Okay.

09:21:23 6          THE COURT:  But until I issue that Order, you

09:21:25 7  don't have to do anything.

09:21:26 8          MR. TELSCHER:  That's fine, Your Honor.  And

09:21:27 9  you've made yourself crystal clear on what the ground rules

09:21:30 10  are for us entering, and I understand.

09:21:31 11          THE COURT:  Okay.  Anything else you want to

09:21:33 12  talk about today?

09:21:35 13          MR. THEUERKAUF:  No, Your Honor.

09:21:36 14          MR. COLLETTI:  No, Your Honor.

09:21:37 15          THE COURT:  Okay.  Well, thank you all.

09:21:45 16          Mr. Telscher, where did you come from?

09:21:47 17          MR. TELSCHER:  Husch Blackwell, St. Louis,

09:21:50 18  Missouri, Your Honor.

09:21:50 19          THE COURT:  St. Louis, Missouri.  Okay.

09:21:52 20          And, Mr. Theuerkauf, are you from Kentucky?

09:21:54 21          MR. THEUERKAUF:  Louisville, Kentucky.

09:21:56 22          THE COURT:  And, Mr. Colletti, you're from New

09:21:58 23  York; right?

09:21:58 24          MR. COLLETTI:  That's correct.

09:21:59 25          THE COURT:  Okay.  Well, thank you for your

09:22:01 1  efforts, and I will look forward to hearing from you fairly

09:22:05 2  soon, and we will enter the Order admitting or letting IPISC

09:22:10 3  intervene.

09:22:11 4            DEPUTY CLERK:  All rise.

09:22:12 5            THE COURT:  We'll be in recess.

09:22:14 6            (Court was recessed at 9:22 a.m.)

7            I hereby certify the foregoing is a true and

8  accurate transcript from my stenographic notes in the

9  proceeding.

10            /s/ Heather M. Triozzi
          Certified Merit and Real-Time Reporter

11            U.S. District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25