**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MHL CUSTOM, INC.,

           Plaintiff,

    v.

WAYDOO USA, INC. and SHENZHEN
WAYDOO INTELLIGENCE TECHNOLOGY
CO., LTD,

           Defendants.

C.A.  No. 21-0091-RGA

**PUBLIC VERSION,**
**FILED: March 21, 2023**

## <u>JOINT PRETRIAL ORDER</u>

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16

of the Federal Rules of Civil Procedure.

Blake A. Bennett (#5133)
Andrew A. Ralli (#6733)
**COOCH AND TAYLOR P.A.**
1007 N. Orange St., Suite 1120
Wilmington, Delaware 19801
bbennett@coochtaylor.com
aralli@coochtaylor.com

-and-

Dennis D. Murrell (KY # 84017)*
Robert J. Theuerkauf (KY # 89068)*
Brian P. McGraw (KY 90447)*
Megan E. Gibson (KY 97237)*
**GRAY ICE HIGDON, PLCC**
4600 Shelbyville Road #8022
Louisville, KY 40257
DMurrell@GrayIce.com
RJT@GrayIce.com
BMcGraw@GrayIce.com
mgibson@grayice.com

ATTORNEYS FOR PLAINTIFF

Kelly E. Farnan (#4395)
Dorronda R. Bordley (#6642)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 N. King Street
Wilmington, DE 19801
farnan@rlf.com
bordley@rlf.com

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Jason Kanter (*pro hac vice*)
Mark Basanta (*pro hac vice*)
Patrick Lavery (*pro hac vice*)
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151
ehaug@haugpartners.com
rcolletti@haugpartners.com
jkanter@haugpartners.com
mbasanta@haugpartners.com
plavery@haugpartners.com

ATTORNEYS FOR DEFENDANTS

Plaintiff, MHL Custom, Inc. ("Plaintiff" or "MHL"), and Defendants, Waydoo USA, Inc. and Shenzhen Waydoo Intelligence Technology Co., Ltd. (collectively "Defendants" or "Waydoo")[1], submit this joint Pretrial Order pursuant to Federal Rule of Civil Procedure 16, District of Delaware Local Rule 16.3, and the Court's Scheduling Order (D.I. 19) in this matter. The pre-trial conference is scheduled for March 10, 2023, and a five-day jury trial is scheduled to begin on March 27, 2023.

Except as noted herein, the following matters as to the conduct of trial have been stipulated by the Parties and are hereby ordered by the Court:

## I.    NATURE OF THE ACTION

This is a civil lawsuit for patent infringement brought by the Plaintiff, MHL Custom, Inc. MHL is a U.S. company based in Puerto Rico and is the owner of U.S. Patent No. 9,359,044 entitled Weight-Shift Controlled Personal Hydrofoil Watercraft ("the '044 Patent") and United States Patent No. 9,586,659 entitled Powered Hydrofoil Board ("the '659 Patent") (collectively, "the Patents-in-Suit").   MHL alleges that Waydoo infringes upon, or has infringed upon, the Patents-in-Suit by manufacturing, importing, selling and/or offering for sale its *Flyer*, *Flyer One*, and *Flyer One+* branded electric hydrofoil watercraft – or "eFoils". MHL is seeking to recover monetary damages from Waydoo for the claimed infringement. MHL is represented by Robert Theuerkauf, Dennis Murrell, Brian McGraw, and Megan Gibson of the Gray Ice Higdon law firm and Blake Bennett and Andrew Ralli of the Cooch & Taylor law firm.

Waydoo denies MHL's allegations of infringement and asserts that the Patents-in-Suit are invalid.  Waydoo is represented by Kelly Farnan and Dorronda R. Bordley of Richards, Layton &

---

[1] The parties agree that the two Defendants may be treated as one for purposes of trial, except to the extent that some distinguishing between the two entities will be reflected in potential testimony.

Finger PA and Edgar H. Haug, Robert E. Colletti, Jason Kanter, Mark Basanta, and Patrick Lavery of Haug Partners LLP.

Plaintiff denies that the Patents-in-Suit are invalid.

On January 27, 2021, MHL filed its complaint, alleging infringement of the Patents-in-Suit by Waydoo. D.I. 1. Waydoo filed an answer, affirmative defenses, and counterclaims, which are its operative pleadings. D.I. 13. MHL filed an answer to Waydoo's counterclaims. D.I. 17. On June 14, 2021, this Court entered a Scheduling Order setting trial for March 27, 2023. D.I. 19. In June 2022, this Court issued its first claim-construction order. D.I. 66, 68.

In October 2022, the parties filed summary judgment and *Daubert* motions. D.I. 74-79, 81. D.I. 81. In February 2023, the Court issued a memorandum opinion and order denying both parties motions for summary judgment except for Waydoo's motion for summary judgment that claims 16-20 the '659 Patent are invalid for failure to satisfy the written description requirement. D.I. 153, PageID# 11017-11022. The Court also resolved the parties claim construction regarding "stability". D.I. 153, PageID# 11006-11008. With respect to the parties' *Daubert* motions, the Court denied all of the motions except for Waydoo's motion to preclude MHL's expert, Christopher Barry, from testifying as to economic issues (commercial success) and Waydoo's motion to preclude MHL's expert, Dr. Jeffrey Stec, from testifying as to non-final licensing agreements/negotiations with Manta and MSLR. D.I. 155, PageID# 11032.[2]

## II.   **CLAIM CONSTRUCTION**

The Court's construction of terms appearing in the asserted claims are listed in the table below. D.I. 66, 68, 153.

---

[2] The parties agree that the above procedural summary should not be read to the jury.

| Term | Patent Claims | Court's Construction |
|---|---|---|
| "A passively stable, weight-shift controlled personal hydrofoil watercraft" | Claim 1 of the '044 Patent | This preamble is not limiting |
| "A passively stable, weight-shift controlled personal hydrofoil watercraft" | Claim 1 of the '659 Patent | This preamble is limiting and is construed to mean: "a weight-shift controlled personal watercraft having a hydrofoil that does not have any moveable components and which, when disturbed, (1) has an initial tendency to return to its original condition and (2) eventually returns to its original condition." |
| "wherein a user can be disposed on the top surface of the flotation device in a prone, kneeling, or standing position" | Claim 1 of the '044 Patent; Claim 1 of the '659 Patent | "'Prone, kneeling, or standing' are alternatives.  Only one of them is required." |
| "designed to provide passive static stability" | Claim 1 of the '044 Patent | "Designed such that the hydrofoil has an initial tendency to return to its original condition when disturbed without the hydrofoil having any moveable components." |
| "wherein the design for providing the passive static stability is achieved through a combination of airfoil design, planform design and tailoring of span-wise twist distribution" | Claim 5 of the '044 Patent | Plain and ordinary meaning. |

## III.   BASIS OF JURISDICTION

It is undisputed that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

## IV.   STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

Subject to the Court's resolution of the parties' motions *in limine* and other evidentiary

objections, any party, with prior notice to all other parties, may read any or all of either parties' uncontested facts to the jury or Court, and will be charged for the time used to do so. The following facts are not disputed or have been agreed to or stipulated to by the parties:

**A.     Plaintiff's Statement of Facts Which Are Admitted and Require No Proof**

1.      Plaintiff is the owner of the '044 Patent.

2.      The '044 Patent was issued by the United States Patent & Trademark Office ("PTO") on June 7, 2016. The '044 Patent issued from Application Serial No. 14/509,289 having a filing date of October 8, 2014.

3.      The '044 Patent claims priority to Provisional Application No. 61/889,071, filed on October 10, 2013 ("the '071 Provisional Application").

4.      The '659 Patent was issued by the PTO on March 7, 2017.  The '659 Patent issued from Application Serial No. 15/064,521 having a filing date of March 8, 2016.

5.      The '659 Patent claims priority to the '044 Patent and the '071 Provisional Application.

6.      The '659 Patent is a continuation of the '044 Patent. The Patents-in-Suit contain the same specification and figures.

7.      Plaintiff is the owner of the '659 Patent.

8.      Jacob Willem Langelaan is the listed inventor of the '044 Patent and the '659 Patent.

9.      On March 4, 2016, Jacob Langelaan and Nick Leason (on behalf of Plaintiff), executed an IP License and Sale Agreement in which Langelaan granted to "MHL a worldwide exclusive license" to the Patents-in-Suit, including any rights to the then existing, and future related, patent applications for the Patents-in-Suit.  The license agreement provided for a running royalty rate paid to Langelaan of ▮▮▮▮▮▮▮ of licensed products sold in the U.S.  Total

royalty payments were capped at ███████.

10.     On April 7, 2019, MHL and Langelaan executed a first amendment of the IP License and Sale Agreement titled "IP License and Sale Amendment."

11.     On July 16, 2020, Plaintiff and Langelaan executed a "Second IP License Amendment and Assignment Agreement" in which all right, title, and interest in and to the Patents-in-Suit were assigned to Plaintiff in exchange for ███████.

12.     Plaintiff manufactures and sells different models of a personal hydrofoil watercraft – in the form of an electric hydrofoil surfboard or "eFoil" – under their "Lift" brand.

13.     Waydoo manufactures/has manufactured, offers for sale/has offered for sale, and sells/has sold eFoils under the following model names: *Flyer*, *Flyer One*, and *Flyer One+* ("the Accused Products"). The Accused Products manufactured, offered for sale, and sold by Waydoo are sold to an authorized reseller in the United States.

