**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MHL CUSTOM, INC.,

                Plaintiff,

    v.

WAYDOO USA, INC. and SHENZHEN
WAYDOO INTELLIGENCE
TECHNOLOGY CO., LTD.,

                Defendants.

C.A.  No. 21-0091-RGA

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR RENEWED MOTIONS
FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL**

*Of Counsel:*

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Jason Kanter (*pro hac vice*)
Mark Basanta (*pro hac vice*)
Patrick Lavery (*pro hac vice*)
Haug Partners LLP
745 Fifth Avenue
New York, New York 10151
(212) 588-0800


Dated:  May 2, 2023

Kelly E. Farnan (#4395)
Dorronda R. Bordley (#6642)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
farnan@rlf.com
bordley@rlf.com

*Attorneys for Defendant Waydoo USA, Inc. and
Defendant/Counter Plaintiff Shenzhen Waydoo
Intelligence Technology Co., Ltd.*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

I.    Nature & Stage of the Proceedings ....................................................................1

II.   Summary of the Arguments ...............................................................................1

III.  Statement of Facts & Argument .........................................................................2

    A.   The Evolo Report Was Publicly Accessible ...............................................3

        1.   Waydoo's Evidence of Public Accessibility is Unchallenged.............................4

        2.   MHL Presented Only Irrelevant Information and Speculation............................5

    B.   The Jury's Two Enablement Decisions Are Contradictory and Irreconcilable ............7

        1.   MHL Presented No Evidence That the Evolo Report Is Not Enabling ...............7

        2.   Evidence Concerning the Half-Powered Prototype Is Also Insufficient .............9

        3.   The Evolo Report Enables a POSA to Practice the Asserted Claims.................11

        4.   The Asserted Patents Themselves Do Not Enable Dual-Wing Crafts...............12

    C.   MHL Has Not Proven Infringement of the '659 Patent ............................................14

        1.   MHL's YouTube Video Evidence Cannot Support the Jury's Verdict.............14

        2.   MHL's Empirical Evidence Demonstrates the
            Waydoo eFoils To Be Dynamically Unstable ................................................15

    D.   Any Infringement Was Not Willful........................................................................17

    E.   MHL's Damages Evidence Is Not Comparable to the Hypothetical
        Negotiation, and the Jury's Award Is Not Reasonable.................................18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amgen Inc. v. Hospira, Inc.*,
   944 F.3d 1327 (Fed. Cir. 2019)..................................................................................3, 7

*Apple Inc. v. Corephotonics, Ltd.*,
   861 F. App'x 443 (Fed. Cir. 2021) ...............................................................................7

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
   501 F.3d 1274 (Fed. Cir. 2007)..............................................................................12, 14

*Bayer AG v. Elan Pharm. Research Corp.*,
   212 F.3d 1241 (Fed. Cir. 2000)....................................................................................14

*Bayer Healthcare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021)......................................................................................17

*Bone v. Commissioners of Marion Cnty.*,
   251 U.S. 134 (1919).................................................................................................4, 6

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
   246 F.3d 1368 (Fed. Cir. 2001)......................................................................................9

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993)....................................................................................................10

*Centricut, LLC v. Esab Grp., Inc.*,
   390 F.3d 1361 (Fed. Cir. 2004)....................................................................................14

*Cephalon, Inc. v. Watson Pharms., Inc.*,
   707 F.3d 1330 (Fed. Cir. 2013)......................................................................................7

*Chiron Corp. v. Genentech, Inc.*,
   363 F.3d 1247 (Fed. Cir. 2004)......................................................................................7

*Commonwealth Sci. Indus. Research Org. v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015)....................................................................................19

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)....................................................................................19

*Fireman's Fund Ins. Co. v. Videfreeze Corp.*,
   540 F.2d 1171 (3d Cir. 1976)..............................................................................3, 7, 14

*Freeman v. Minnesota Min. & Mfg. Co.*,
  675 F. Supp. 877 (D. Del. 1987)............................................................4

*Garretson v. Clark*,
  111 U.S. 120 (1884)..............................................................................19

*Gomez v. Allegheny Health Servs., Inc.*,
  71 F.3d 1079 (3d Cir. 1995)...................................................................3

*Hanson v. Alpine Valley Ski Area, Inc.*,
  718 F.2d 1075 (Fed. Cir. 1983)........................................................18, 19

*Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*,
  545 F.3d 1312 (Fed. Cir. 2008)..............................................................7

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
  757 F. App'x 974 (Fed. Cir. 2019) .........................................................6

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (Fed. Cir. 2017)........................................................6, 16

*Jazz Pharms., Inc. v. Amneal Pharms., LLC*,
  895 F.3d 1347 (Fed. Cir. 2018).......................................................3, 4, 6

*Johns Hopkins Univ. v. CellPro, Inc.*,
  152 F.3d 1342 (Fed. Cir. 1998)........................................................9, 10

*LaserDynamics, Inc v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)................................................................18

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993)..........................................................3, 14, 17, 18

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
  895 F.2d 1403 (Fed. Cir. 1990).............................................................19

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009).............................................................20

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*,
  687 F.3d 1377 (Fed. Cir. 2012)..............................................................7

*McMillan v. Weeks Marine, Inc.*,
  478 F. Supp. 2d 651 (D. Del. 2007)................................................ passim

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011)..................................................................................3

*MobileMedia Ideas LLC v. Apple Inc.*,
    780 F.3d 1159 (Fed. Cir. 2015)................................................................................15, 16

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)..........................................................................................2

*PAR Pharm., Inc. v. TWI Pharms., Inc.*,
    773 F.3d 1186 (Fed. Cir. 2014)........................................................................................11

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984)............................................................................................2

