**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MHL CUSTOM, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WAYDOO USA, INC. and SHENZHEN WAYDOO<br>INTELLIGENCE TECHNOLOGY CO., LTD,<br><br>　　　　　Defendant. | C.A.  No. 21-0091-RGA |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL**

Blake A. Bennett
bbennett@coochtaylor.com
Andrew Ralli
aralli@coochtaylor.com
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 984-3889

Dennis D. Murrell (KY 84017, *pro hac vice*)
dmurrell@grayice.com
Robert J. Theuerkauf (KY 89068, *pro hac vice*)
rjt@grayice.com
Brian P. McGraw (KY 90447, *pro hac vice*)
bmcgraw@grayice.com
Megan E. Gibson (KY 97237, *pro hac vice*)
mgibson@grayice.com
**GRAY ICE HIGDON, PLLC**
4600 Shelbyville Road, Suite 8022
Louisville, Kentucky 40257
Telephone: (502) 625-2747

*COUNSEL FOR PLAINTIFF MHL CUSTOM, INC.*

**June 7, 2023**

i

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES ……………………………………………………….   iii

I. SUMMARY OF ARGUMENT …………………………………………………   1

   Public Accessibility ………………………………………………………….   1

   Enablement …………………………………………………………………..   1

   Infringement …………………………………………………………………   2

   Willfulness …………………………………………………………………...   2

   Damages ………………………………………………………………………   2

II.  LEGAL STANDARDS ………………………………………………………   3

   A.  JUDGMENT AS MATTER OF LAW UNDER RULE 50(A)(1) ………………………   3

   B.  NEW TRIAL UNDER RULE 59(A)(1)(A) ………………………………………   4

III. ARGUMENT ……………………………………………………………………   4

   A.  THE JURY REASONABLY CONCLUDED THAT WAYDOO FAILED TO MEET ITS
      BURDEN TO PROVE THAT THE EVOLO REPORT WAS PUBLICLY ACCESSIBLE …….   4

   B.  THE JURY REASONABLY CONCLUDED THAT THE EVOLO REPORT WAS NOT
      ENABLING AND THAT THE ASSERTED PATENTS WERE ENABLING ………………   8

      1.  There Was Sufficient Evidence to Support the Jury's Finding that the
         Evolo Report Was Not Enabling ………………………………………….   8

      2.  The Jury Correctly Found that Waydoo Failed to Meet its Burden to Prove
         that the Asserted Patents Were Not Enabling …………………………...   12

   C.  SUBSTANTIAL EVIDENCE WAS PRESENTED TO SUPPORT THE JURY'S FINDING OF
      INFRINGEMENT OF THE '659 PATENT ………………………………………..   13

   D.  THE JURY'S FINDING OF WILLFUL INFRINGEMENT IS SUPPORTED BY
      SUBSTANTIAL EVIDENCE …………………………………………………   15

   E.  SUBSTANTIAL EVIDENCE WAS PRESENTED TO SUPPORT THE REASONABLE
      ROYALTY DAMAGES AWARDED BY THE JURY ………………………………….   17

CONCLUSION ……………………………………………………………   20

## TABLE OF AUTHORITIES

**Page**

### Cases

*Acceleration Bay, LLC v. Activision Blizzard Inc.,*
908 F.3d 765 (Fed. Cir. 2018) ……………………………………………………….  4,5

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,*
694 F.3d 1312 (Fed. Cir. 2012) ……………………………………………………..  18

*AVM Techs., LLC v. Intel Corp.,*
927 F. Supp. 2d 139 (D. Del. 2013) …………………………………………………  19

*Bayer Healthcare LLC v. Baxalta Inc.,*
407 F. Supp. 3d 462 (D. Del. 2019) …………………………………………………  17,19

*Blue Calypso, LLC v. Groupon, Inc.,*
815 F.3d 1331 (Fed. Cir. 2016) ……………………………………………………  5,7

*Dawn Equip. Co. v. Ky. Farms Inc.,*
140 F.3d 1009 (Fed. Cir. 1998) ……………………………………………………  3

*EMC Corp. v. Zerto, Inc.,*
No. CV 12-956(GMS), 2016 WL 1291757 (D. Del. Mar. 31, 2016) ………………...  3

*Energy Transp. Grp. v. Sonic Innovations, et al.,*
2011 WL 2222066 (D. Del. June 7, 2011) …………………………………………  17

*Est. of Keating ex rel. Keating v. Coatesville VA Med. Ctr.,*
498 F. App'x 181 (3d Cir. 2012) ……………………………………………………  11,14

*Fuji Photo Film Co. v. Jazz Photo Corp.,*
394 F.3d 1368 (Fed. Cir. 2005) ……………………………………………………  17

*Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.,*
300 F. Supp. 3d 610 (D. Del. 2018) ………………………………………………  17

*Lansford–Coaldale Joint Water Auth. v. Tonolli Corp.,*
4 F.3d 1209 (3d Cir. 1993) …………………………………………………………  12

*LaserDynamics, Inc. v. Quanta Computer, Inc.,*
694 F.3d 51 (Fed. Cir. 2012) ………………………………………………………..  19

*Lightning Lube, Inc. v. Witco Corp.,*
4 F.3d 1153 (3d Cir. 1993) …………………………………………………………...  3

*Marra v. Phila. Hous. Auth.*,
497 F.3d 286 (3d Cir. 2007) ……………………………………………….. 3