14.     Plaintiff filed this lawsuit on January 27, 2021.

15.     Each of the Accused Products has a flotation device that has a fore-aft length greater than a lateral width, the flotation device having a top surface and a bottom surface as claimed in Claim 1 of the Patents-in-Suit.

16.     Each of the Accused Products has a flotation device wherein a user can be disposed on the top surface of the flotation device in a prone, kneeling, or standing position as claimed in Claim 1 of the Patents-in-Suit.

17.     Each of the Accused Products has a flotation device having a forward section, a middle section, and a rear section as claimed in Claim 1 of the Patents-in-Suit.

18.     Each of the Accused Products has a strut having an upper end and a lower end, the upper end fixedly interconnected with the flotation device between the middle section and the rear

section of the flotation device as claimed in Claim 1 of the Patents-in-Suit.

19.     Each of the Accused Products has a hydrofoil fixedly interconnected with the lower end of the strut, the hydrofoil having no movable surface as claimed in Claim 1 of the Patents-in-Suit.

20.     Each of the Accused Products has a propulsion system for propelling the watercraft in a body of water as claimed in Claim 1 of the Patents-in-Suit.

21.     Each of the Accused Products has a propulsion system wherein the propulsion system is connected to the hydrofoil as claimed in Claim 1 of the Patents-in-Suit.

22.     Each of the Accused Products is a watercraft having no moveable steering system as claimed in Claim 1 of the Patents-in-Suit.

23.     Each of the Accused Products has a propulsion system wherein the propulsion system comprises a battery, an electric motor, and a propulsor, the propulsor selected from a propeller, a ducted propeller, or a pump-jet as claimed in Claim 2 of the Patents-in-Suit.

24.     Each of the Accused Products has a hydrofoil and a strut wherein the hydrofoil is indirectly connected to the strut as claimed in Claim 7 of the '044 Patent and Claim 4 of the '659 Patent.

25.     Each of the Accused Products has a strut and a propulsion system wherein the strut is directly connected to the propulsion system as claimed in Claim 8 of the '044 Patent and Claim 5 of the '659 Patent.

26.     The Waydoo *Flyer One* and *Flyer One+* models of the Accused Products have a hydrofoil, strut and a propulsion system wherein a first hydrofoil wing of the hydrofoil is indirectly connected to the strut through the propulsion system as claimed in Claim 9 of the '044 Patent and Claim 6 of the '659 Patent.

27.     Each of the Accused Products has a hydrofoil which comprises a plurality of wings that are interconnected by way of a strut as claimed in Claim 10 of the '044 Patent and Claim 7 of the '659 Patent.

28.     Each of the Accused Products has an electric motor wherein the electric motor is integrated into a waterproof, streamlined pod as claimed in Claim 12 of the '044 Patent and Claim 9 of the '659 Patent.

29.     Each of the Accused Products has a wireless handheld controller having a transmitter and a receiver, wherein the transmitter is adapted to send wireless signals to the receiver that cause an output of the propulsion system to change as claimed in Claim 15 of the '044 Patent and claim 11 of the '659 Patent.

30.     Each of the Accused Products has a hydrofoil wherein the hydrofoil is spaced a fixed distance apart from the flotation device as claimed in Claim 17 of the '044 Patent.

31.     Each of the Accused Products has a propulsion system wherein the propulsion system is directly or indirectly connected to the hydrofoil as claimed in Claim 21 of the '044 Patent and Claim 15 of the '659 Patent.

**B.     Defendants' Statement of Facts Which Are Admitted and Require No Proof**

1.     Jacob Willem Langelaan filed non-provisional U.S. Patent Application Serial No. 14/509,289 (the "'289 Application") on October 8, 2014, claiming priority to provisional application number 61/889,071, filed on October 10, 2013.

2.     On August 30, 2019, MHL, Langelaan, and Fliteboard Pty. Ltd. executed a Non-Exclusive Patent License Agreement that granted Fliteboard a "nonexclusive right and license" to the Patents-in-Suit.  Under this license, Fliteboard pays MHL a royalty of ▮▮▮▮▮▮▮▮▮ for eFoils.

3.     The "Evolo project website" refers to the following URL: http://

8

flygmac7.flyg.kth.se/cdio/old_projects/evolo.

4.     The "Evolo Report" refers to each of the following documents produced in this litigation: WD000650 (Original), WD000099 (English machine translation), and WD086241 at 86241-86797 (Certified English Translation).  The certification for the certified English translation is produced in this litigation as WD086808.[3]

5.     U.S. Patent No. 7,232,355 ("*Woolley*") issued on June 19, 2007.  *Woolley* is prior art to the Patents-in-Suit.

6.     U.S. Patent Publication No. 2003/0167991 ("*Namanny*") was published on September 11, 2003.  *Namanny* is prior art to the Patents-in-Suit.

7.     The Evolo Report discloses a flotation device that has a fore-aft length greater than a lateral width, the flotation device having a top surface and a bottom surface as claimed in Claim 1 of the Patents-in-Suit.

8.     *Woolley* and/or *Namanny* disclose a flotation device that has a fore-aft length greater than a lateral width, the flotation device having a top surface and a bottom surface as claimed in Claim 1 of the Patents-in-Suit.

9.     The Evolo Report discloses a flotation device wherein a user can be disposed on the top surface of the flotation device in a prone, kneeling, or standing position as claimed in Claim 1 of the Patents-in-Suit.

10.     *Namanny* discloses a flotation device wherein a user can be disposed on the top surface of the flotation device in a prone, kneeling, or standing position as claimed in Claim 1 of the Patents-in-Suit.

---

[3] Plaintiff's stipulation to the contents of the "Evolo Report" shall not serve as a waiver of any arguments to the admissibility of the Evolo Report at trial and/or whether the Evolo Report qualifies as prior art.

11.     The Evolo Report discloses a flotation device having a forward section, a middle section, and a rear section as claimed in Claim 1 of the Patents-in-Suit.

12.     *Woolley* and/or *Namanny* disclose a flotation device having a forward section, a middle section, and a rear section as claimed in Claim 1 of the Patents-in-Suit.

13.     The Evolo Report discloses a strut having an upper end and a lower end, the upper end fixedly interconnected with the flotation device between the middle section and the rear section of the flotation device as claimed in Claim 1 of the Patents-in-Suit.

14.     *Woolley* discloses a strut having an upper end and a lower end, the upper end fixedly interconnected with the flotation device between the middle section and the rear section of the flotation device as claimed in Claim 1 of the Patents-in-Suit.

15.     The Evolo Report discloses a hydrofoil fixedly interconnected with the lower end of the strut, the hydrofoil having no movable surface as claimed in Claim 1 of the Patents-in-Suit.

16.     *Woolley* discloses a hydrofoil fixedly interconnected with the lower end of the strut, the hydrofoil having no movable surface as claimed in Claim 1 of the Patents-in-Suit.

17.     The Evolo Report discloses a propulsion system for propelling the watercraft in a body of water as claimed in Claim 1 of the Patents-in-Suit.

18.     *Namanny* discloses a propulsion system for propelling the watercraft in a body of water as claimed in Claim 1 of the Patents-in-Suit.

19.     The Evolo Report discloses a propulsion system wherein the propulsion system is connected to the hydrofoil as claimed in Claim 1 of the Patents-in-Suit.

20.     The Evolo Report discloses a watercraft having no moveable steering system as claimed in Claim 1 of the Patents-in-Suit.

21.     *Namanny* discloses a watercraft having no moveable steering system as claimed in

Claim 1 of the Patents-in-Suit.

22.     The Evolo Report discloses a propulsion system wherein the propulsion system comprises a battery, an electric motor, and a propulsor, the propulsor selected from a propeller, a ducted propeller, or a pump-jet as claimed in Claim 2 of the Patents-in-Suit.

23.     *Namanny* discloses a propulsion system wherein the propulsion system comprises a battery, an electric motor, a motor speed controller, and a propulsor, the propulsor selected from a propeller, a ducted propeller, or a pump-jet as claimed in Claim 2 of the Patents-in-Suit.

24.     *Woolley* discloses a hydrofoil wherein the hydrofoil is wing shaped with a front edge and a rear edge that both curve rearwardly as claimed in Claim 6 of '044 Patent.

25.     The Evolo Report discloses a hydrofoil and a strut wherein the hydrofoil is indirectly connected to the strut as claimed in Claim 7 of the '044 Patent and Claim 4 of the '659 Patent.

26.     *Woolley* discloses a hydrofoil and a strut wherein the hydrofoil is indirectly connected to the strut as claimed in Claim 7 of the '044 Patent and Claim 4 of the '659 Patent.

27.     The Evolo Report discloses a strut and a propulsion system wherein the strut is directly connected to the propulsion system as claimed in Claim 8 of the '044 Patent and Claim 5 of the '659 Patent.

28.     The Evolo Report discloses a hydrofoil, strut and a propulsion system wherein a first hydrofoil wing of the hydrofoil is indirectly connected to the strut through the propulsion system as claimed in Claim 9 of the '044 Patent and Claim 6 of the '659 Patent.

29.     The Evolo Report discloses a hydrofoil which comprises a plurality of wings that are interconnected by way of a strut as claimed in Claim 10 of the '044 Patent and Claim 7 of the '659 Patent.