*Rasmusson v. SmithKline Beecham Corp.*,
    413 F.3d 1318 (Fed. Cir. 2005)..........................................................................................9

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)............................................................................................................3

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
    929 F.3d 1363 (Fed. Cir. 2019)..........................................................................................5

*Sanofi-Synthelabo v. Apotex, Inc.*,
    550 F.3d 1075 (Fed. Cir. 2008)..........................................................................................7

*Shopify Inc. v. Express Mobile, Inc.*,
    2021 WL 4288113 (D. Del. Sept. 21, 2021)....................................................................18

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008)..........................................................................................12

*Square Liner 360˚, Inc. v. Chisum*,
    691 F.2d 362, 377 (8th Cir.1982) ....................................................................................19

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1186 (Fed. Cir. 2008)........................................................................................11

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)........................................................................................20

**STATUTES**

35 U.S.C. § 284................................................................................................................19

**RULES**

Fed. R. Civ. P. 50(b) ........................................................................................................1

Fed. R. Civ. P. 59 ..............................................................................................................3

## I.      Nature & Stage of the Proceedings

MHL alleges that Waydoo infringes U.S. Patent Nos. 9,359,044 ("the '044 patent") and 9,586,659 ("the '659 patent") (collectively, the "Asserted Patents" or the "Patents").  D.I. 212.  Waydoo denies infringement and asserts that the Patents are invalid.  *Id.*  The Court held a jury trial March 24-31, 2023, on claims 1, 2, 5, and 6 of the '044 patent and claims 1-2 of the '659 patent.  The jury returned a verdict, including that Waydoo willfully infringed the asserted claims, that Waydoo's anticipatory prior-art reference was not publicly accessible and not enabling, and that the Asserted Patents are enabling.  D.I. 222.  On April 12, 2023, the Court entered judgment.  D.I. 226.  For each issue below, Waydoo renews its motion for judgment as a matter of law and moves in the alternative for a new trial.  Fed. R. Civ. P. 50(b), 59.

## II.     Summary of the Arguments

1.      Waydoo's evidence that the Evolo Report was publicly accessible prior to October 10, 2013, is uncontradicted and unimpeached.  Thousands of people actually reached the course website that hosted the Evolo Report and, thus, had ready access to it.  Without an expert of its own, MHL presented only irrelevant testimony and speculation.  Accordingly, no reasonable jury could find that the Evolo Report was not publicly accessible.

2.      The jury decided both that the Evolo Report is not enabling and that the Asserted Patents are enabling.  Those contradictory decisions, however, cannot be reconciled with the evidence or the law.  MHL presented no evidence that a POSA, following the Evolo Report's actual disclosure, would have unduly experimented in reaching the claims.  MHL presented only unsupported and conclusory testimony that a materially deficient Evolo prototype allegedly "didn't work," which cannot sustain the jury's verdict.  Further, the Evolo Report must be enabling because all information found in the Asserted Patents (and in the authoritative texts relied on by the Patents for enablement) was also known to and employed by the authors of the Evolo Report.

Additionally, the uncontradicted evidence is that the Asserted Patents only enable the novel aspect of the alleged invention if a POSA relies on information found outside of the Patents.  And while the Patents cover single- and dual-wing hydrofoil watercraft, they do not enable dual-wing embodiments and even disparage them as being merely for "training" purposes.  Thus, the Patents are not enabling as a matter of law.

3.      No reasonable jury could find that Waydoo infringes the '659 patent's "stable" claim element.  MHL's purported evidence relating to random YouTube videos and a concocted "damping" theory is unscientific, unsupported, and/or conclusory.  MHL's only actual evidence that bears on stability demonstrates conclusively that the accused products are _un_stable.

4.      No reasonable jury could find that Waydoo had the specific intent to infringe the Asserted Patents, so the willfulness finding here is not supported by the evidence.  MHL made much of the cease-and-desist letters that it sent Waydoo.  But those letters, even if received, do not support willfulness.   The letters present nothing more than "garden-variety allegations" of infringement that pertain to a product that Waydoo stopped selling before this lawsuit was filed.

5.      MHL's only damages evidence does not support the jury's damages award because of MHL's failure to account for litigation threats or apportion damages.  Moreover, the jury's damages award is not reasonable because it exceeds Waydoo's profits and represents a more-than-three-fold increase over royalties paid by any other licensee.

## III.     Statement of Facts & Argument

In general, to prevail on a renewed JMOL motion, a party "must show that the jury's findings, presumed or express, are not supported by substantial evidence." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998).  Substantial evidence "is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed.

Cir. 1984).  "The question is . . . whether there is evidence upon which a reasonable jury could properly have found its verdict."  *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995).  A mere "scintilla of evidence" is not enough.  *Id.*

To grant JMOL in favor of ***a party with the burden of proof***, the court "must be able to say not only that there is sufficient evidence to support the finding [sought by the moving party] . . . but additionally that there is insufficient evidence for permitting any different finding." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976); *accord Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019).  ***A party that does not have the burden of proof*** is entitled to a JMOL "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find [for the nonmovant]."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).  In deciding a renewed motion for judgment as a matter of law, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

A new trial, on the other hand, may be granted "where the verdict is contrary to the weight of the evidence and a miscarriage of justice would result if the verdict were to stand."  *McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 654 (D. Del. 2007).  In considering a Rule 59 motion, the "court need not view the evidence in the light most favorable to the verdict winner, a distinction from similar motions under Rule 50."  *Id.* at 655.