*Pannu v. Iolab Corp.*,
155 F.3d 1344 (Fed. Cir. 1998) …………………………………………… 3

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011) …………………………………………… 19

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) …………………………………………… 19

*Purewick Corp. v. Sage Prod., LLC*,
No. CV 19-1508-(MN), 2023 WL 2734418 (D. Del. Mar. 31, 2023) ………………. 17

*ResQNet.com v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) …………………………………………….. 19

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
929 F.3d 1363 (Fed. Cir. 2019) …………………………………………… 6

*Sanofi-Synthelabo v. Apotex, Inc.*,
550 F.3d 1075 (Fed. Cir. 2008) …………………………………………… 9

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
511 F.3d 1186 (Fed. Cir. 2008) …………………………………………… 5,6

*Vectura Ltd. v. GlaxoSmithKline LLC*,
397 F. Supp. 3d 579 (D. Del. 2019) …………………………………………….. passim

*Voter Verified, Inc. v. Premier Election Solutions, Inc.*,
698 F.3d 1374 (Fed. Cir. 2012) …………………………………………… 7

*Williamson v. Consol. Rail Corp.*,
926 F.2d 1344 (3d Cir. 1991) …………………………………………….. 4

**Statutes and Rules**

Fed. R. Civ. P. 50(a)(1) …………………………………………………….. 3

Fed. R. Civ. P. 59(a)(1)(A) ………………………………………………… 4

Plaintiff, MHL Custom, Inc. ("MHL"), submits this response brief in opposition to the renewed motion for judgment as a matter of law and motion for new trial filed by Defendants, Waydoo USA Inc. and Shenzhen Waydoo Intelligence Technology Co., Ltd. ("Waydoo").

## I.   <u>SUMMARY OF ARGUMENT</u>

<u>Public Accessibility</u>. Waydoo challenges the jury's finding that the Evolo Report was not publicly accessible, and therefore, did not qualify as prior art. However, it was Waydoo's burden to prove by clear and convincing evidence at trial that the Evolo Report was publicly accessible. As the jury recognized, Waydoo failed to meet this burden. While Waydoo presented evidence indicating that the Evolo Report may have been available online, public availability alone is not the standard for determining public accessibility. There was no evidence presented as to how a personal of ordinary skill in the art could have actually located the report online using reasonable diligence and no evidence that anyone not associated with the Evolo project ever discovered that report prior to the critical date. Waydoo references the Evolo website page, which was never made of record in these proceedings, and only presents conclusory statements and speculation made to the jury, who rightfully agreed such was insufficient to show publicly accessibility.

<u>Enablement</u>. The jury's finding that the Evolo Report was not enabling was supported by the extensive and detailed testimony of MHL's expert, Mr. Christopher Barry. Mr. Barry provided testimony confirming that undue experimentation would be required to practice the invention described in the Evolo Report, including, *inter alia*, testimony that (a) the Evolo Report did not contain the necessary mathematical calculations to produce a stable watercraft, (b) a working example of a stable watercraft was never achieved from the Evolo Report, and (c) the Evolo report discloses a watercraft with a delta wing, which would never be able to achieve

stability.  Waydoo was free to challenge Barry's testimony through cross examination, and it did, yet the jury still credited his testimony and agreed that the Evolo Report was not enabling.

As to the jury's finding that the Asserted Patents were enabling, Waydoo again failed to meet its burden with clear and convincing evidence. Both Barry and the inventor of the Asserted Patents, Professor Jacob Langelaan, testified that the patents contain everything needed to enable a person of skill to make and use the invention as claimed – including the mathematical calculations for achieving a stable watercraft.  It was reasonable for the jury to rely on this evidence and find that the Asserted Patents were enabling.

**Infringement**. The jury's finding of infringement of the '659 Patent was likewise supported by the evidence. Barry testified that the infringing products were dynamically stable.[1] Barry's opinions were based on his observing the watercraft in operation, his review of witness testimony, his own mathematical, "eigenvalue" analysis, and his analysis of the "damping effects" which provided added stability to the watercraft. The jury considered and credited Barry's testimony despite criticism from Waydoo's expert and hours of extensive cross-examination. There are no grounds for overturning the jury's verdict or granting a new trial.

**Willfulness**. There was ample evidence to support the jury's willfulness finding beyond the cease-and-desist letters to which Waydoo never responded. Waydoo ignores this evidence in its motion. Based on the evidence presented at trial, the jury's finding should not be disturbed.

**Damages**.  A jury's determination of reasonable royalty damages is entitled to deference and will not be overturned post-trial absent somewhat extraordinary circumstances not existent in this case.  The jury was presented with well-qualified and reasoned expert opinion and analysis from MHL's damages expert. Those opinions were subject to cross-examination and

---

[1] Waydoo only challenges Mr. Barry's dynamic stability analysis and opinions.

countervailing expert testimony. The jury's damages finding was supported by the evidence and should be upheld.

## II. <u>LEGAL STANDARDS</u>

### A. JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)(1)

A renewed judgment as a matter of law ("JMOL") may be entered against a non-moving party only if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." *See* Fed. R. Civ. P. 50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth*., 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted). *See also Vectura Ltd. v. GlaxoSmithKline LLC,* 397 F. Supp. 3d 579, 584–85 (D. Del. 2019).