30.     *Woolley* discloses a hydrofoil which comprises a plurality of wings that are interconnected by way of a strut as claimed in Claim 10 of the '044 Patent and Claim 7 of the '659 Patent.

31.     The Evolo Report discloses an electric motor wherein the electric motor is integrated into a waterproof, and streamlined pod, and the watercraft comprises a cooling system for cooling the electric motor as claimed in Claim 12 of the '044 Patent and Claim 9 of the '659 Patent.

32.     *Namanny* discloses an electric motor wherein the electric motor is integrated into a waterproof, streamlined pod, as claimed in Claim 12 of the '044 Patent and Claim 9 of the '659 Patent.

33.     *Woolley* discloses a first hydrofoil wing wherein the first hydrofoil wing includes winglets extending at an angle to a main body of the first hydrofoil wing as claimed in Claim 14 of the '044 Patent.

34.     *Namanny* discloses a wireless handheld controller having a transmitter, and a receiver, wherein the transmitter is adapted to send wireless signals to the receiver that cause an output of the propulsion system to change as claimed in Claim 15 of the '044 Patent and Claim 11 of the '659 Patent.

35.     The Evolo Report discloses a hydrofoil wherein the hydrofoil is spaced a fixed distance apart from the flotation device as claimed in Claim 17 of the '044 Patent.

36.     *Woolley* discloses a hydrofoil wherein the hydrofoil is spaced a fixed distance apart from the flotation device as claimed in Claim 17 of the '044 Patent.

37.     *Namanny* discloses an electric motor wherein the electric motor is a brushless motor as claimed in Claim 20 of the '044 Patent.

12

38.     The Evolo Report discloses a propulsion system wherein the propulsion system is directly connected to the hydrofoil as claimed in Claim 21 of the '044 Patent and Claim 15 of the '659 Patent.

## V.     STATEMENT OF ISSUES WHICH REMAIN TO BE LITIGATED

1.     Plaintiff's Statement: Attached as **Exhibit 1**.

2.     Defendants' Statement: Attached as **Exhibit 2**.

## VI.    ISSUES OF LAW WHICH REMAIN TO BE LITIGATED

The parties expect the following issues of law to be relevant. To the extent that any issues of fact set forth above may be considered issues of law, the parties incorporate those portions by reference. These issues of law may change based on the Court's decisions on certain motions *in limine* or based on the Court's rulings on certain other motions. The parties reserve the right to modify or supplement their list of issues of law that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent order of the Court or by agreement of the parties.

1.     Plaintiff's Statement: Attached as **Exhibit 3**.

2.     Defendants' Statement: Attached as **Exhibit 4**.

## VII.   EXHIBIT LISTS

Any exhibit not listed in a party's exhibit list will be precluded from trial, absent agreement of the parties or good cause shown.

The parties agree to meet and confer at least one week prior to trial to identify a limited number of exhibits that they know will be used at trial (e.g., opening statements, direct examination, closing statements) and will try and resolve any evidentiary objections to those exhibits before trial.  To the extent that any objection to those exhibits remain, the objections will be presented to the Court prior to the exhibits' use.

With respect to opening, the parties agree that they are not required to disclose any exhibit that will be referenced to which there are no unresolved objections. To the extent either party wishes to reference an exhibit during opening that has any unresolved objections, such exhibit(s) shall be disclosed pursuant to the following paragraph and the evidentiary issues will be presented to the Court prior to opening.

Each party will provide exhibits to be used in connection with direct examination by 8:00 p.m. the night before their intended use, and objections will be provided no later than 9:00 p.m. that same night. The parties shall meet and confer in an attempt to resolve those objections by 9:30 p.m. that same night. If any intended exhibits change after the deadline, the party intending to use a new exhibit will promptly notify the opposing party of the change(s); the opposing party will promptly notify the party of any objections to the new exhibit(s). To the extent there are any unresolved objections after the meet and confer, these objections will be presented to the Court the following morning.

## A.   Plaintiff's Exhibits

A list of Plaintiff's pre-marked exhibits, other than those to be used for rebuttal or impeachment purposes, is attached as **<u>Exhibit 5</u>** to this Proposed Pretrial Order. Pursuant to Local Rule 16.3(c)(6), all listed exhibits may be admitted into evidence unless an unresolved objection is specifically noted by Defendants in the columns adjacent to the listed exhibit and corresponding evidentiary support proposed by Plaintiff. Plaintiff reserves the right not to introduce any of the exhibits listed on <u>Exhibit 5</u>, to introduce only parts of those exhibits, and to introduce additional exhibits, which cannot be identified until the time of trial, for impeachment or rebuttal purposes. In the event Plaintiff wishes to use at trial any document which is not included on the parties' exhibit lists and/or the joint exhibit list prepared by the parties (collectively the "Exhibit List"), such document shall not be deemed inadmissible simply because it was not included on the Exhibit

Lists provided the document was earlier produced to Defendants during discovery or was identified as being relied upon by any expert witness providing testimony in the case.

### B.    Defendants' Exhibits

A list of Defendants' pre-marked exhibits, other than those to be used for rebuttal or impeachment purposes, is attached as **Exhibit 6** to this Proposed Pretrial Order. Pursuant to Local Rule 16.3(c)(6), all listed exhibits may be admitted into evidence unless an unresolved objection is specifically noted by Plaintiff in the columns adjacent to the listed exhibit and corresponding evidentiary support proposed by Defendants.  Defendants reserve the right not to introduce any of the exhibits listed on Exhibit 6, to introduce only parts of those exhibits, and to introduce additional exhibits, which cannot be identified until the time of trial, for impeachment or rebuttal purposes. In the event Defendants wish to use at trial any document which is not included on the Exhibit Lists, such document shall not be deemed inadmissible simply because it was not included on the Exhibit Lists provided the document was earlier produced to Plaintiff during discovery or was identified as being relied upon by any expert witness providing testimony in the case.

### C.    Admission of Trial Exhibits

All exhibits listed on each party's exhibit list to which there are no unresolved objection are admissible for all purposes at trial and are admitted into evidence at the time offered by either party.  Notwithstanding the previous sentence, a party may raise a relevance objection to any exhibit at the time the exhibit is offered for admission or used at trial, provided that exhibit is being offered for a purpose not previously disclosed in the parties' pretrial exhibit objections and responses thereto.  No exhibit to which an objection is noted will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit.  At some point before completion of the witness' testimony, any party that has used an exhibit with the witness to which an objection has been noted and wishes that exhibit to be admitted into evidence must formally

move the exhibit into evidence, by exhibit number.  Exhibits to which there is an unresolved objection may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.  Once admitted, counsel may publish exhibits to the jury without requesting to do so. Prior to the use of any impeachment evidence that is not admitted and/or admissible, the offering party shall approach the Court for approval prior to publishing or displaying to the jury.

### D.  Demonstrative Exhibits

The parties will exchange demonstratives to be used in opening statements by 7:00 p.m. the night before opening statements.   The parties will provide any objections to such demonstratives by 9:00 p.m., unless otherwise agreed to by the parties. The parties shall meet and confer in an attempt to resolve those objections by 9:30 p.m. that same night.  If any demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).  To the extent there are any unresolved issues after the meet and confer, these issues will be presented to the Court the following morning.

A party will provide demonstrative exhibits to be used in connection with direct examination by 8:00 p.m. the night before their intended use, and objections will be provided no later than 9:00 p.m. the night before their intended use.  The parties shall meet and confer in an attempt to resolve those objections by 9:30 p.m. that same night.  If any demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).  To the extent there are any unresolved issues after the meet and confer, these issues will be presented to the Court the following morning.

A party will provide demonstrative exhibits to be used in connection with closing arguments by 8:00 p.m. the night before closing, and objections will be provided no later than 9:00 p.m. the night before closing.  The parties shall meet and confer in an attempt to resolve those

objections by 9:30 p.m. that same night.  If any demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).  To the extent there are any unresolved issues after the meet and confer, these issues will be presented to the Court the following morning.

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side via email and/or sharefile link. For any irregular sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF or JPEG copy of 8.5" x 11".

This provision does not apply to demonstratives created during testimony, which do not need to be provided to the other side in advance of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objections to the exhibit.

### E.    Rule 1006 Summaries

The parties agree that they may use charts and/or summaries of voluminous documents, including but not limited to any of the parties' financial records, provided the source of the summary is identified and the source consists of materials listed in the parties' respective Exhibit Lists and/or materials otherwise found to be admissible at trial.

## VIII.   <u>ORDER OF PROOF</u>

The parties agree that the presentation of evidence will follow the burden of proof.  MHL will first present its case-in-chief on infringement and damages.  Waydoo will then present its rebuttal on non-infringement and damages along with its case-in-chief on invalidity.  MHL may then present its rebuttal on invalidity and reply on infringement and damages.  Waydoo may then present its reply on invalidity.  The parties agree that witnesses may be taken out of order at trial based on a particular witnesses' availability to testify during trial.

## IX.   <u>WITNESS LISTS</u>

Any witness not listed will be precluded from testifying, absent good cause shown.

### A.   **Plaintiff's Witnesses**

Plaintiff may offer some or all of the following witnesses on its case-in-chief, rebuttal, or reply, either in person or by deposition. Plaintiff reserves the right not to call any witness listed below. If a witness is unavailable for trial pursuant to Fed. R. Evid. 804, Plaintiff reserves the right to designate portions of such witness's deposition testimony to be read into the record at trial subject to Section VII(C), *infra*.