## A.      The Evolo Report Was Publicly Accessible

Whether prior art was publicly accessible is a question of fact, which the patent challenger must prove by clear and convincing evidence.  *Jazz Pharms., Inc. v. Amneal Pharms., LLC*, 895 F.3d 1347, 1356 (Fed. Cir. 2018); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011).  A

reference is publicly accessible if it "has been . . . made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it." *Jazz Pharms.*, 895 F.3d at 1355.  Courts have long held that prior-art references being in a foreign language "is irrelevant." *Freeman v. Minnesota Min. & Mfg. Co.*, 675 F. Supp. 877, 882 n.4 (D. Del. 1987); *see also Bone v. Commissioners of Marion Cnty.*, 251 U.S. 134, 144-45 (1919) ("[The patentee's] device having been described in printed publications, although in foreign countries, patentable novelty or originality cannot be asserted for it.").

### 1. Waydoo's Evidence of Public Accessibility is Unchallenged

The unchallenged evidence, provided by Mr. Lanterman, is that the Evolo Report was posted to the internet in mid-2009 and could be found by early 2010 at least because (i) a link to it had been published in a Swedish-language boating magazine, and (ii) it could be retrieved by a simple Google search.  The Evolo Report was created in May 2009 and posted to the Evolo project webpage on Prof. Kuttenkeuler's course website by June 2009.[1]  Tr. 724:23-725:4 (Lanterman). Subsequently, the August 2009 issue of the Swedish magazine "Båtnytt" ("Boat News") was published, containing a link to the Evolo project webpage for those who wanted to "[r]ead more about Evolo."  DTX333D.8; Tr. 730:12-731:3 (Lanterman).  To this day, the Evolo Report is available for download from a link on the Evolo project webpage.  As importantly, in January 2010, Google first crawled and indexed the Evolo Report.  Tr. 725:7-726:6 (Lanterman).  As a result, the Report itself became available to be returned in the results of an appropriate Google search.  Tr. 727:5-7 (Lanterman).

The Båtnytt article and a simple Google search are independent avenues by which a

[1] Google's discovery of the Evolo Report on June 18, 2009 confirms that it was indeed posted online.  Tr. 725:7-13 (Lanterman).

reasonably diligent POSA could have found the Evolo Report before October 2013. No matter the avenue, however, visitor logs from Prof. Kuttenkeuler's webserver prove that thousands of people reached his course website and had ready access to the Report before the priority date. The course website had successful activity every day from November 2011 to October 2013 (besides a 3-week gap in the Spring of 2013). DTX068A; Tr. 734:8-16 (Lanterman). During that period,[2] over 5,000 unique visitors accessed Prof. Kuttenkeuler's course website, 120 unique visitors accessed the Evolo project webpage, and 17 unique visitors downloaded the Evolo Report (7 of whom were in the U.S.). DTX068A; Tr. 734:22-735:9 (Lanterman). This is ample evidence to establish that before October 2013, reasonably diligent persons could find and download the Evolo Report.

### 2.    MHL Presented Only Irrelevant Information and Speculation

MHL did not counter Waydoo's demonstration of public accessibility with any actual evidence, only irrelevant testimony and speculation. Prof. Langelaan claimed that he did not find the Evolo Report before filing his patent application. Tr. 276:19-280:7, 316:24-317:2 (Langelaan). But the "standard for public accessibility is whether a person of ordinary skill in the art *could* . . . access a reference," not whether "specific persons actually accessed or received a work." *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1374 (Fed. Cir. 2019) (emphasis original). Moreover, because he did not search in Swedish, Prof. Langelaan was not exercising reasonable diligence. An appropriate Google search for finding the Evolo Report would have included terms that are in the original, Swedish-language Evolo Report.[3]   Tr. 727:18-23, 743:2-5 (Lanterman).

---

[2] The logs begin more than two years after the Report first became public. Tr. 734:17-21 (Lanterman). Undoubtedly, the course website, the Evolo project webpage, and the Report itself received many additional visitors/downloads in the first two years of their accessibility.

[3] Notwithstanding the irrelevance of Prof. Langelaan's testimony, his search terms are found in the Swedish Evolo Report (DTX081). For instance, the Swedish word for "hydrofoil" is "bärplan," which appears 500+ times in the Report, including in its very first sentence (DTX081.2) and in its table of contents (DTX081.4).

That Prof. Langelaan did not locate the Swedish-language Evolo Report based on his English-language search has no bearing on public accessibility. *Bone*, 251 U.S. at 144 ("From this local ignorance nothing can be deduced favorable to the patent.").

MHL also presented the jury with the wrong legal standard along with spurious insinuations that have no bearing on public accessibility. MHL's presentation could have served only to confuse the jury. MHL implied that Waydoo had an obligation not just to prove public accessibility, but also to identify the individuals who actually downloaded the Evolo Report. Tr. 1117:5-18 (MHL closing). There is no legal support for such a heightened standard of public accessibility. *Jazz Pharm.*, 895 F.3d at 1356 ("[T]here is no requirement to show that particular members of the public actually received the information."). MHL also counted the names on the face of the Evolo Report and implied that the 17 unique downloaders (as recorded in the webserver logs) were actually 17 members of the Evolo team. Tr. 1117:10-13 (MHL closing) ("I don't think that's coincidental."). When the downloads occurred, the Evolo team's work was more than two years old. Tr. 724:25-725:1 (Evolo Report created in 2009), 734:17-21 (logs begin in 2011). MHL offered no sensible explanation for why the Evolo team—and only the Evolo team—would download their own work so many years after they finished it. Not to mention that seven of the seventeen downloads occurred in the United States, while the Evolo team was based in Sweden. Tr. 745:16-746:6 (Lanterman). MHL's thought experiment is just speculation and cannot rebut Waydoo's evidence of public accessibility or support the jury's verdict. *See Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017).