To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Vectura*, 397 F. Supp. 3d at 585, (citing *Pannu v. Iolab Corp*., 155 F.3d 1344, 1348 (Fed. Cir. 1998)). The Court's role in this context is to determine whether the evidence supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc*., 140 F.3d 1009, 1014 (Fed. Cir. 1998); *EMC Corp. v. Zerto, Inc.*, No. CV 12-956(GMS), 2016 WL 1291757, at *2 (D. Del. Mar. 31, 2016) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.") (quoting *Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1166 (3d Cir. 1993)).

**B.  NEW TRIAL UNDER RULE 59(A)(1)(A)**

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party ... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court ...." As argued by Waydoo, grounds for granting a new trial include situations where the jury's verdict is against the clear weight of the evidence. *Vectura*, 397 F. Supp. 3d at 585-86.  A new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Vectura* at 586, (citing *Williamson v. Consol. Rail Corp*., 926 F.2d 1344, 1353 (3d Cir. 1991)).

## III.  ARGUMENT

### A.  THE JURY REASONABLY CONCLUDED THAT WAYDOO FAILED TO MEET ITS BURDEN TO PROVE THAT THE EVOLO REPORT WAS PUBLICLY ACCESSIBLE

It was Waydoo's burden at trial to present clear and convincing evidence that the Evolo Report was "publicly accessible" in that it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it." *Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 772 (Fed. Cir. 2018). Waydoo seeks judgment as a matter of law and/or a new trial based on the jury's finding that Waydoo failed to meet its burden. Waydoo argues that judgment as a matter of law is warranted because the evidence of accessibility it presented was "uncontradicted and unimpeached" and that MHL did not present evidence that would permit a finding that the Evolo Report was not publicly accessible. Waydoo likewise seeks a new trial by arguing that the jury's finding on accessibility is against the clear weight of the evidence.[2] *Id*. Waydoo glosses

---

[2] Waydoo offers no argument as to how the jury's verdict on lack of public accessibility would result in a miscarriage of justice or otherwise shock the conscience.

over two critical points in its arguments: (1) that it was Waydoo's burden to prove public accessibility by clear and convincing evidence; and (2) that the standard for public accessibility is not simply whether the alleged prior art is available to be found online, but whether there is clear and convincing evidence that a person of ordinary skill in the art could actually have found it using reasonable diligence. *See Acceleration Bay*, 908 F.3d at 772.

The evidence presented by Waydoo in this case as to the public accessibility of the Evolo Report consists entirely of the testimony (and two documents[3]) of its computer forensics expert, Mark Lanterman.[4] Lanterman concluded the following: (a) the Evolo Report was posted online in 2009; (b) by 2010 the Evolo Report could be found and accessed online through a Google search; and (c) that the Evolo Report was downloaded a total of 25 times (17 unique downloads) prior to October 10, 2013. *See* Trial Transcripts ("Tr"), Vol. 4, 725:12-19. Lanterman further testified that there was a link to the Evolo project class website contained within an article in an August 2009 issue of the Swedish magazine "Båtnytt" ("*Boat News*").  *See* DTX 333D.

Assuming the jury gave Lanterman's testimony <u>any</u> weight (and they were not required to do so), the jury rightfully determined that this evidence was not clear and convincing of public accessibility. Indeed, all this evidence shows is that the Evolo Report existed online and may have been downloaded by 17 different people prior to the critical date. However, online availability, standing alone, is not enough to demonstrate public accessibility. *See Blue Calypso, LLC v. Groupon, Inc.,* 815 F.3d 1331, 1350-51 (Fed. Cir. 2016)*; Acceleration Bay, supra*; and *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1196 (Fed. Cir. 2008).

---

[3] DTX 333D (Swedish "*Boat News*" article); and DTX 327 (Google results screenshots).

[4] The jury was instructed that "[e]xpert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness." *See* Preliminary Jury Instructions, No. 7, DI 204, PageID# 12095.

As to the 17 unique downloads of the Evolo Report, Waydoo failed to present any evidence of who those 17 individuals were. *See* Tr., Vol. 4, 739:6-18. This is important because the jury otherwise had no evidence upon which it could determine that anyone not associated with the Evolo project ever downloaded or accessed the report prior to the relevant date. *Id.*, 739:19-21.[5] This glaring lack of detail, coupled with the fact that there just happened to be 17 people associated with the Evolo project (*Id.*, 740:8-741:16), amplified Waydoo's failure to meet its burden. *See e.g.*, *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1372 (Fed. Cir. 2019) (a work is not publicly accessible if the only people who know how to find it are the ones who created it) and *SRI*, 511 F.3d at 1196-7 (finding insufficient evidence presented to establish that anyone outside of the project would have been aware of or searched for the reference).

Further, there was no evidence presented by Waydoo as to how the 17 people who supposedly downloaded the Evolo Report came to find the report online.  *See Id.*, 741:17-19. Based almost exclusively on Lanterman's conclusions about availability, indexing, and a nebulous "appropriate Google search", Waydoo argued in closing (and in the present motions) that the Evolo Report could have been found through the *Boat News* magazine article or through a simple Google search. However, Lanterman admitted there was no evidence that anyone actually found the Evolo Report through the *Boat News* article.[6] Tr., Vol. 4, 741:24-742:4. Nor is it plausible to conclude that anyone found the Evolo Report through that article based on the evidence presented. The article only linked to the Evolo project web page, not the report itself. *See* DTX333D. There was <u>no</u> evidence of record at trial as to the contents of the Evolo project

---

[5] Waydoo claims that at least seven of these downloads came from the United States but there was no evidence that this was the case other than the unsupported, conclusory testimony of Lanterman – which the jury was free to reject out of hand.
[6]No evidence was presented as to the circulation, reach, or readership of the *Boat News* magazine.

website. There was no evidence presented to the jury that the Evolo Report was linked or even referenced on the Evolo project web page. The <u>only</u> evidence presented to the jury was a statement made in passing by Lanterman, without explanation, that "the report is a sub-attachment to that web page." *Id.*, 730:4-11. Even if that was the case, no evidence was presented to establish the timeline of whether the report was a "sub-attachment" to the project web page prior to October of 2013.