Plaintiff reserves the right not to offer any designated testimony, to use only parts of such testimony, or to use additional deposition testimony, not identified below, for purposes of impeachment or rebuttal.

Plaintiff neither waives its objections to certain deposition designations nor concedes that deposition testimony is relevant by way of counter-designating or reply-designating.

Plaintiff reserves the right to object to the admissibility of exhibits identified in testimony designated by Defendants.

### i.      Fact Witnesses

| Name | Will Call | May Call | Deposition May Be Used |
|------|-----------|----------|------------------------|
| Nicholas Leason | X | | |
| Steward Wagner | X | | |
| Jack Langelaan | X | | |
| Mario Alvisi | | X | |
| Christopher Barry* | X | | |
| Jeffery Stec* | X | | |
| Terrance Martin | | X | X |
| Kevin Wade | | X | X |
| Wang Ping | | X | X |
| Zhao Tao | | X | X |

### ii.      *Expert Witnesses

1.      <u>Christopher Barry</u>. Mr. Barry is an expert in the field of naval architecture and engineering. Mr. Barry will testify consistent with the reports he prepared in this matter subject to any limitations imposed by the Court and may further provide rebuttal testimony relevant to his area of expertise, including on issues related to naval architecture and engineering.

2.      <u>Jeffrey Stec</u>. Mr. Stec is an expert in the fields of economics, finance, accounting, finance, statistical analysis, marketing, and licensing associated with intellectual property.  Mr. Stec will serve as Plaintiff's monetary damages expert. Mr. Stec is the managing director of Berkeley Research Group, LLC, which is a global strategic advisor and expert consulting firm that provides independent advice, data analytics, valuation, authoritative studies, expert testimony, investigations, transaction advisory, restructuring services, and regulatory and dispute consulting to clients around the world. Mr. Stec will testify consistent with the reports he prepared in this matter subject to any limitations imposed by the Court and may further provide rebuttal testimony relevant to his area of expertise, including accounting, finance, marketing, and licensing associated with intellectual property, including patents.

## B.   Defendants' Witnesses

Waydoo may offer some or all of the following witnesses on its case-in-chief, rebuttal, or reply, either in-person or by deposition.  Waydoo reserves the right not to call any witness listed below.  If a witness is unavailable for trial pursuant to Fed. R. Evid. 804, Waydoo reserves the right to designate portions of such witness's deposition testimony to be read into the record at trial subject to Section VII(C), infra.

Waydoo reserves the right not to offer any designated testimony, to use only parts of such testimony, or to use additional deposition testimony, not identified below, for purposes of impeachment or rebuttal.

Waydoo neither waives its objections to certain deposition designations nor concedes that deposition testimony is relevant by way of counter-designating or reply-designating.

Waydoo reserves the right to object to the admissibility of exhibits identified in testimony designated by MHL.

| Name | Will Call | May Call | Deposition May Be Used |
|---|---|---|---|
| Wang Ping | | X | X |
| Zhao Tao | | X | X |
| Kevin Wade | | X | X |
| Jakob Kuttenkeuler | | X | |
| Jacob Langelaan | | X | X |
| Mark Lanterman (expert) | X | | |
| Michael Triantafyllou (expert) | X | | |
| Phillip Kline (expert) | X | | |
| Nick Leason | | X | X |
| Steward Wagner | | X | X |
| Brent Farese | | X | X |

### i.   Expert Witnesses

1.   <u>Mark Lanterman</u>.  Mr. Lanterman is the Chief Technology Officer of Computer

Forensic Services ("CFS") located in Minneapolis, Minnesota.  Mr. Lanterman has over 30 years

of experience in computer forensics and cybersecurity.  Prior to joining CFS, Mr. Lanterman was

a sworn investigator for the United States Secret Service Electronic Crimes Task Force and acted

as its senior computer forensic analyst.  Mr. Lanterman is also certified by the United States

Department of Homeland Security as a "Seized Computer Evidence Recovery Specialist," and is

certified in computer forensics by the National White-Collar Crime Center.  Both federal and state

court judges have appointed Mr. Lanterman as a neutral computer forensic analyst or special

master.

      2.    <u>Dr. Michael Triantafyllou</u>.  Dr. Triantafyllou is the Henry L. and Grace Doherty

Professor in Ocean Science & Engineering in the Department of Mechanical Engineering at the

Massachusetts Institute of Technology, where he has been teaching for the last 43 years.  He has

also spent the last 5 years directing the Massachusetts Institute of Technology Sea Grant Program,

and has also served as Associate Department Head of Mechanical Engineering and Director of the

Center for Ocean Engineering.  He is currently the Director of the MIT Towing Tank Facility and

Director of the Propeller Tunnel.  Dr. Triantafyllou holds a Doctor of Science degree (Sc.D.) in

Ocean Engineering, a Master of Science in Naval Architecture & Marine Engineering, and a

Master of Science in Mechanical Engineering from the Massachusetts Institute of Technology.

      3.    <u>Phillip Kline</u>.  Mr. Kline is a Managing Director at Insight Economics, where his

practice focuses on IP valuation, litigation consulting, IP strategy, and transactional services.  Mr.

Kline has worked in IP consulting for over 15 years and has extensive experience in the

determination of patent royalty rates both in arm's-length negotiations and in the context of

litigation.  Mr. Kline is a Certified Public Accountant licensed in the state of Illinois.  The Court

has found that Mr. Kline is "sufficiently qualified" to render opinions in this case.  D.I. 155 at 1.

### C.      Agreed Upon Procedures for Live Witnesses

With the exceptions noted above, any witness not listed in the Sections above will be precluded from testifying absent good cause.

If a witness becomes unavailable for trial, the parties agree to timely notify the other parties and supplement their witness list.

Each party will provide the other party with a list, in order of presentation, of witnesses it intends to call live on direct examination (including any additional witnesses to be called by adverse direct examination) by 8:00 p.m. the night before those witnesses are intended to testify in Court.  This list must also include those witnesses who are to be called by designation.  This list is the anticipated order of the proof, but if there will be adjustment to the order for that particular day, the other side must be timely informed.

### D.      Testimony by Deposition

Any deposition testimony not designated, including counter- and reply-designated, will be precluded from trial, except for impeachment purposes as provided herein; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

The parties agree to meet and confer at least one week prior to trial to identify a limited number of deposition designations that they expect will actually be used at trial and will try and resolve any evidentiary objections to that testimony before trial.  To the extent that any objection to that testimony remains, the objections will be presented to the Court prior to their use.

For designations with unresolved objections, the party calling the witness by deposition shall, not later than two (2) calendar days before the witness is to be called at trial, submit to the Court, on behalf of the parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter identifying the pending objections as well as a brief indication (i.e. no more than one

sentence per objection) of the basis for the objection and the offering party's response to it.  Failure to comply with these procedures, absent an agreement by the parties or approval by the Court, will result in waiver of the use of the deposition testimony. All irrelevant and redundant material, including colloquy between counsel, objections, and foreign language questions and answers, will be eliminated when the deposition is read or viewed at trial.

If a party opts to introduce deposition testimony by video, the opposing party's counter designations of that same witness's deposition testimony must also be presented by video at the same time. Prior testimony designation excerpts will be played in the order they are found in the transcript. When such excerpts are introduced, all admissible counter designation excerpts, whether offered by video or by transcript, will be introduced at the time the testimony is offered, subject to the resolution of any objections to the designated or counter-designated testimony. When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played. The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

For those witnesses whose prior deposition testimony will be read or played to the jury, the parties or the Court shall be permitted to make brief transition statements to introduce the witnesses and their role in the litigation.  Transition statements, however, shall not include argument or any commentary on the evidence.

Any party may use deposition testimony that is designated or counter-designated by either party at any time (including testimony that the opposing party had designated or counter-designated and then subsequently dropped), to the same effect as if that party had initially designated the testimony as its own, subject to all objections.

The deposition testimony excerpts to be introduced by Plaintiff are listed on **Exhibit 7**, attached. The deposition testimony excerpts to be introduced by Defendants are listed on **Exhibit 8**, attached.

### E.     Impeachment with Prior Inconsistent Testimony

Subject to individual objections asserted by the parties, the parties agree that the Court may allow the use of deposition testimony and other prior sworn testimony (such as expert reports submitted in this case) for impeachment purposes.

### F.     Objections to Expert Testimony

The parties propose that the Court rule on objections to experts testifying beyond the scope of prior expert disclosures during trial. The parties further propose that the Court rule on objections to experts testifying inconsistent with the Court's prior *Daubert* rulings. The parties request that time spent in addressing objections to testimony that is inconsistent with this Court's prior *Daubert* rulings should be charged to the party offering the inconsistent testimony. If the objection is overruled, the time should be charged to the objecting party.

## X.     BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVE IN SUPPORT OF ITS CLAIMS

1.     Each of the Accused Products infringes upon the Patents-in-Suit.

2.     The Accused Products literally infringe Claims 1, 2, 5, 6, 7, 8, 10, 11, 12, 13, 15, 17, 18, 20, and 21 of the '044 Patent since each of the Accused Products contains every requirement of the '044 Patent exactly as set forth in Claims 1, 2, 5, 6, 7, 8, 10, 11, 12, 13, 15, 17, 18, 20, and 21.

3.     The *Flyer* model literally infringes Claim 14 of the '044 Patent since the *Flyer* model contains every requirement of the '044 Patent exactly as set forth in Claim 14.