In sum, the Court should credit Waydoo's evidence of public accessibility because it "is uncontradicted and unimpeached." *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 757 F. App'x 974, 979 (Fed. Cir. 2019). And the Court should grant Waydoo's JMOL motion

that the Evolo Report was publicly accessible because MHL did not present any evidence that would permit a different finding. *Fireman's Fund*, 540 F.2d at 1177; *Amgen*, 944 F.3d at 1333. In the alternative, the Court should grant a new trial because the jury's finding on accessibility is against the clear weight of the evidence. *McMillan*, 478 F. Supp. 2d at 654.

### B.    The Jury's Two Enablement Decisions Are Contradictory and Irreconcilable

Enablement is a question of law based upon underlying factual findings. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004) (enablement of asserted patents); *Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1315 (Fed. Cir. 2008) (enablement of anticipatory prior art). A patentee must prove that ***a prior-art reference*** is not enabling because "[i]t is well-established that prior art . . . printed publications," including foreign-language ones, "are presumed enabling," and it would be an "error to shift that burden to the patent challenger." *Apple Inc. v. Corephotonics, Ltd.*, 861 F. App'x 443, 449 (Fed. Cir. 2021). A patentee can only prevail "with persuasive evidence" of non-enablement. *Impax Lab'ys*, 545 F.3d at 1316. A patent challenger must demonstrate that ***a patent*** is not enabling by clear and convincing evidence. *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012). Anticipatory prior art and asserted patents must enable one of ordinary skill in the art to practice the invention without "undue experimentation," assessed under *In re Wands*. *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013) (asserted patent); *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1083, 1085 (Fed. Cir. 2008) (anticipating reference).

### 1.    MHL Presented No Evidence That the Evolo Report Is Not Enabling

As an initial matter, MHL ignored the standard for enablement and presented no evidence of any *In re Wands* factor. Moreover, the proper perspective for an enablement analysis is that of a POSA who picks up a reference and attempts to practice the subject matter disclosed therein. *See Sanofi-Synthelabo*, 550 F.3d at 1082 ("An anticipating reference must be enabling; that is, the

description must be such that a person of ordinary skill in the field of the invention can practice the subject matter **based on the reference**, without undue experimentation." (emphasis added)). MHL's trial presentation, however, was not "based on the reference" as required.

MHL presented no evidence or analysis of whether the experimentation a POSA would undertake to build the claimed invention, based on the Evolo Report's full disclosure, would have been undue or not. Instead, Mr. Barry's enablement opinion is simply that an Evolo prototype that he saw in videos "doesn't work."[4] Tr. 998:5-18 (Barry). But that prototype is not an embodiment of the Evolo Report's final design and, thus, does not reflect what the Report actually discloses— a fact that Mr. Barry was **completely unaware** of until trial. Tr. 1005:20-1006:3 (Mr. Barry testifying that he did not know how the Evolo prototype differed from the final design because he "do[es]n't speak Swedish" and he "can't read their minds in Swedish."), 1006:13-20, 1012:24-1013:9. Notwithstanding Mr. Barry's confusion, the Report itself clearly states that the final design required a motor with a power output of 4 kW.[5] Tr. 1009:3-19 (Barry). But the team was only able to secure a 2 kW motor. Tr. 1012:1-15 (Mr. Barry admitting that the Evolo Report "clearly tells me that, yes, they put a two-kilowatt motor on there"). This half-powered motor was built into the prototype that appears in the videos on which Mr. Barry relied. The Evolo team noted that they needed to "[f]ind a larger motor that meets the requirements for power and speed" of their final design. DTX325B.551; *see also* Tr. 1012:16-1013:9 (Barry).

That the prototype did not meet the power and speed requirements of the final Evolo design is material to enablement because stability is always conditional on a craft's speed, a fact that both

---

[4] Mr. Barry admitted to being unable to interpret the Evolo Report "with any reasonable degree of clarity" and that he found it confusing. Tr. 966:21-967:18 (Barry).

[5] Mr. Barry also admitted that he was "a little confused about which motor" the Evolo team used in the prototype seen in the Evolo videos. Tr. 1010:3-8 (Barry).

parties' experts noted.[6]   Tr. 760:23-761:20, 762:1-12, 805:15-18 (Triantafyllou); *see also* Tr. 418:8-19, 496:1-6 (Mr. Barry analogizing stability of an eFoil to stability of a bicycle).  All of MHL's non-enablement arguments were directed to this as-built prototype, which was materially deficient as compared to the final Evolo design, not directed to the disclosure of the Evolo Report itself, as the law requires.  No reasonable jury could find that the Evolo Report was not enabling because of these critical flaws in MHL's evidence.  For this reason alone, the record evidence is insufficient to support the jury's verdict that the Evolo Report is not enabling.

### 2. Evidence Concerning the Half-Powered Prototype Is Also Insufficient

Even if evidence concerning the Evolo team's half-powered prototype could be a proxy for the Report's final design, MHL's arguments still fail because Mr. Barry (i) measured the Evolo team's experimentation from before they completed their final design, and (ii) based his analysis on unscientific theories that he himself does not understand and even contradicts.