The evidence presented by Waydoo to support its contention that the report could have been found by a Google search was similarly deficient. There was no evidence that anyone ever found the report through a Google search. Tr., Vol. 4, 741:20-23. Lanterman testified that he had no idea what search terms could be used to generate a search result for the Evolo Report and had no idea what an "appropriate" search would be. *Id.*, 742:18-743:8. Lanterman did not present (or conduct) any sort of analysis related to whether, or how, a person of ordinary skill in the art would have been able to find the report online prior to October 2013. *Id.*, 742:5-17. Waydoo presented no evidence to demonstrate the steps that could be taken to search online and then locate the report. *Id.*, 744:15-23. No evidence was presented at trial as to how someone who was not otherwise associated with the Evolo project could have found the Evolo Report online. *Id.*, 745:7-11. *See Blue Calypso, supra* (broad argument that reference would have turned up in a search was insufficient where no search results nor search terms yielding results were presented); *cf., Voter Verified, Inc. v. Premier Election Solutions, Inc.,* 698 F.3d 1374 (Fed. Cir. 2012) (finding public accessibility where evidence demonstrated reference turning up after specific searches).

On top of the deficient evidence presented by Waydoo, the jury was presented with the testimony of three witnesses who have extensive knowledge of the industry and who all

confirmed that they had never heard of the Evolo project prior to October of 2013.[7] *See* Tr., Day 2, 315:22-25 (Langelaan); 185:25-186:2 (Leason); and Tr. Day 4, 706:11-23 (Wade). Two of these witnesses, Langelaan and Leason, performed extensive prior art searches before getting involved with the production and commercialization of the patented products and did not discover the Evolo Report. *See* Tr., Vol. 2, 178:7-181; 185:4-24; and 287:7-10. MHL was not required to offer expert testimony in order to defeat Waydoo's invalidity claim (nor was it necessary given Waydoo's evidence). The jury's decision was correct, and well supported by the evidence presented at trial. There are no grounds to overturn the jury's decision.

### B. THE JURY REASONABLY CONCLUDED THAT THE EVOLO REPORT WAS <u>NOT</u> ENABLING AND THAT THE ASSERTED PATENTS <u>WERE</u> ENABLING

#### 1. There Was Sufficient Evidence to Support the Jury's Finding that the Evolo Report Was Not Enabling

Despite Waydoo's argument to the contrary, the standard for enablement is not in any way based on the length of the prior art reference. Nonetheless, Waydoo attempts to draw an irrelevant comparison between the length of Evolo Report and the Asserted Patents as somehow indicating that a shorter reference (i.e., the Asserted Patents) cannot be enabling whereas a reference must be enabling if it contains more than 500 pages, like the Evolo Report. Waydoo's comparison of the Asserted Patents and the Evolo Report for purposes of the enablement analysis is irrelevant and fails to take into account the actual content of the references. MHL presented sufficient evidence, primarily through Barry's testimony, that the Evolo Report is not enabling.

Waydoo incorrectly argues that MHL presented no evidence to support its lack of enablement argument. And specifically, Waydoo incorrectly argues that MHL did not present evidence regarding whether "undue experimentation" would be required for a person of skill in

---

[7] Waydoo's expert, Dr. Michael Triantafyllou, likewise testified that he had no knowledge of the Evolo Report prior to October of 2013. Tr., Vol. 4, 831:12-24.

the art to achieve enablement of the Evolo Report. Barry addressed the relevant factors including "the quantity of experimentation that was actually needed, the amount of guidance provided in the reference, the presence or absence of actual examples of the experimental procedure, the state of the knowledge already available concerning the subject matter at issue, and the predictability or unpredictability in the specific area of science or technology." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008). MHL presented evidence more than sufficient to support the jury's verdict.

For example, Barry testified that by reading the Evolo Report it was clear "they didn't ever do the calculations required to produce stability … they never considered stability in the physical design of the object." Tr., Vol. 5, 973:3-9. Waydoo insists that Barry's opinions on stability were based solely on his review of videos, rather than the Report itself. However, the testimony does not support this false narrative. Waydoo's counsel pursued this line of questioning with Barry exhaustively in cross-examination, and Barry time and time again stated it was the Report that led him to his conclusions, not just the videos. *Id.*, 973:3-13; 900:1-5. As indicated above, Barry made clear in his testimony that the Evolo Report did not contain the necessary mathematical calculations to allow for static or dynamic stability.  As to the content of the videos, however, Waydoo continues to focus on the comparisons between the Evolo videos, the Waydoo marketing videos, and the selectively edited Waydoo "beginner" video it tried to confuse the jury with at trial. Waydoo makes the indefensible conclusion that the Evolo videos are "indistinguishable" from the beginner videos. Because Waydoo only references the first few seconds of the beginner videos where the riders are quickly crashing, it fails to process that by the end of those videos, the riders are operating on statically and dynamically stable eFoils which maintain stability while the craft is in lift.  *See* DTX-309.  By contrast, the Evolo device shown

in the Evolo videos never achieves passive or static stability while in lift.  As soon as lift is achieved, the craft immediately crashes down.  Tr., Vol. 5, 954:16-957:3 (citing PTX-5).