4.     The *Flyer One* and *Flyer One+* models literally infringe Claim 9 of the '044 Patent

since the *Flyer One* and *Flyer One+* models contain every requirement of the '044 Patent exactly as set forth in Claim 9.

5.      The Accused Products infringe Claim 11 under the doctrine of equivalents since every requirement of Claim 11 of the '044 Patent is included in the Accused Products either literally or in a manner that is equivalent to what is set forth in Claim 11.

6.      The Accused Products literally infringe Claims 1, 2, 4, 5, 7, 8, 9, 10, 11, 13, and 15 of the '659 Patent since each of the Accused Products contains every requirement of the '659 Patent exactly as set forth in Claims 1, 2, 4, 5, 7, 8, 9, 10, 11, 13, and 15.

7.      The *Flyer One* and *Flyer One+* models literally infringe Claim 6 of the '659 Patent since the *Flyer One* and *Flyer One+* models contain every requirement of the '659 Patent exactly as set forth in Claim 6.

8.      The Accused Products infringe Claim 8 of the '659 Patent under the doctrine of equivalents since every requirement of Claim 8 of the '659 Patent is included in the Accused Products either literally or in a manner that is equivalent to what is set forth in Claim 8.

9.      Defendants have willfully infringed and are willfully infringing Plaintiff's patents.

10.      Plaintiff is entitled to recover a reasonable royalty for Defendants' infringement starting from March of 2019.

11.      Plaintiff is entitled to a royalty of ████████████ unit sold by Defendants, or higher.

## XI.    **BRIEF STATEMENT OF WHAT DEFENDANTS INTEND TO PROVE AS A DEFENSE AND/OR COUNTERCLAIM**

Waydoo submits the following brief statement of what it intends to prove at trial, including both as part of its defenses and as part of its counterclaims. Waydoo also intends to offer evidence as to the issues of fact and of law identified elsewhere in this Pretrial Order, and to offer evidence

to rebut the evidence and allegations offered by MHL.  Waydoo's statement is based upon the current status of the case and the Court's current rulings, and Waydoo reserves the right to supplement or revise this statement in response to MHL's pretrial activities, any subsequent discovery, or any further decisions or orders of the Court.

1.      Waydoo intends to demonstrate that MHL has failed to prove that any of the Accused Products infringe any of the asserted claims of the Patents-in-Suit, literally or under the doctrine of equivalents.  For example, Waydoo intends to demonstrate that MHL has failed to carry its burden to prove that the Accused Products are "statically stable" as required by each asserted claim of the '044 Patent and that the Accused Products are "stable" as required by each asserted claim of the '659 Patent.

2.      Waydoo intends to rebut MHL's allegations regarding willful infringement of the Patents-in-Suit, and will demonstrate that should any claim of the Patents-in-Suit be found valid and infringed, any infringement by Waydoo was not willful.

3.      Waydoo intends to rebut MHL's allegations regarding damages and injunctive relief, and will demonstrate that should any claim be found valid and infringed, (i) the reasonable royalty in this case is, at most, a rate of █████ of Waydoo's sales, (ii) the royalty period begins no earlier than August 2019, (iii) and injunctive relief is not available and otherwise not warranted.

4.      Waydoo intends to prove that the Patents-in-Suit are invalid for indefiniteness as the claims, read in light of the specification, fail to inform, with reasonable certainty, a person of ordinary skill in the art about the scope of the invention.  For example, Waydoo intends to demonstrate that the specification of the Patents-in-Suit does not provide any guidance on finding or discerning the upper limit on stability while keeping the craft controllable, or provide any design parameters for a hydrofoil wing or watercraft, such that the watercraft is stable and yet controllable.

26

5.      Waydoo intends to prove that the asserted claims of the '044 Patent are invalid for lack of written description.  For example, Claim 1 of the '044 Patent and its dependent claims only require the claimed watercraft have "static stability" and therefore cover statically stable, but dynamically <u>un</u>stable watercraft (which are overall unstable watercraft).   However, the specification of the '044 Patent discloses the alleged invention is a stable watercraft.

6.      Waydoo intends to prove that the specification of the Patents-in-Suit fails to enable a person of ordinary skill in the art to make and use, without undue experimentation, (i) a passively stable watercraft and (ii) a hydrofoil designed to provide passive static stability.

7.      Waydoo intends to prove that the Evolo Report qualifies as a printed publication under 35 U.S.C. § 102, including because it was publicly accessible prior to October 2013.

8.      Waydoo intends to prove that MHL has failed to rebut the presumption that the Evolo Report is enabling.

9.      Waydoo intends to prove that the Evolo Report anticipates the Patents-in-Suit because it discloses each limitation of the asserted claims of Patents-in-Suit as those limitation are arranged in the asserted claims.

10.     Waydoo intends to prove that, prior to October 2013, the asserted claims of the Patents-in-Suit were obvious in light of the Evolo Report alone, in combination with the knowledge of a person of ordinary skill in the art, and/or in combination with *Namanny*.

11.     Waydoo intends to prove that, prior to October 2013, the asserted claims of the Patents-in-Suit were obvious in light of the combination of *Woolley* and *Namanny*.

12.     Waydoo intends to demonstrate that MHL has not carried its burden to prove that MHL's eFoil products are embodiments of the Patents-in-Suit.

13.     Waydoo intends to demonstrate that MHL has not carried its burden to prove that

any nexus exists between the alleged invention as claimed by the Patents-in-Suit and any secondary indicia of non-obviousness.

14.     Waydoo intends to show that MHL has not carried its burden to prove that any alleged embodiments of the Patents-in-Suit have achieved commercial success.

15.     Waydoo intends to show that MHL has not carried its burden to prove that alleged invention as claimed by the Patents-in-Suit satisfied a long-felt need for a solution to problems facing inventors.

16.     Waydoo intends to demonstrate that MHL has failed to carry it burden to show that others have tried and failed to invent a personal hydrofoil watercraft as claimed by the Patents-in-Suit.

17.     Waydoo intends to show that MHL has not carried its burden to prove that others have copied (i) the alleged invention as claimed by the Patents-in-Suit, or (ii) any alleged embodiments of the Patents-in-Suit.

18.     Waydoo intends to show that MHL has not carried its burden to prove that the alleged invention as claimed by the Patents-in-Suit achieved unexpected superior results to any prior art.

19.     Waydoo intends to show that MHL has not carried its burden to prove that the alleged invention as claimed by the Patents-in-Suit or any commercial embodiment of the Patents-in-Suit have been praised in the industry.

20.     Waydoo intends to show that the alleged invention of the Patents-in-Suit was criticized in the industry.

21.     Waydoo intends to demonstrate that others have taken licenses to the Patents-in-Suit under threat of litigation.

**A.     Facts That Waydoo Intends to Prove at Trial, Which MHL Has Already Admitted to the Court, But Did Not Agree to Include as Undisputed Facts[4]**

22.     Waydoo intends to demonstrate that the Evolo project website was first "seen" and first "crawled" by Google on ▇▇▇▇▇▇▇  D.I. 147, Hearing Tr. 6:2-6.

23.     Waydoo intends to demonstrate that by ▇▇▇▇▇▇, the Evolo project website was publicly available on the internet.  D.I. 147, Hearing Tr. 6:2-6.

24.     Waydoo intends to demonstrate that the Evolo Report was first "seen" by Google on ▇▇▇▇▇▇, and first "crawled" by Google on ▇▇▇▇▇▇.  D.I. 147, Hearing Tr. 7:1-5.

25.     Waydoo intends to demonstrate that the Evolo project website contains a link to download the Evolo Report.  D.I. 147, Hearing Tr. 6:11-15.

26.     Waydoo intends to demonstrate that the Evolo Report was successfully downloaded by at least 17 unique IP addresses prior to October 10, 2013, at least one of which was located in the United States.  D.I. 147, Hearing Tr. 6:11-15; D.I. 80-21 ¶¶ 7, 9.

## XII.     BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVE AS A DEFENSE TO DEFENDANTS' COUNTERCLAIMS[5]

1.     The specification of the '659 Patent satisfies the enablement requirement.

2.     The specification of the '659 Patent enables a person of ordinary skill in the art to make and use a passively stable watercraft without an unreasonable amount of experimentation.

---

[4] MHL disputes that any comments from counsel and/or factual concessions made during summary judgment briefing solely for purposes of summary judgment are binding upon or otherwise serve to estop MHL at trial. Facts are construed in favor of the non-moving party at summary judgment and any of these alleged "admissions" were made solely to streamline the summary judgment process. MHL is not required to stipulate to facts proposed by Waydoo for use at trial – just as Waydoo has refused to stipulate to facts that are not reasonably in dispute. It is Waydoo's burden to establish invalidity by clear and convincing evidence and it should required to present evidence to support its claims.

[5] Plaintiff reserves the right to present proof and/or arguments to rebut Waydoo's invalidity defenses based on obviousness, indefiniteness, and failure to satisfy the written description requirement should the Court determine that those issues are properly before the Court at trial.

3.      The specification of the '044 Patent satisfies the enablement requirement.

4.      The specification of the '044 Patent enables a person of ordinary skill in the art to make and use a hydrofoil designed to provide passive static stability without an unreasonable amount of experimentation.

5.      The Evolo Report does not qualify as a printed publication because it was not publicly accessible prior to the filing of the provisional application to the Patents-in-Suit.