Mr. Barry assessed the Evolo team's half-powered prototype beginning from "their first experiment," without actually reaching an opinion on how much experimentation the team did. Tr. 999:20-1001:5 (Barry).  Mr. Barry did not even know when the Evolo team completed their final design.  Tr. 1002:11-14 (Barry).  The Evolo team's preliminary experiments cannot cut against the enablement of the Evolo Report because those experiments occurred before the Evolo's final design (the anticipating design) was completed.  *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998) ("A party who wishes to prove that the claims of a patent are not enabled by means of a failed attempt to make the disclosed invention must show that the

---

[6] That the prototype did not embody the Evolo Report in no way compromises Waydoo's anticipation argument.  "[A]nticipation does not require actual performance of suggestions in a disclosure."  *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1326 (Fed. Cir. 2005). "Rather, anticipation only requires that those suggestions be enabling to one of skill in the art." *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001).

patent's disclosure was followed."). The Evolo team's early experiments could not have "followed" the disclosure of a design that did not yet exist. Thus, only after the Evolo's design was finalized could the enablement of the half-powered prototype be assessed. *See id.*

Additionally, Mr. Barry's opinions are based on the same incomprehensible theory about assessing stability from YouTube videos that he employed for infringement.[7] For enablement, moreover, Mr. Barry compared the limited video footage of the Evolo prototype to marketing videos of professional athletes on highly refined commercial products. A comparison with that level of asymmetry has little to no probative value. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, . . . it cannot support a jury's verdict."). Nevertheless, Mr. Barry reached different conclusions from those videos and, consistent with the unscientific nature of his approach, offers no coherent explanation why. Tr. 987:9-990:5 (Barry). In reality, footage of the half-powered Evolo prototype is indistinguishable from footage of other beginners on eFoils. PTX005 (Evolo); DTX309 (Waydoo). In any event, after viewing two nine-second videos side-by-side,[8] Mr. Barry ultimately concluded that the Evolo prototype was "less stable than" the Waydoo product, not that the Evolo prototype was <u>un</u>stable. Tr. 989:25-990:5 (Barry).

Mr. Barry also based his opinion on his unsupported theory about the Evolo's hydrofoils being "flat-plate airfoils," which amounts to an inchoate inherency argument that Mr. Barry himself contradicted.[9] According to Mr. Barry, the Evolo's hydrofoils "could not achieve stability

---

[7] Not even Mr. Barry could bring himself to call his work with YouTube videos "scientific." *See* Part III.C.1., *infra*.

[8] Mr. Barry and the jury saw an excerpt of PTX006 (Evolo) side-by-side with DTX310 (Waydoo). *See* https://www.youtube.com/watch?v=zL9fO8tFl18 (1:23 to 1:31).

[9] As an initial matter, Mr. Barry does not understand flat-plate airfoils—he cannot even "define [one] beyond saying it's flat and it's a plate." Tr. 1046:21-1047:10 (Barry).

simply from being a flat plate."  Tr. 1041:14-1042:2 (Barry).  But Mr. Barry conceded that flat-plate airfoils, e.g., a delta wing with sharp edges, *can* achieve stability.  Tr. 1044:18-1045:8 (Barry).  In reality, the final Evolo design employed two hydrofoils in a longitudinal-dihedral configuration, which Mr. Barry himself called the "normal way" of achieving stability.  Tr. 982:7-983:16 (Barry); *see also* Tr. 791:7-792:7 (Triantafyllou explaining a longitudinal dihedral).  For those reasons, Mr. Barry's inchoate flat-plate-airfoil argument fails as a matter of law.  *See PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1195 (Fed. Cir. 2014) ("The mere fact that a certain thing may result from a given set of circumstances is not sufficient" to prove inherency).

### 3.      The Evolo Report Enables a POSA to Practice the Asserted Claims

The jury found that the Asserted Patents are enabling.  More on that below, but if the 10 page Patents are enabling, then the 550+ page Evolo Report must also be enabling.  MHL argued that the passages in the Asserted Patents that instruct a POSA how to make the claimed passively stable watercraft are contained in columns 5-7.  Tr. 311:24-312:19 (Langelaan), 1035:23-1036:14 (Barry).  But all of the information about stability in the Patents, including columns 5-7, is found in textbooks dating back to the 1960's.  Tr. 1037:23-1038:5, 1038:12-22 (Barry).  The Patents do not discuss anything new about stability or even discuss stability in any greater detail than the textbooks.  Tr. 1038:7-11 (Barry).  Thus, the Evolo Report must be enabling because all aspects of stability discussed in the Patents were also known and employed by the authors of the Evolo Report.  Tr. 1040:17-1041:11 (Barry); *see also SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008) ("With the [prior art reference] providing similar, or even a partially identical, disclosure to the [asserted patent], the [reference] meets the lower enablement standard for prior art.").

The Evolo Report further provides much more information about achieving a passively stable eFoil than do the Asserted Patents.  The normal way to achieve stability in airplanes is

– 11 –

through the use of a "longitudinal dihedral" wing arrangement, where the front wing produces positive lift (pushes up) and the back wing produces negative lift (pushes down).  Tr. 982:7-983:16 (Barry), 791:7-792:7 (Triantafyllou).  The Evolo Report teaches this, but the Patents do not. Tr. 983:2-23 (Barry).  An eFoil lacks control surfaces, unlike an airplane.  *See* Tr. 764:14-765:1 (Triantafyllou).  As a result, an eFoil's combined center of gravity must be in front of the front wing, and the combined center of gravity must shift forward as the eFoil's speed increases. Tr 1021:16-18 (Barry).  The Evolo Report teaches this, but the Patents do not.  Tr. 804:6-806:5 (Triantafyllou), 979:15-23 (Barry).  The Evolo Report discusses the importance of speed and that stability is dependent on speed, but the Patents do not.  *Id.*  The Evolo Report contains extensive experimental data and working examples, complete with dimensioned drawings and technical specifications.  *E.g.*, DTX325B.3-4, .414-443; Tr. 807:1-25 (Triantafyllou).  The Patents do not. *See* Tr. 1015:14-1016:3 (Barry).  For these additional reasons, it cannot be true that the Patents are enabling but the Evolo Report is not.