Barry's conclusions on stability are further supported by the testimony of Professor Langelaan, who testified that he reviewed the Evolo Report and confirmed that "what's described in the Evolo Report is not at all stable." Tr., Vol. 2, 317:17-318:1. Barry's opinions on the lack of guidance on stability in the Evolo Report supports a finding of undue experimentation.

Moreover, Barry testified that the fact that there were many prototypes of the Evolo device described in the Report, none of which ultimately worked, indicated undue experimentation. Tr., Vol. 5, 999:2-1000:7. Barry explained to the jury that the Evolo Report described 10-14 different unsuccessful prototypes, whereas Professor Langelaan was able to build a successful prototype in one attempt based on the Asserted Patents. The jury heard from Barry that even with 550 pages worth of these experiments and prototypes, the Evolo Report failed to achieve a single working example. *Id.*, 1001:6-10. Barry's conclusion was that because of the failed experimentation set forth in the Evolo Report, "a person of skill in the art reading the Evolo Report would conclude that an automatic control system was required" as opposed to a passively stable system which the Evolo Report failed to successfully describe or achieve. *Id.*, 956:18-957:3. The absence of working examples, accompanied by the opinion of a person of skill in the art that the entirety of the Evolo Report would teach <u>away</u> from passive control to achieve stability, supports a finding that undue experimentation would be required and, in turn, supports the jury's determination that the Evolo Report was not enabling.

Waydoo argues that it was error for Barry to rely upon the prototype experiments set forth in the Evolo Report because (1) the prototypes don't reflect what the Report actually discloses; and (2) the prototypes don't reflect the final Evolo design in that the Report indicated that the

final design needed a more powerful motor in order to successfully operate. Both of these arguments are misplaced. As to the first point, which is largely nonsensical, each of the experiments and prototypes referenced by Barry are underlined contained within the Evolo Report and evidence the experimentation and thought process of the authors throughout the development of the Evolo project. As to the second point, Waydoo ignores Barry's testimony that the size of the motor was irrelevant to his opinions on enablement. Tr., Vol. 5, 1054:25-1055:2. Regarding a larger motor (as compared to what is described in the Evolo Report and illustrated in the YouTube videos) Barry stated that "as a general rule when things are unstable in a marine environment … it gets worse as you go faster." *Id*., 1055:9-15. In other words, even if the Evolo Report indicated that the final version of the device required more speed to successfully operate, it wouldn't matter. It wouldn't matter because the Report cannot possibly teach a person of ordinary skill in the art to successfully build a stable watercraft.

Finally, Barry testified that the design of the hydrofoil as set forth in the Report made it unlikely the craft would ever be stable in the water as designed. *Id*., 973:10-13. Nonetheless, Waydoo criticizes Barry's opinions. However, Barry explained to the jury in detail why the Evolo Report's delta wing is a flat plate and why the flat plate fails to achieve stability. Tr., Vol. 5, 953:1-954:15. Waydoo argues that Barry's opinions have "no probative value". However, Barry's opinions are *not* contradicted by the factual record – his opinions were only challenged by Waydoo's expert. Barry supported his opinions by relying on the Evolo Report itself, as well as the Evolo videos. The jury was faced with a choice of crediting Barry's testimony or the testimony of Waydoo's expert and, not surprisingly, the jury determined that Barry's testimony was credible. It is not for the Court to second guess that determination in the context of a JMOL. *See Est. of Keating ex rel. Keating v. Coatesville VA Med. Ctr.*, 498 F. App'x 181, 185 (3d Cir.

2012) (citing *Lansford–Coaldale Joint Water Auth. v. Tonolli Corp.,* 4 F.3d 1209, 1216 (3d Cir. 1993) ("[W]hen there is a battle between reasonable but conflicting expert opinions, the factfinder's choice between them is not clearly erroneous."). There are no reasonable grounds to overturn the jury's determination that the Evolo Report was not enabling. There are no grounds warranting a new trial. The verdict should stand.

> **2.  The Jury Correctly Found that Waydoo Failed to Meet its Burden to Prove that the Asserted Patents Were Not Enabling**

Waydoo challenges the jury's finding that the Asserted Patents were enabling by arguing that the patents do not provide "guidance on designing a hydrofoil's shape or how the particulars of a hydrofoil's shape influence stability or static stability."  Even if this were true, and it is not, Waydoo failed to present any evidence to support this argument at trial other than the vague, conclusory and uncredible statements made by its expert on redirect. Indeed, the only testimony supporting Waydoo's enablement defense was Triantafyllou's conclusory statements that (1) the asserted patents did not set forth calculations (or advice) which would indicate how a stable product could be achieved; (2) the stability equations set forth in the asserted patents are standard aeronautic references; and (3) the asserted patents fail to take into account the center of gravity. Tr., Vol. 4, 753:3-25. As the jury recognized, this conclusory testimony was insufficient to show lack of enablement by clear and convincing evidence.