6.      The Evolo Report does not anticipate the Patents-in-Suit because it does not teach and/or disclose each and every limitation of the Patents-in-Suit.

7.      The Evolo Report is not enabling.

8.      Claims 6, 13, 14, and 15 of the '044 Patent were not obvious in light of the Evolo Report and/or in combination with the *Namanny* reference.

9.      Claims 10 and 11 of the '659 Patent were not obvious in light of the Evolo Report and/or in combination with the *Namanny* reference.

10.     The Asserted Claims of the '044 Patent were not obvious in light of the combination of the *Woolley* and *Namanny* references.

11.     The Asserted Claims of the '659 Patent were not obvious in light of the combination of the *Woolley* and *Namanny* references.

12.     Plaintiff's commercial embodiments have achieved commercial success.

13.     Plaintiff's commercial embodiments satisfied a long-felt need for a solution to problems facing inventors.

14.     Others have tried and failed to invent the inventions of the Patents-in-Suit.

15.     Others have copied Plaintiff's commercial embodiments.

16.     Plaintiff's commercial embodiments achieved unexpected superior results to any

alleged prior art.

17.     Plaintiff's commercial embodiments have been praised in the industry.

18.     Others have sought to or obtained licenses to the Patents-in-Suit.

## XIII.  ANY AMENDMENTS OF PLEADINGS

None.

## XIV.  CERTIFICATION REGARDING SETTLEMENT

### A.     MHL's Position

Plaintiff has attempted to resolve this case by sending at least two different settlement offers to Defendants. Defendants have not responded to either offer. Contrary to Defendants' position below, Defendants have never made an offer of settlement. Plaintiff does not believe the Defendants have engaged in a good faith attempt to try and settle this case.

### B.     Waydoo's Position

Early in this case, prior to fact depositions, Waydoo initiated discussions with MHL and offered to settle in good faith.  MHL countered with an unreasonable settlement offer, nearly double the royalty rate that was later calculated by MHL's damages expert.  Contrary to MHL's position above, Waydoo told MHL that its offer was financially unreasonable and, thus, unacceptable.  Waydoo did not consider MHL's approach to be a good-faith attempt to settle this litigation.  After the close of expert discovery, MHL sent Waydoo a settlement offer that matched MHL's damages expert's opinions with respect to damages.  Waydoo did not consider this a good-faith attempt to settle this litigation either.

## XV.   ANY OTHER MATTERS TO BE ADDRESSED

### A.   Disputes Raised by Waydoo

#### i.   Dispute Over the Enablement of the Evolo Report

##### a.   Waydoo's Position

During briefing on motions *in limine*, MHL revealed for the first time that its expert plans to testify that the Evolo Report is not enabling based on the content of a video.  Any such argument must be excluded as new and improper.  Prior art printed publications are presumed enabling.  *See Cubist Pharms., Inc. v. Hospira, Inc.*, 75 F. Supp. 3d 641, 660–61 (D. Del. 2014), *aff'd*, 805 F.3d 1112 (Fed. Cir. 2015); *Robocast, Inc. v. Apple, Inc.*, 39 F. Supp. 3d 552, 565 (D. Del. 2014).  MHL's expert, Christopher Barry, discusses enablement of the Evolo Report in one paragraph for each Asserted Patent, but does ***not*** rely on or cite to ***any*** video.  D.I. 85-1, Ex. 4 ¶ 110 ('044 patent) ("To the extent that Dr. Triantafyllou asserts that any of the prototypes of the Evolo Report are passively static stability [sic], the Evolo Report is not enabled."), ¶ 186 ('659 patent) (same, but *viz.* "passively stability [sic]").  Contrary to what MHL states below, Waydoo is not arguing that Mr. Barry does not cite any videos in his report.  His citations to videos occur only when Mr. Barry is discussing anticipation of the Evolo Report.  Once Mr. Barry turns to discussing enablement, he stops relying on videos entirely and instead relies solely on one document.  Thus, if Mr. Barry were to opine at trial that a video demonstrates non-enablement of the Evolo Report, it would be new and improper. FRCP 37(c)(1).  MHL has no other expert who can opine on enablement with respect to any video.

##### b.   MHL's Position

MHL's position on the various Evolo videos is fully set forth in both its motion, *in limine*, to preclude any evidence, or testimony regarding the Evolo videos, Evolo articles, and other Evolo project materials and its response in opposition to Defendants' motion, *in limine*, No. 3, to exclude

YouTube videos.  *See* Exhibits 9 and 10 hereto.  As confirmed in those arguments, MHL seeks to use the Evolo videos as evidence to demonstrate that the Evolo Report is not enabling and/or does not teach the limitations of the patents.  Mr. Barry does not just reference the videos in one paragraph per each patent as claimed by Waydoo.  Barry references the videos throughout his expert report in order to buttress his positions that the Evolo report does not teach stability ("simply because the Evolo Report sets forth various goals does not mean those goals were taught or achieved" and confirming they were not achieved following review of the videos of the craft in operation) and/or that the Evolo Report is not enabling ("a person of ordinary skill in the art would not have been motivated to modify the device of the Evolo Report to achieve the claimed invention with any reasonable likelihood of success.")  *See* Barry Invalidity Report, D.I. 85-1, Ex. 4, ¶¶ 87, 92, 93, 94, 99, 100, 101, 103, 109, 110, 164, 169, 170, 171, 176, 178, 180, 185, and 186.  However, even if Barry was precluded from referencing the Evolo videos he cites throughout his expert report, MHL is not limited to presenting evidence of lack of enablement or failure to anticipate solely through its expert.  The Evolo videos reflect factual evidence which could be presented through any number of potential witnesses.

### ii.      Dispute Over MHL's Fees, Costs, and Injunction Evidence

#### a.      Waydoo's Position

These issues are for the Court to decide, not the jury.  MHL should not be allowed to present to the jury evidence that pertains to MHL's attorneys' fees, its costs, and the allegation that it is entitled to a permanent injunction, in order to avoid prejudice to Waydoo and jury confusion.  Any evidentiary presentation on those issues should occur through a hearing with the Court following the jury trial on infringement and validity.  Contrary to MHL's assertions, Waydoo could not have raised this in a motion *in limine* because the deadline for exchanging them passed before Waydoo had any reason to believe that MHL planned to make these highly prejudicial arguments

to the jury.  Moreover, Waydoo is not seeking to exclude this evidence, only to bifurcate its presentation so it reaches the appropriate factfinder (i.e., the Court) and does not prejudice/confuse a different factfinder.

In support of an injunction, MHL has argued, among other things, that Waydoo's boards are poor quality/unsafe (e.g., its batteries can catch fire) and, thus, pose a risk to MHL's reputation and/or the risk of eFoils being banned from the U.S. market.  Those alleged risks, in MHL's view, represents irreparable harm to MHL.  Notwithstanding the lack of any such harm to date, and the fact that MHL's own boards have had significantly more incidences of fire, MHL's theories would be remarkably prejudicial to Waydoo and have no relevance to any issue being tried to the jury (e.g., infringement, validity, or damages).  *See* FRE 402, 403.

MHL, for the first time, argues that product quality is relevant to a reasonable royalty. MHL's damages expert does not rely on alleged product quality difference when opining on a reasonable royalty.  Moreover, MHL's new-found position that it "would be less likely to agree to a license in a hypothetical negotiation where the potential licensee's product is of an inferior quality sold at a discounted price," is contrary to the fundamental assumption underlying the hypothetical negotiation.  *Georgia-Pacific* requires, and MHL's damages expert recognizes, that a hypothetical negotiation is between parties who are "both are ***willing*** to enter into a license agreement."  D.I. 85-1, Ex. 11 at 20 (emphasis added).  MHL's claim that product quality is relevant to reasonable royalty is an after-the-fact justification for it to present prejudicial evidence to the jury.

MHL has confirmed that it is not seeking an advisory jury opinion on its request for injunctive relief, but has indicated that it nevertheless intends to show its alleged irreparable-harm evidence—including its assertions that Waydoo's boards can catch fire—to the jury.  Under such

circumstances, a separate trial or hearing on this issue is appropriate to avoid prejudice and jury confusion.  FRCP 42(b) ("[T]o avoid prejudice . . . the court may order a separate trial of one or more separate issues . . . ."); FRCP 16(c)(2)(M) (permitting a court to order a separate trial under Rule 42(b) at the pretrial conference).  Accordingly, Waydoo respectfully requests that the Court bifurcate any issues relating to attorney's fees, costs, and injunctive relief, and hold a separate evidentiary hearing after trial, as appropriate.

### b.      MHL's Position

As an initial matter, Waydoo had the opportunity to present this issue through a motion *in limine* and failed to do so. Waydoo is improperly attempting to circumvent the limitations placed on motions *in limine* by effectively arguing a fourth motion *in limine* here.  In any event, except to the extent underlying facts are presented which would support an award of fees and costs, for example, evidence which would go toward a finding of willful infringement, MHL does not intend to present evidence/argument on the fees or costs issues to jury. As to injunctive relief, evidence of Waydoo's product quality is indeed relevant to the issue of whether MHL has suffered irreparable harm as a result of Waydoo's infringement. That same evidence is also relevant to reasonable royalty damages in that MHL would be less likely to agree to a license in a hypothetical negotiation where the potential licensee's product is of an inferior quality sold at a discounted price.  MHL believes that allowing this evidence to be presented during trial will be the most efficient and expedient way for the Court to hear the evidence which supports both entitlement to injunctive relief and/or the amount of a reasonable royalty.