### 4.    The Asserted Patents Themselves Do Not Enable Dual-Wing Crafts

If claims are "broad enough to cover [two embodiments], the patents must enable both embodiments."  *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1000 (Fed. Cir. 2008).  And the "novel aspect of an invention must be enabled *in the patent*" itself.  *E.g.*, *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283 (Fed. Cir. 2007) (emphasis added).  The alleged novelty of the Asserted Patents is a passively stable hydrofoil watercraft, and they cover both single- and dual-wing eFoils.  PTX013 at 2:17-22; Tr. 284:17-285:13, 311:20-23 (Langelaan).  But the Patents themselves do not contain sufficient information to enable a passively stable dual-wing craft.

While the Asserted Patents clearly require passive stability, they do not provide enough information to enable a POSA to practice a "passively stable" watercraft ('659 patent, claim 1) or a hydrofoil that "provide[s] passive static stability" ('044 patent, claim 1).  The only purported

guidance is that "achiev[ing] desired levels of stability . . . without the need for moveable surfaces . . . is done through a combination of airfoil design, planform design, and tailoring the span-wise twist distribution."   PTX013 at 2:20-25; *see also* PTX013 at 5:51-54, 7:13-18.   Those three concepts relate to the shape of a single hydrofoil wing.  *See* Tr. 504:13-506:18 (Barry).   But "airfoil design" and "planform design" are inherent in all hydrofoil wings, and "tailoring of the span-wise twist distribution" is "moot" because even "zero twist" qualifies as tailoring of the span-wise twist distribution.   Tr. 504:13-25, 505:1-19, 505:20-508:6 (Barry).   The Patents do not otherwise provide guidance on designing a hydrofoil's shape or how the particulars of a hydrofoil's shape influence stability or static stability.   As such, the Patents provide no real guidance at all.   The Patents similarly provide no guidance for designing/arranging two hydrofoil wings for stability and even disparage dual-wing arrangements as being merely for "training" purposes.   PTX013 at 5:37-38, 5:45-50.   As mentioned above, the Patents are silent about "longitudinal dihedral" wing arrangements, the importance of the location of the eFoil's center of gravity *viz.* the front wing, that the center of gravity must shift as speed changes, or that stability depends on speed.[10]   *See* Part III.B.3., *supra*.   All of that missing information is vital for making a dual-wing eFoil.  Tr. 805:2-806:25 (Triantafyllou).

Moreover, the Patents do not contain experimental data or working examples of ***any*** eFoil, much less a dual-wing eFoil.   Critically, Prof. Langelaan admitted that a POSA could not make even the single embodiment disclosed in the Patents (i.e., "Figure 1") without relying on information from ***outside of*** the Patents.   Tr. 314:17-315:13 (Langelaan) ("[A POSA] would be able to use the textbooks to develop a watercraft that is then passively stable.").   But for

---

[10] To the extent the Court does not disregard Mr. Barry's "flat-plate airfoil" theory, the Patents are also silent about flat-plate airfoils *per se* not achieving stability.  *See* Part III.B.2., *supra*.

enablement, "it is insufficient to merely state that known technologies can be used to" achieve passive stability. *Auto. Techs.*, 501 F.3d at 1283. At best, "the specification provides only a starting point . . . for further research" with respect to dual-wing eFoils. *Id.* at 1284. With nothing more than a starting point, a POSA in possession of the Patents and attempting to make a dual-wing eFoil would still face undue experimentation. Thus, the Asserted Patents are not enabling.

The jury's competing enablement decisions are irreconcilable with each other, and there is insufficient evidence for a reasonable jury to have decided that the Evolo Report is not enabling or that the Asserted Patents are enabling. The Court should grant Waydoo's JMOL motion on both decisions. *Lightning Lube*, 4 F.3d at 1166; *Fireman's Fund*, 540 F.2d at 1177. In the alternative, the Court should grant a new trial on enablement because the jury's decisions are against the clear weight of the evidence. *McMillan*, 478 F. Supp. 2d at 654.

### C. MHL Has Not Proven Infringement of the '659 Patent

Infringement is a question of fact, which the patentee must prove by a preponderance of the evidence. *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). If a patentee fails to prove even a single claim element, there is no infringement as a matter of law. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

#### 1. MHL's YouTube Video Evidence Cannot Support the Jury's Verdict

For infringement of the '659 patent, MHL was required to show that Waydoo's eFoils are "stable," which requires a showing that they are both "statically" and "dynamically stable." *See* D.I. 153 at 7 (construing the preamble of the '659 patent). Mr. Barry's infringement analysis as to dynamic stability consisted of viewing YouTube videos and then "crosscheck[ing]" those observations by using the AVL software. Tr. 518:19-519:13 (Barry). But Mr. Barry's theory that a "positive determination" of stability can be determined just from observing random YouTube videos and without "do[ing] any mathematical calculations" (Tr. 481:15-482:5 (Barry)) is

unsupported, conclusory, and unscientific, which is insufficient to support a jury verdict. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015).

The "standard" that Mr. Barry invented for assessing stability from a YouTube video supports his own skepticism as well as Dr. Triantafyllou's outright rejection.[11]  First, Mr. Barry never cites any source for his theory.  Tr. 482:8-12, 486:14-22 (Barry).  Second, Mr. Barry believes that if a rider is able to operate "for a small period of time" without necessary movements, "then it's stable."  Tr. 483:18-24 (Barry).  But Mr. Barry admitted that "a small period of time" "doesn't have any particular meaning" for his work in this case.  Tr. 484:7-10 (Barry).  Third, Mr. Barry did not apply his unprincipled view of "a small period of time" when assessing videos.  Of the various definitions Mr. Barry offered for "a small period of time," the shortest measurable one was 20 seconds.  Tr. 484:17-486:8, 486:23-487:2 (Barry).  But the single video on which Mr. Barry based his infringement opinion does not contain any segment that is 20 seconds long—or even half that long.  Tr. 487:3-488:21, 489:25-493:3 (Barry).  The longest segment, according to Mr. Barry, was "eight seconds."  Tr. 491:23-492:2 (Barry).