By contrast, Barry testified that the Asserted Patents contain everything needed to enable a person of skill to make and use the invention as claimed.  Tr., Vol. 5, 962:14-964:1; *see also* PTX-13 ('044 Patent) and PTX-14 ('659 Patent). Barry discusses how various details "such as winglets, a horizontal tail, [and] a vertical tail" may be added, and how the patents address the effects of these various modifications on stability and directional stability. Tr., Vol. 5, 963:10-13. Barry further testified that the patents (a) provide numerical values assuring stability; (b) discuss

the effect of trim; and (c) indicate that the moment configurations are related to the location of the center of gravity, which is what enables weight-shift control. *Id.*, 963:15-24.

Professor Langelaan also testified that achieving stability was part of his patents and that stability is described in the patents both in plain English and mathematically through the mathematical parameters and values needed in order for the system to be stable as set forth in the specification. Tr., Vol. 2, 295:8-16. Langelaan testified that his prototype reflects the invention of the '044 Patent. *Id.*, 294:23-25. In addition, he testified that the figures in the '044 Patent were based on the calculations he performed and the resulting protypes were based on the specification of the patents. *Id.*, 308:18-310:8. Langelaan confirmed that a person of ordinary skill would know how to make the device stable by reviewing the patent in its entirety. *Id.*, 314:9-24.[8] The jury reasonably concluded that Waydoo fell short of establishing by clear and convincing evidence that the Asserted Patents were not enabling.

### C.   SUBSTANTIAL EVIDENCE WAS PRESENTED TO SUPPORT THE JURY'S FINDING OF INFRINGEMENT OF THE '659 PATENT

Waydoo offers no real explanation for why the jury's finding of infringement should be overturned, or a new trial granted, other than to argue that MHL failed to prove infringement by a preponderance of the evidence. But that is not the standard for granting either a JMOL or a motion for new trial. Waydoo takes issue with Barry's infringement opinions and challenges his opinion that dynamic stability can be determined by viewing videos of a watercraft in operation.[9] However, Waydoo again mischaracterizes Barry's testimony. While Barry testified that stability may be determined based on a review of the various YouTube videos, the YouTube videos were

---

[8] Waydoo ignores all of this testimony and focuses solely on an out of context soundbite where Langelaan indicates persons of skill would be able to use textbooks to develop a stable watercraft. Tr., Vol. 2, 314:25-315:10.

[9] Even Triantafyllou agreed that observing videos could give some indication of stability. Tr., Vol. 4, 840:24-841:7.

not the entirety of his analysis. Barry also testified that he conducted a mathematical computer analysis, and that this "computer analysis is a good conservative estimate, so it cross-checks the videos and the other information." Tr., Vol. 3, 407:15-409:9. In addition to the videos and mathematical computer analysis, Barry based his opinions on deposition testimony from Waydoo's own employees. *Id.*, 408:16-21. Barry's testimony and opinions fully support the jury's finding of infringement of the '659 Patent.

Waydoo attacks Barry's analysis regarding dynamic stability. While Triantafyllou offered a different opinion regarding the eigenvalue analysis and damping effects, this does not mean that the jury's verdict was either unsupported or in opposition to the clear weight of the evidence as Waydoo alleges. As the Court recognized, Barry's "plausible" opinions on dynamic stability were based on more than just the numbers. Tr., Vol. 4, 888:21-889:4. While Waydoo alleges that Barry "concocted a damping theory" in order to show dynamic stability, Barry explained in detail <u>and</u> demonstrated how damping works and why it affects the eigenvalue numbers. Tr., Vol. 3, 472:20-472:2 (explaining how the damping effects negate the slightly positive eigenvalue result). Triantafyllou was free to, and did, disagree with Barry's opinions, but this does not mean that the jury's decision was not supported by the evidence. "[W]hen there is a battle between reasonable but conflicting expert opinions, the factfinder's choice between them is not clearly erroneous." *See Keating, supra.* Where reasonable experts disagree "there is no basis to disturb the District Court's judgment". *Id.* Here, even though Triantafyllou disagreed with Barry, he ultimately conceded that the Waydoo products must be stable. Tr., Vol. 4, 829:10-25.

The jury again decided to credit Barry as opposed to Triantafyllou even after Barry was subjected to extensive cross-examination addressing all of the issues raised in the post-trial motion. Waydoo's motion to overturn the jury's infringement verdict should be denied.

14

**D.   THE JURY'S FINDING OF WILLFUL INFRINGEMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Waydoo challenges the jury's willfulness verdict on the grounds that the evidence presented was insufficient to support a finding that Waydoo willfully infringed. Waydoo further argues a new trial is warranted because the jury's finding of willfulness was against the clear weight of the evidence.[10] In making its arguments, Waydoo focuses entirely on the cease-and-desist letters that were sent by MHL while ignoring the other evidence of willfulness MHL presented. Drawing all logical inferences in favor of MHL, there is substantial evidence of record supporting the jury's willfulness determination.