35

### B.      Disputes Raised by MHL

### i.      Dispute Over Waydoo's Obviousness Arguments

### a.      MHL's Position

It is MHL's position that Waydoo overstates the scope of the issues that are properly before the Court.  With respect to obviousness based on the Evolo Report, Waydoo has only presented evidence to support the argument that Claims 6, 13, 14, and 15 of the '044 Patent and/or Claims 10 and 11 of the '659 Patent, are obvious in light of the Evolo Report alone and/or in combination with the *Namanny* patent reference.  *See* Triantafyllou Expert Report, D.I. 87-15, pp. 75-99 ('044 Patent) and 100-115 ('659 Patent).  Should Waydoo attempt to present evidence and testimony from its expert that any claims other than those cited above are invalid in light of the Evolo Report, such evidence and testimony must be excluded as beyond the scope of the prior expert reports.

Waydoo contends that Dr. Triantafyllou's report, and specifically the claim charts included therein, "apply as equally to his obviousness argument as they do to his anticipation argument." As Waydoo seemingly admits, those claim charts only address the alleged anticipation argument. *See also id.* at pp. 88 and 114 ("As shown in the chart above, the Evolo Report anticipates each of the '044 Claims because the Report discloses each claim element as those elements are arranged in the claims."; "[a]s shown in the chart above, the Evolo Report anticipates each of the '659 Claims because the Report discloses each claim element as those elements are arranged in the claims.").  In other words, the claim charts assert that each claim element is found in the Evolo Report.  However, the claim charts do <u>not</u> provide any information or analysis as to how the Evolo Report would be modified or changed to allegedly satisfy the claim element if absent from the Evolo Report.  In fact, Dr. Triantafyllou ***only*** provides obviousness opinions based on modifying Evolo or combining Evolo with the *Namanny* reference with respect to Claims 6, 13, 14, and 15 of the '044 Patent and/or Claims 10 and 11 of the '659 Patent.  *Id.* at pp. 95-99 and 115.  Allowing

Waydoo to now argue that <u>all</u> claims are invalid as obvious based on the Evolo Report (alone or in combination with *Namanny*) would be outside the scope of the expert report and, without a prior opportunity to address such arguments, unduly prejudicial to MHL.

### b.  Waydoo's Position

Since the outset of this case, Waydoo has maintained that the Evolo Report renders the claims of the Asserted Patents obvious.  For example, Waydoo's counterclaims for declaratory judgement cited the Evolo Report as a basis of invalidity.  D.I. 13 ¶¶ 31, 33, 40, 42.  Waydoo's invalidity contentions included obviousness based on the Evolo Report alone as a basis for invalidity of each asserted claim of the Asserted Patents.  Finally, Waydoo's technical expert, Dr. Triantafyllou opined, and presented evidence to show that the Evolo Report alone renders each asserted claim of the Asserted Patents obvious.  Yet, MHL asserts that "Waydoo has only presented evidence to support the argument that Claims 6, 13, 14, and 15 of the '044 Patent and/or Claims 10 and 11 of the '659 Patent, are obvious in light of the Evolo Report alone and/or in combination with the *Namanny* patent," while citing to *25 pages* of Dr. Triantafyllou's report for the '044 patent and a further *16 pages* for the '659 patent.  What MHL overlooks is that those 41 pages include claim charts that set out each and every element from each and every asserted claim from both Asserted Patents, along with corresponding disclosures from the Evolo Report and *Namanny*.  As Dr. Triantafyllou set out his argument, those claim charts apply as equally to his obviousness argument as they do to his anticipation argument.  Accordingly, Waydoo can argue at trial that each asserted claim is obvious over the Evolo Report alone and/or in combination with *Nammany* without exceeding the scope of Dr. Triantafyllou's reports.

ii.    **Dispute Over Waydoo's Written Description Argument**

a.    **MHL's Position**

Similarly, Waydoo's written description argument with respect to the '044 Patent has never before been raised in these proceedings.  Waydoo only recently submitted, on March 2, 2023, a "supplemental" expert report from Dr. Triantafyllou articulating its new arguments, which purport to stem from the Court's determination that the preamble of the '044 Patent is not limiting. Waydoo asserts that "Dr. Triantafyllou opined in his original expert reports that the patent disclosures required overall stability and that claims that do not require overall stability are therefore invalid for lack of written description."  To the contrary, Dr. Triantafyllou opined that claims 16-20 of the '659 Patent are invalid for lack of written description and, specifically, because the claims did not recite "passive *static stability*."  D.I. 87-15, pp. 69-70.  ("Claim 16 of the '659 patent does not contain an express requirement that the watercraft be 'passively <u>statically stable</u>.' Claim 16 is the only independent claim that lacks this requirement."; "the patents do not describe (in words or figures) passively <u>statically unstable</u> hydrofoil watercraft in any detail") (emphasis added).  He did not opine that the claims were invalid for lack of written description because they failed to recite "overall" stability, as Waydoo seems to contend.  And, in fact, claim 1 of the '044 Patent recites "static stability" just as Dr. Triantafyllou opined is required to satisfy the written description requirement.  *Id.* at 70, ¶ 201 ("The patent specification is abundantly clear that passive <u>static stability</u> is desirable and should be sought out."; "Moreover, the Patent Office allowed the original set of claims (the '044 patent's claims) on the understanding that they required passive <u>static stability</u>.").  To now argue that the claims of the '044 Patent do not satisfy the written description requirement despite reciting "static stability" is entirely new and contrary to Dr. Triantafyllou's report.  Consequently, allowing Waydoo to argue that the '044 Patent is invalid for lack of written description would be outside the scope of the original expert report and, without a

38

prior opportunity to address such arguments including Dr. Triantafyllou's newly proposed "supplement", unduly prejudicial to MHL.

### b.    Waydoo's Position

Waydoo's written description argument is not new—Waydoo already prevailed, on the same argument, over claims 16-20 of the '659 patent.  Waydoo should be permitted to argue at trial that the '044 patent is invalid, also for failing the written description requirement.

First, this is not a new argument.  Dr. Triantafyllou opined in his original expert reports that the patent disclosures required overall stability and that claims that do not require overall stability are therefore invalid for lack of written description.  Dr. Triantafyllou's opinions were not limited to just "static stability" as MHL alleges.  *See e.g.*, D.I. 85-1, Ex. 7 ¶ 196 ("The Asserted Patents do not contain sufficient written description for a hydrofoil watercraft that is **not** passively stable." (emphasis original)); D.I. 85-1, Ex. 9 ¶ 63 ("My argument is that the inventor did not *invent* an unstable craft, which, as I understand it, is what the written-description requirement requires." (emphasis original)).  Dr. Triantafyllou also spoke specifically of static stability in certain instances because there was no factual dispute as to whether the alleged invention required static stability.

Second, Dr. Triantafyllou had no reason to point out that this opinion applied to the '044 patent at the time of the expert reports because it was only through summary judgment that the Court decided that the preamble of claim 1 was non-limiting.  Waydoo raised the written description problem promptly, in supplemental briefing after the summary judgment hearing and before the Court finalized its construction.  D.I. 145 at 3.  Waydoo re-raised this issue shortly thereafter, and MHL informed Waydoo that it did not agree that Dr. Triantafyllou's opinions could be provided at trial.  Waydoo immediately provided MHL with a 1-page supplement to Dr. Triantafyllou's report, which presented no new analysis and noted that his opinions apply equally

to all of the '044 patent in view of the new construction.

Even if this theory from Dr. Triantafyllou had not been previously disclosed, there is no basis for its exclusion here.  In considering MHL's motion to strike, this Court should consider the *Pennypack* factors to determine whether a failure to disclose was harmless:  (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld.  *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); *see also Vectura Ltd. v. GlaxoSmithKline, LLC*, 2019 WL 1436296, at *1 (D. Del. Apr. 1, 2019).  None of these factors support exclusion here.  There is no prejudice given the notice that Waydoo provided in the supplemental summary judgment briefing.  There is no potential disruption of trial because Dr. Triantafyllou's supplemental report does not add any new analysis or arguments.  There was no bad-faith failure to disclose here, especially given that this situation arose from an unexpected claim construction—prompted by MHL in its summary judgment briefing—after the close of expert discovery.  Finally, the evidence is important because it goes to the validity of the '044 patent, and is based on the same reasoning on which the Court previously invalidated certain other claims in this case.  Excluding Waydoo's argument or Dr. Triantafyllou's supplemental report would be an extreme result here, and MHL's arguments should be rejected.  *Konstantopoulos,* 112 F.3d at 719.

### iii.     Dispute Over Waydoo's Indefiniteness Argument

### a.     MHL's Position

Waydoo's indefiniteness argument was raised during claim construction and the Court held that the term "designed to provide passive static stability" was not indefinite ("I reject Defendants' argument that the term is indefinite").  *See* D.I. 66, PageID# 2208.  And then on summary judgment,

the Court construed the claim term "a passively stable, weight-shift controlled personal hydrofoil watercraft" to mean "a weight-shift controlled personal watercraft having a hydrofoil that does not have any moveable components and which, when disturbed, (1) has an initial tendency to return to its original condition and (2) eventually returns to its original condition." *See* D.I. 153, PageID# 11008. Consequently, Waydoo's indefiniteness arguments, which is a matter of law, have been settled.