## 2.  MHL's Empirical Evidence Demonstrates the Waydoo eFoils To Be Dynamically <u>Un</u>stable

MHL's "crosscheck" evidence (its only empirical evidence bearing on "dynamic stability") demonstrates that Waydoo's eFoils are dynamically <u>un</u>stable.  The experts agree that, in an eigenvalue analysis, <u>all</u> sigma values must be negative for a craft to be dynamically stable. Tr. 467:10-467:20, 470:6-9 (Barry); Tr. 772:5-21, 779:1-3 (Triantafyllou).  Mr. Barry's analyses of Waydoo's eFoils each have at least one positive sigma value.  Tr. 471:18-25 (Barry).  The fact

---

[11] Dr. Triantafyllou testified that stability ***cannot*** positively be determined just from random YouTube videos.  *See* Tr. 781:22-782:13 (Triantafyllou).  And not even Mr. Barry could bring himself to call his approach scientific.  Tr. 486:9-13 (Barry).

that these values are slightly positive does not change the fact that they conclusively demonstrate instability.  Tr. 775:3-13 (Triantafyllou).  When confronted with his own work (prior to this case), Mr. Barry conceded that "even small positive sigma values are going to result in big motions," confirming that any positive value is conclusively <u>un</u>stable.  Tr. 469:5-470:3 (Barry).

To fix his eigenvalue analyses, Mr. Barry concocted a "damping" theory by lumping together several phenomena with no support from any engineering text or literature.[12]  Tr. 477:12-18, 479:9-480:17 (Barry).  In fact, the only scientific literature expressly mentioned by either expert contradicts Mr. Barry's bald assertion that "damping" would "absolutely, without any question, help stabilize the craft."  Tr. 480:20-481:8 (Barry); Tr. 779:4-781:21 (Triantafyllou) (citing the work of Stephen Crandall, who "was the first to point out that damping can be stabilizing and destabilizing").  Moreover, Mr. Barry contradicted his theory by noting that if an eFoil's propeller comes out of the water when a wing does, that it "probably" would not enhance stability. Tr. 481:9-11 (Barry); *see also* Tr. 780:24-781:6 (Triantafyllou) (stating in the damping context that if the propeller "emerge[s] too," "[t]hen you're going to lose all your power" and "just fall in").  Given that the propellers on Waydoo's eFoils extend ***above*** their wings, there is no evidence that it is even possible for a wing to emerge without the propeller also emerging and further compromising stability.  *See* PTX200 (Flyer); PTX118 (Flyer ONE).

In addition to being unsupported, Mr. Barry also did not quantify any damping effect and, thus, it cannot be shown that any positive sigma value would become negative.  Tr. 475:22-476:5 (Barry).  In sum, Mr. Barry's "damping theory" is, at best, conclusory, rendering it "insufficient to sustain a jury's verdict."  *MobileMedia*, 780 F.3d at 1172; *see also Intell. Ventures*, 870 F.3d

---

[12] Mr. Barry first tried passing off his eigenvalue analyses as dynamically stable in spite of each having an <u>un</u>stable sigma value.  It was only after Dr. Triantafyllou pointed out the instabilities that Mr. Barry first raised damping.  Tr. 475:4-13 (Barry).

at 1331.  Thus, the Court should grant Waydoo's JMOL motion on no infringement of the '659

patent.  *Lightning Lube*, 4 F.3d at 1166.  Alternatively, the Court should grant a new trial because

the jury's verdict is against the clear weight of the evidence.  *McMillan*, 478 F. Supp. 2d at 654.

### D.      Any Infringement Was Not Willful

Willful infringement is a question of fact, which a patentee must prove by a preponderance

of the evidence.  *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021).

"Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient,

for a finding of willfulness."  *Id.* at 988.  The patentee must also show that "the accused infringer

had a specific intent to infringe at the time of the challenged conduct."  *Id.* at 987.  The "state of

mind" necessary for willfulness requires evidence of deliberate or intentional infringement.  *Id.* at

987, 988.  MHL did not present any evidence to show that Waydoo had the specific intent to

infringe the Asserted Patents, only that Waydoo knew of the Patents.

To the extent the jury relied on MHL's cease-and-desist letters, the only testimony about

their contents is that they mention the Asserted Patents and "assert[]" that a Waydoo eFoil infringes

them.  Tr. 342:14-343:5 (Wagner) (January 31, 2019 letter), 343:9-21 (April 9, 2019 letter),

343:24-344:11 (April 12, 2019 letter same as April 9th letter).  There is no evidence that MHL

provided any specificity for its infringement allegation, e.g., a claim chart.  Moreover, when

Waydoo actually learned of MHL's allegations,[13] Waydoo was still marketing its first-generation

product, the Flyer.  Tr. 676:7-11 (Ping).  By June 2020, however, Waydoo had introduced its

second-generation product, the Flyer ONE.  Tr. 676:12-15 (Ping).  The Flyer has not been sold in

---

[13] MHL has no evidence that Waydoo actually received any of the three cease-and-desist letters.
Tr. 229:14-230:13 (Leason), 346:7-347:6 (Wagner).  The unchallenged evidence is that Waydoo
first learned of the alleged infringement in August 2019 from one of its distributors.  Tr. 532:15-
19, 542:13-19 (Ping).

the U.S. since the fall of 2020.  *See* Tr. 692:5-13 (Wade) (testifying that since "the fall of 2020,"

he is the exclusive Waydoo distributor in the U.S. and that he "started out with the Flyer One").