For example, the jury heard that Waydoo was not formed as a company until May of 2018, just weeks after MHL began selling its first generation eFoil. Tr., Vol. 3, 431:20-21; Vol. 2, 328:14-18. At that time, there were no other eFoils on the market (Vol. 2, 340:25-341:6) and MHL was marking its products with a patent notice (*Id.*, 201:11-202:2; and PTX-122). When formed, Waydoo's founder had no prior experience in designing or manufacturing eFoils. *Id.*, 243:17-244:17. His experience was in the agricultural industry. Tr., Vol. 3, 532:20-533:15. The jury also heard that when formed, Waydoo had no research and development department related to eFoils or other watercraft. *See* Tr., Vol. 4, 682:22-683:19. Despite having no prior experience in the design and manufacturing of eFoils, and no experienced research and development department, the jury heard that Waydoo had the design of their eFoil in hand almost simultaneous with the company being formed in May 2018. Tr., Vol. 3, 533:12-15. Then, the jury heard that a mere seven months later, Waydoo was able to unveil a completed eFoil, ready for market, at the January 2019 CES show in Las Vegas. Tr., Vol. 4, 683:20-23. Contrast this with the

---

[10] Again, no argument was made that the jury's willfulness verdict results in a miscarriage of justice or otherwise shocks the conscience.

15

evidence the jury heard about the time required by MHL to commercialize the patented products. *See e.g.*, Tr., Vol. 2, 175:22-180:17; 198:5-199:2; 266:15-267:21; 270:19-271:9; 274:1-4; 297:22-300:7; and 328:14-18. Amazingly, Waydoo accomplished in seven short months what took MHL years to accomplish.

Moreover, the jury heard evidence of the aforementioned cease-and-desist letters that MHL sent to Waydoo after the January 2019 CES show, including the letters sent on January 31, 2019, April 9, 2019, and April 12, 2019. Tr., Vol. 2, 213:13-214:15; 342:9-345:22. The jury heard that Waydoo never responded to those letters and continued to sell infringing products despite being warned of its infringement. *Id.* The jury heard that Waydoo was admittedly aware of the patents and the infringement issues by August of 2019, yet continued to sell its products. Tr., Vol. 3, 532:9-19. And further still, the jury heard that this lawsuit was filed in January of 2021, yet Waydoo continued to sell infringing products. Tr., Vol. 2, 214:9-15.

The jury heard nothing from Waydoo in terms of a justification for why it continued to sell infringing products. While Waydoo asserted a number of defenses in the case, including invalidity and non-infringement, no evidence was presented in an effort to show that Waydoo continued to sell because it legitimately harbored a good-faith belief that the asserted patents were invalid or that they did not infringe. There was likewise no evidence presented that Waydoo conducted any sort of investigation as to the scope of the asserted patents prior to selling the infringing products. And finally, the jury heard Waydoo tout its contention that it could simply add a "leash" to its eFoils to avoid infringement, but the reality is Waydoo never implemented the "leash" and chose to keep infringing instead.[11] *See* Tr., Vol. 4, 601:9-602:24; 708:9-14. Waydoo's motions should be denied as to the jury's willfulness finding and the verdict should not

---

[11] MHL disputes that simply adding a leash would render the Waydoo eFoils non-infringing.

be overturned. *See e.g.*, *Purewick Corp. v. Sage Prod., LLC,* No. CV 19-1508-(MN), 2023 WL 2734418, at *9 (D. Del. Mar. 31, 2023) (denying renewed JMOL on the issue of the jury's willfulness finding).

### E. SUBSTANTIAL EVIDENCE WAS PRESENTED TO SUPPORT THE REASONABLE ROYALTY DAMAGES AWARDED BY THE JURY

Waydoo seeks to overturn the jury's determination of a $500 per unit sold royalty rate on the grounds that such a damages award was not supported by the evidence, is unreasonable, and is not comparable to MHL's agreement with Fliteboard. Waydoo's argument reflects nothing more than another disagreement with the evidence and the analysis provided by MHL's damages expert. Waydoo's disagreement with MHL's damages expert does not justify either a judgment as a matter of law or a new trial on damages. *See Energy Transp. Grp. v. Sonic Innovations, et al.*, 2011 WL 2222066 at *21 (D. Del. June 7, 2011) (where parties presented conflicting expert testimony and the jury was able to accept or reject either party's evidence, the court did not disturb the jury's determinations).

A jury's award of damages is reviewed by the district court for substantial evidence and the jury's award is entitled to deference. *See Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 625–26 (D. Del. 2018). The jury's findings should be upheld unless the amount is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Id.* at 626. A jury determines damages based on the totality of the evidence and is not required to choose from either party's suggested figures. *Bayer Healthcare LLC v. Baxalta Inc.*, 407 F. Supp. 3d 462, 479 (D. Del. 2019) (citing *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) ("[T]he jury is not bound to accept a rate proffered by one party's expert but rather may choose an intermediate royalty rate.")).

Here, MHL's damages expert, Dr. Jeff Stec, explained the different factors he considered in his analysis and discussed the concept of a comparable license agreement. He ultimately opined that the agreement between MHL and Fliteboard was a comparable agreement. Tr., Vol. 3, 555:12-557:1. Stec reviewed and discussed the negotiations between MHL and Fliteboard and explained to the jury how the negotiations at one time centered around a royalty rate based on a per unit dollar amount as opposed to a percentage of sales. *Id.*, 557:2-560:3. He explained that part of the reasoning behind this from MHL's perspective was to account for discounts that Fliteboard might offer with their pricing and that MHL was concerned about its licensee selling at a lower price and avoiding the agreed-upon royalty rate. *Id.*, 560:21-561:24.