Because the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction, indefiniteness, like claim construction, is a question of law. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." ); and *UCB, Inc. v. Accord Healthcare, Inc.*, 201 F. Supp. 3d 491, 527–28 (D. Del. 2016), aff'd, 890 F.3d 1313 (Fed. Cir. 2018) ("Indefiniteness is a question of law."). In *Nautilus*, the Supreme Court revised the standard for indefiniteness and articulated that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The Federal Circuit has "reiterated post-Nautilus that 'general principles of claim construction apply' to the question of indefiniteness." *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1370 (Fed. Cir. 2017) (citing *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015)). Waydoo's indefiniteness argument is a question of law, which, as discussed above, was settled during claim construction and is nonetheless not an issue for the jury.

####### b.       Waydoo's Position

Waydoo's indefiniteness argument has not been settled by the Court.  The issue previously before the Court was whether "the specification treats stability as simply a 'personal preference.'" D.I. 66 at 8.  In contrast, the indefiniteness issue here is whether the Asserted Patents inform a POSA, with reasonable certainty, about the ***limits*** of static stability and overall stability (each a claim term), such that a watercraft according to the claims is statically stable or stable while remaining weight-shift controllable (also a claim term) in view of the inverse relationship between controllability and stability ('044 Patent, 7:11-18).  The parties' experts disagree whether the Asserted Patents do.  *See, e.g.*, D.I. 85-1, Ex. 4 ¶ 61.  That disagreement means that this is chiefly a factual dispute, "amenable to resolution by the jury."  *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003); *see also Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, 2020 WL 4699049, at *11 (D. Del. Aug. 13, 2020) ("[T]he Federal Circuit [has] made clear that indefiniteness is amenable to resolution by the jury where the issues are factual in nature."), *aff'd*, 996 F.3d 1342 (Fed. Cir. 2021); *Dow Chem. Co. v. NOVA Chemicals Corp. (Canada)*, 629 F. Supp. 2d 397, 404 (D. Del. 2009) ("Although it may generally behoove the Court to address indefiniteness as a legal matter in the context of claim construction, there may arise cases where genuine issues of fact simply preclude such a treatment.").

####### iv.       Dispute Over International Witnesses

####### a.       MHL's Position

MHL objects to allowing Waydoo to present the testimony of its corporate witnesses remotely.  Such testimony would pose an undue burden upon MHL in both timing and substance. MHL would be denied the opportunity to confront Waydoo's only fact witnesses in person – and MHL would be forced to undertake the tedious and time consuming process of questioning a witness, through a translator, and through a remote video application.  The parties are only

provided a limited amount of time to present their case and rebut the opposition's case.  MHL should not be punished because Waydoo is unable to present any witnesses live at trial to be questioned in person.

As a compromise, MHL offered that it would agree to allow Waydoo to present the testimony of Wang Ping and Zhao Tao (Waydoo's corporate witnesses) remotely provided MHL would be permitted, subject to the Court's approval, to present their testimony through the respective depositions of the witnesses.  Waydoo refused this proposal.  MHL has gone to great effort and expense to have prepared condensed versions of the video depositions which eliminate the wasted time of having to listen to (a) the attorney question in English; (b) the translated attorney question in Mandarin; (c) the Mandarin answer from the witness; and (d) the translated answer in English.  It would be much more efficient and less time consuming to permit MHL to present this testimony via video deposition if Waydoo is permitted to present these witnesses by remote video application.

Should the Court permit Waydoo's international employee witnesses to provide their testimony remotely, MHL asks the Court to allow it to present the testimony of these witnesses in its case in chief through the already-recorded video depositions.  Since both of these witnesses were designated as 30(b)(6) corporate representatives of Waydoo, Rule 32 allows for the use of the deposition testimony for any purpose at trial.  *See* Rule 32(a)(3).  Further, Rule 32(a)(4)(B) permits MHL to present the testimony of these witnesses via deposition because they are located more than 100 miles from the court and/or are located outside of the United States.

### b.    Waydoo's Position

Up until two hours before the Pre-trial Order was due, MHL had agreed that Waydoo's international employees could testify remotely.  Waydoo agreed to bear any expenses related to its witnesses' testimony being remote.  In addition to the live testimony of Waydoo's witnesses, MHL

demands to also be able to affirmatively use their deposition testimony as a condition to Waydoo's witnesses testifying remotely.   Whether the deposition testimony does or does not meet the requirements of Fed. R. Civ. P. 32 has no bearing on whether Waydoo's witnesses should be allowed to testify remotely.   It has always been a possibility that Waydoo's international employees would testify live and in-person.   The only issue the parties are disputing is whether Waydoo's witnesses can testify remotely.

### C.      Motions *in Limine*

#### i.      Plaintiff's Motions *in Limine*

Plaintiff's Motions *in Limine*, Defendants' responses to Plaintiff's motions, and Plaintiff's replies in support of its motions are attached as **Exhibit 9**.

#### ii.      Defendants' Motions *in Limine*

Defendants' Motions *in Limine*, Plaintiff's responses to Defendants' motions, and Defendants' replies in support of their motions are attached as **Exhibit 10**.

### D.      Number of Jurors

The parties agree that there will be eight (8) jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

### E.      Length of Trial

The trial will be timed. Unless otherwise ordered, time will be charged to a party for its (i) opening statement, (ii) direct and redirect examinations (including deposition designations) of witnesses it calls, (iii) cross-examination of witnesses called by the other party, and (iv) argument on any objections (as detailed in the following paragraph).

In the event a party brings an objection which results in argument, the party raising the

objection will be allocated the full time spent in arguing the objection should the objection be overruled. Should the objection be sustained, the parties will split the time evenly.

The parties will be given a separate time limit for their respective closing arguments.  The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted time, the Court will terminate the party's trial presentation.

Considering the Court's procedures for counting time and considering the nature and extent of the parties' disputes, the parties request **15 hours** each for their trial presentation (as allotted above).

### F.      Motions for Judgment as a Matter of Law

The parties agree that motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) will be presented and argued at breaks to avoid any use of the allotted trial time.

### G.      Order to Control Course of Action

This Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

### H.      Sequestration of Witnesses

The parties agree that, pursuant to Fed. R. Evid. 615, the Court should prevent fact witnesses from hearing the testimony of other witnesses. The parties further agree that in accordance with provision (2) of Rule 615, this exclusion rule will not apply to the one officer or employee designated by each party as its representative at trial. The parties further agree that this exclusion rule will not apply to expert witnesses. The parties further agree that witnesses who are otherwise sequestered pursuant to this paragraph may be present in the courtroom during Opening Statements, and after they have testified. Counsel for the parties shall notify one another by e-mail of their corporate representative no less than one week before the first day of trial.

## I.     Post-Trial Briefing

The briefing schedule for all post-trial motions, including renewed motions for judgment as a matter of law and motions for a new trial will be decided after the trial. Assuming no judgment has been entered, the parties will submit a proposed schedule to the Court no later than fourteen (14) days following conclusion of the trial.

## J.     Jury Notes

The parties agree that the jurors should be permitted to take handwritten notes during the presentations of the parties on a notebook provided by the Court, and that jurors be permitted to bring these handwritten notes into the deliberation room. The parties further propose that the jurors be instructed not to share the notebooks with each other (though they can discuss the contents of their notes) and that the notebooks be collected and destroyed after the verdict without review by the parties or the Court.

| **COOCH AND TAYLOR P.A.** | **RICHARDS, LAYTON & FINGER, P.A.** |
|---|---|
| */s/ Blake A. Bennett* | */s/ Kelly E. Farnan* |
| Blake A. Bennett (#5133) | Kelly E. Farnan (#4395) |
| Andrew A. Ralli (#6733) | Dorronda R. Bordley (#6642) |
| 1007 N. Orange St., Suite 1120 | One Rodney Square |
| Wilmington, Delaware 19801 | 920 N. King Street |
| T: (302) 984-3800 | Wilmington, DE 19801 |
| bbennett@coochtaylor.com | farnan@rlf.com |
| aralli@coochtaylor.com | bordley@rlf.com |
| | |
| -and- | Edgar H. Haug (*pro hac vice*) |
| | Robert E. Colletti (*pro hac vice*) |
| Dennis D. Murrell (KY # 84017)* | Jason Kanter (*pro hac vice*) |
| | Mark Basanta (*pro hac vice*) |
| | Patrick Lavery (*pro hac vice*) |
| | **HAUG PARTNERS LLP** |
| | 745 Fifth Avenue |
| | New York, NY 10151 |
| | ehaug@haugpartners.com |
| | rcolletti@haugpartners.com |
| | jkanter@haugpartners.com |
| | mbasanta@haugpartners.com |

Robert J. Theuerkauf (KY # 89068)*
Brian P. McGraw (KY 90447)*
Megan E. Gibson (KY 97237)*
**GRAY ICE HIGDON, PLCC**
4600 Shelbyville Road #8022
Louisville, KY 40257
T: (502) 625-2739
DMurrell@GrayIce.com
RJT@GrayIce.com
BMcGraw@GrayIce.com
mgibson@grayice.com

ATTORNEYS FOR PLAINTIFF
MHL CUSTOM, INC.

plavery@haugpartners.com

ATTORNEYS FOR DEFENDANTS
WAYDOO USA, INC. AND SHENZHEN
WAYDOO INTELLIGENCE TECH. CO.