None of MHL's letters mention the Flyer ONE or assert that it infringes, much less assert

infringement with any particularity.  *See* Tr. 342:14-343:5, 343:9-21, 343:24-344:11 (Wagner).

Nor did MHL ever send Waydoo a cease-and-desist letter for the Flyer ONE.  This case was filed

in January 2021, six-months after the Flyer ONE was introduced to the U.S.

In sum, MHL's presentation is not enough for a reasonable jury to have found a specific

intent to infringe or that Waydoo deliberately infringed.  The "garden-variety allegations"

contained in MHL's cease-and-desist letters—concerning a product that Waydoo stopped selling

before this lawsuit—"are insufficient to support a finding of willfulness."  *See Shopify Inc. v.*

*Express Mobile, Inc.*, 2021 WL 4288113, at *20 (D. Del. Sept. 21, 2021).  The Court should

therefore grant Waydoo's JMOL motion on no willfulness.  *Lightning Lube*, 4 F.3d at 1166.  In

the alternative, the Court should grant a new trial because the jury's finding of willfulness is against

the clear weight of the evidence.  *McMillan*, 478 F. Supp. 2d at 654.

### E.  MHL's Damages Evidence Is Not Comparable to the Hypothetical Negotiation, and the Jury's Award Is Not Reasonable

MHL's only damages evidence is the Fliteboard Agreement and Dr. Stec's analysis.  But

that evidence does not support the jury's damages award because of MHL's failure to: account for

litigation threats and apportion damages, and because the Fliteboard Agreement is not

economically comparable to MHL's proposed hypothetical negotiation.  Courts caution against

assessing damages by relying on licenses negotiated under threatened or actual litigation.  *Hanson*

*v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983); *LaserDynamics, Inc v.*

*Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012).  At trial, Mr. Leason admitted that the

Fliteboard Agreement was secured only after MHL threatened litigation and employed

"intimidation tactics."  Tr. 207:21-23, 224:23-225:2.  Dr. Stec further admitted that he did not account for such threats, incorrectly assuming, based on conversations with Mr. Leason, that there were no such threats.  Tr. 628:15-629:22.

Courts also require a patentee to apportion damages between patented and unpatented features.  *E.g.*, *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Commonwealth Sci. Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015).  But two of the patents covered by the Fliteboard Agreement—related to wireless eFoil controllers—are not asserted in this litigation.  PTX33 at MHL_0000047; Tr. 616:6-617:10.  Rather than assign those two patents a value and apportion out damages accordingly, Dr. Stec assigned them zero value and no share of the damages.  He did so without performing any economic analysis, relying instead on MHL's CFO, Mr. Wagner, even though Mr. Wagner had never before valued any patent.  Tr. 617:11-618:22.

Even accepting the Fliteboard Agreement as a starting point, the jury's damages award is not reasonable and not supported by the evidence.  "[T]hat a reasonable royalty would leave an infringer with a reasonable profit . . . is [an] implicit" requirement under 35 U.S.C. § 284.  *See Hanson*, 718 F.2d at 1081  (quoting *Square Liner 360°, Inc. v. Chisum*, 691 F.2d 362, 377 (8th Cir.1982)); *see also Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1408 (Fed. Cir. 1990) ("[Patentee's expert]'s opinion that [the infringer] 'would agree to pay a royalty in excess of what it expected to make in profit' was, in light of all the evidence in this case, absurd.").  The jury's award of $500 per board unreasonably exceeds Waydoo's profits.  Tr. 601:23-602:3 (boards sold for $3,000); Tr. 538:9-12 (Waydoo's profits margin is 15%).[14]

Finally, the percent royalty of the Fliteboard Agreement is not economically comparable to MHL's per-unit hypothetical negotiation.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d

---

[14] Fifteen percent of $3,000 is $450.

1197, 1211 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011). Dr. Stec admitted that, under the economic structure of the Fliteboard Agreement, Waydoo would pay only $157.50 per eFoil when selling at its wholesale price. Tr. 601:23-602:4. Nothing in the Agreement prevents Fliteboard from selling eFoils wholesale or selling at Waydoo's price. Tr. 604:10-15; *see also* PTX33 at MHL_0000044; Tr. 607:21-608:11 (no other agreements to the contrary). MHL's conversion of the percent royalty to a per-unit royalty resulted in a more-than-three-fold rate increase to $560 per board (Tr. 601:23-603:4), demonstrating that the Agreement is not comparable to the per-unit royalty structure that MHL proposed and the jury adopted.

MHL has failed to prove its damages, and the jury's verdict is against the clear weight of the evidence. Accordingly, damages should be limited to the highest amount proven at trial, which is Mr. Kline's 2.5% royalty (Tr. 884:15-25 (Kline)), or the Court should order a new trial on damages.

<table>
<tr><td>

*Of Counsel:*

    Edgar H. Haug (*pro hac vice*)
    Robert E. Colletti (*pro hac vice*)
    Jason Kanter (*pro hac vice*)
    Mark Basanta (*pro hac vice*)
    Patrick Lavery (*pro hac vice*)
    Haug Partners LLP
    745 Fifth Avenue
    New York, New York 10151
    (212) 588-0800
    ehaug@haugpartners.com
    rcolletti@haugpartners.com
    jkanter@haugpartners.com
    mbasanta@haugpartners.com
    plavery@haugpartners.com

Dated: May 2, 2023

</td><td>

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)
Dorronda R. Bordley (#6642)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
farnan@rlf.com
bordley@rlf.com

*Attorneys for Defendant Waydoo USA, Inc. and Defendant/Counter Plaintiff Shenzhen Waydoo Intelligence Technology Co., Ltd.*

</td></tr>
</table>

– 20 –