Stec also considered the Langelaan license which Waydoo's expert so heavily relied upon and explained why that was not a comparable license. *Id.*, 561:25-566:23. Stec went through a detailed presentation of the differences between the Fliteboard license and the Langelaan license and explained his logic to the jury in a clear and coherent manner. *Id.*, 567:1-568:21. He ultimately informed the jury that based on his expert analysis, and consideration of all the relevant factors, that the reasonable royalty rate that would have resulted from a hypothetical negotiation between MHL and Waydoo would have been $560 per unit sold. *Id.*, 572:16-573:5.

As to Waydoo's arguments that Stec did not account for litigation threats, apportion damages, and/or that the Langelaan agreement was more economically comparable to the hypothetical negotiation than the Fliteboard agreement, those are all factual issues best addressed through cross-examination. *See Vectura*, 397 F. Supp. 3d at 593-94 (citing *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012)).  And that is exactly what Waydoo focused on in its cross-examination of Stec in this case, and what Stec addressed to the jury head-on under Waydoo's scrutiny.

18

As to the threat of litigation, Stec explained that in every situation in which there are negotiations between a patent holder and a potential infringer there is going to be the possibility of litigation should the parties not enter into a license. Tr., Vol. 3, 579:4-22. Stec's opinions are consistent with the case law wherein the relevant question is not whether there is the potential for litigation should the parties not come to an agreement, but whether the agreement reflected the settlement of actual litigation; whether the agreement was otherwise reliable as a comparable agreement; and whether the expert considered the litigation or circumstances surrounding execution of the agreement in his/her analysis. *See ResQNet.com v. Lansa, Inc*., 594 F.3d 860, 870–72 (Fed. Cir. 2010); *Prism Techs. LLC v. Sprint Spectrum L.P*., 849 F.3d 1360, 1370-71 (Fed. Cir. 2017); *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 77–78 (Fed. Cir. 2012); and *AVM Techs., LLC v. Intel Corp*., 927 F. Supp. 2d 139, 143–44 (D. Del. 2013).

Stec further confirmed that he performed an apportionment analysis based on the fact that there were additional patents, including remote control patents, that were subject to the Fliteboard agreement. Tr., Vol. 3, 616:10-618:7. His understanding was that those patents had no value in the transaction and were simply thrown in as part of the deal. *Id*., 617:11-619:5.

Finally, the fact that a $500 per unit royalty rate would, according to Waydoo, exceed its profits, is not a basis for overturning the jury's damages award. This Court and the Federal Circuit both agree that an "infringer's net profit margin is not the ceiling by which a reasonable royalty is capped." *Bayer*, 407 F. Supp. 3d at 481 (citing *Powell v. Home Depot U.S.A., Inc*., 663 F.3d 1221, 1238 (Fed. Cir. 2011). In any event, Stec took into consideration Waydoo's manufacturing profit margin and explained the issue to the jury. He cited Mr. Ping's inconsistent testimony where in one instance he indicated that there was a 35% profit margin and in another he claimed a 15% profit margin. Tr., Vol. 3, 572:5-15; 614:10-616:5; 642:2-16. Stec further

explained the difference between Waydoo's wholesale distributor price compared to the retail price and how Waydoo had a 50% price markup that is enjoyed by the distributor and retailer. *Id*., 583:14-584:2. He also confirmed that Waydoo set the prices and made the decision to give their retailers a 50% profit. *Id*., 639:13-24. He confirmed that Waydoo had the ability to control the pricing and adjust how much profit could be earned by both the distributor and Waydoo itself. *Id*., 639:25-640:19.

As to the inconsistent profit margins testified to by Waydoo, Stec explained to the jury that assuming there was a 35% profit margin, then Waydoo would turn a profit of $1050 per infringing unit sold – which would leave Waydoo with a $490 per unit profit after the $560 per unit royalty was applied. Tr., Vol. 3, 642:2-643:21. The jury considered all of this testimony and instead of awarding MHL the full $560 per unit asked for, actually reduced the per unit royalty amount to $500. Under the royalty approach where Waydoo was earning a 35% profit, Waydoo would earn approximately $550 per unit sold – leaving it profitable as a result of the hypothetical negotiation with MHL.

Stec reviewed all the possible license agreements or negotiations that could be compared to the hypothetical negotiation in this case, considered all the circumstances surrounding the entry of the Fliteboard License, and offered a detailed, supported, and reasoned analysis as to the proper measure of reasonable royalty damages. The jury credited Stec's opinions and rendered a verdict on damages that was reasonable (and actually less than what Stec proposed).  There is no basis to overturn the jury's verdict or set a new trial on the damages issue.

## CONCLUSION

For the reasons discussed herein, Waydoo's renewed motion for judgment as a matter of law and its corresponding motion for a new trial should be denied.

Dated:  June 7, 2023

**COOCH AND TAYLOR, P.A.**

*/s/ Andrew A. Ralli* _____
Blake A. Bennett (#5133)
Andrew A. Ralli (#6733)
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, DE 19801
(302) 984-3800
bbennett@coochtaylor.com
aralli@coochtaylor.com

Dennis D. Murrell (*pro hac vice*)
Robert J. Theuerkauf (*pro hac vice*)
Brian P. McGraw (*pro hac vice*)
Megan E. Gibson (*pro hac vice*)
GRAY ICE HIGDON, PLCC
4600 Shelbyville Road #8022
Louisville, KY 40257
(502) 625-2739
dmurrell@grayice.com
rjt@grayice.com
bmcgraw@grayice.com
mgibson@grayice.com

*Attorneys for Plaintiff MHL Custom, Inc*