IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MHL CUSTOM, INC.,

        Plaintiff,

  v.

WAYDOO USA, INC. and SHENZHEN
WAYDOO INTELLIGENCE
TECHNOLOGY CO., LTD.,

        Defendants.

C.A. No. 21-0091-RGA

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR RENEWED MOTIONS
FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL**

OF COUNSEL:

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Jason Kanter (*pro hac vice*)
Mark Basanta (*pro hac vice*)
Patrick Lavery (*pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, New York 10151
(212) 588-0800

Dated: June 21, 2023

Kelly E. Farnan (#4395)
Dorronda R. Bordley (#6642)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
farnan@rlf.com
bordley@rlf.com

*Attorneys for Defendant Waydoo USA, Inc.
and Defendant/Counter Plaintiff Shenzhen
Waydoo Intelligence Technology Co., Ltd.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I. ARGUMENT ................................................................................................................1

    A. The Evolo Report Was Publicly Accessible ......................................................1

        1. MHL Uses Unsupported and Erroneous Legal Standards ......................1

        2. MHL Downplays and Outright Ignores Evidence ..................................2

        3. MHL Doubles Down on Irrelevance and Speculation .............................3

    B. The Jury's Two Enablement Decisions Are Contradictory and Irreconcilable .............4

        1. The Evolo Report Is Enabling ..................................................................4

        2. The Asserted Patents Are Not Enabling ..................................................6

    C. MHL Has Not Proven Infringement of the '659 Patent ....................................7

    D. Any Infringement Was Not Willful ...................................................................8

    E. MHL's Damages Evidence Is Not Comparable to the Hypothetical Negotiation, and the Jury's Award Is Not Reasonable ....................................9

II. CONCLUSION ...........................................................................................................10

# **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Amgen Inc. v. Sanofi*,
    143 S. Ct. 1243 (2023) .................................................................................................... 7

*bioMérieux, S.A. v. Hologic, Inc.*,
    2020 WL 759546 (D. Del. 2020) .................................................................................... 9

*Blue Calypso, LLC v. Groupon, Inc.*,
    815 F.3d 1331 (Fed. Cir. 2016) ...................................................................................... 2

*Bos. Sci. Corp. v. Nevro Corp.*,
    560 F. Supp. 3d 837 (D. Del. 2021) ............................................................................... 9

*Chesapeake & Ohio Ry. Co. v. Martin*,
    283 U.S. 209 (1931) ....................................................................................................... 1

*Evolved Wireless, LLC v. Apple Inc.*,
    2019 WL 8128550 (D. Del. 2019) .................................................................................. 9

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
    757 F. App'x 974 (Fed. Cir. 2019) ............................................................................ 1, 3

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017) ...................................................................................... 6

*Jazz Pharms., Inc. v. Amneal Pharms., LLC*,
    895 F.3d 1347 (Fed. Cir. 2018) ...................................................................................... 2

*In re Lister*,
    583 F.3d 1307 (Fed. Cir. 2009) ...................................................................................... 2

*McCann v. Miller*,
    502 F. App'x 163 (3d Cir. 2012) .................................................................................... 1

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ........................................................................................ 9

*Reeves v. Sanderson Plumbing Prod., Inc.*,
    530 U.S. 133 (2000) ....................................................................................................... 1

*Rude v. Westcott*,
    130 U.S. 152 (1889) ....................................................................................................... 9

*Samsung Elecs. Co. v. Infobridge Pte. Ltd.*,
    929 F.3d 1363 (Fed. Cir. 2019) ................................................................................... 2, 3

*Sanofi-Synthelabo v. Apotex, Inc.*,
    550 F.3d 1075 (Fed. Cir. 2008) ....................................................................................... 5

*Shopify Inc. v. Express Mobile, Inc.*,
    2021 WL 4288113 (D. Del. 2021) .................................................................................. 9

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008) ......................................................................................... 7

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1186 (Fed. Cir. 2008) ....................................................................................... 4

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
    862 F.2d 1564 (Fed. Cir. 1988) ....................................................................................... 9

*Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*,
    602 F.3d 1325 (Fed. Cir. 2010) ................................................................................... 5, 7

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ................................................................................. 9, 10

I.      ARGUMENT

      A.      The Evolo Report Was Publicly Accessible

MHL applies improperly heightened (or just incorrect) legal standards, downplays and ignores actual evidence, and doubles down on the irrelevant information and speculation it presented at trial. The bottom line is that Mr. Lanterman's testimony and Waydoo's documentary evidence is uncontradicted and unimpeached, and must be given credit.

            1.      MHL Uses Unsupported and Erroneous Legal Standards

MHL argues (twice, no less) that the jury was "not required" to give Mr. Lanterman's testimony "any weight." D.I. 245 at 5, 6 n.5. But longstanding precedent required the jury to credit Mr. Lanterman's testimony because it was unchallenged. *Chesapeake & Ohio Ry. Co. v. Martin*, 283 U.S. 209, 216 (1931). Mr. Lanterman likewise must be credited on a JMOL motion. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to . . . that evidence supporting the moving party that is uncontradicted and unimpeached . . . ."); *McCann v. Miller*, 502 F. App'x 163, 170 (3d Cir. 2012). MHL did not impeach or contradict Mr. Lanterman at trial, "has not identified any inconsistency or equivocation" in his testimony, and has not given "any other reason the jury could reasonably have rejected his testimony." *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 757 F. App'x 974, 979-980 (Fed. Cir. 2019) ("[U]nder the requirement of substantial evidence, a jury's rejection of expert testimony must have some reasonable basis."). MHL's offhanded cite to the jury instructions overlooks the most-pertinent clause: "given all the other evidence in the case." D.I. 245 at 5 n.4. All of the evidence in the case points to the Evolo Report being publicly accessible. There simply is no "other" (i.e., contradictory) evidence.

MHL complains that "Waydoo failed to present any evidence of who those 17 individuals were" that downloaded the Evolo Report, calling their identities "important." *Id.* at 6. MHL made

– 1 –

the same misguided argument to the jury. D.I. 236 at 6. MHL further complains that there is "no evidence that anyone actually found the Evolo Report through" the Båtnytt article or a Google search. D.I. 245 at 6. These complaints fail in light of applicable precedent. The standard for public accessibility is whether a POSA "*could* . . . access a reference," not whether "specific persons actually accessed" the reference. *Samsung Elecs. Co. v. Infobridge Pte. Ltd.*, 929 F.3d 1363, 1374 (Fed. Cir. 2019) (emphasis original). There is "no requirement" to show that anyone "actually received" the Evolo Report, much less received the Report through the use of any particular means. *Jazz Pharms., Inc. v. Amneal Pharms., LLC*, 895 F.3d 1347, 1360 (Fed. Cir. 2018); *see also In re Lister*, 583 F.3d 1307, 1313-14 (Fed. Cir. 2009).

### 2. MHL Downplays and Outright Ignores Evidence

MHL's recitation of the evidence ignores Professor Kuttenkeuler's webserver logs (DTX068A), and downplays the business records and sworn certification obtained from Google by way of subpoena (DTX069). D.I. 245 at 5 (stating that Waydoo's evidence "consists entirely of the testimony . . . of . . . Mark Lanterman" and "two documents," the Båtnytt article and "Google results screenshots"). MHL even doubts whether the Evolo Report had actually been downloaded before the critical date. *Id.* ("the Evolo Report . . . **may have been** downloaded" (emphasis added)). But try as it might, MHL cannot wish away unchallenged facts. *See* Part I.A.1, *supra*.

MHL argues that "Waydoo presented no evidence to demonstrate the steps that could be taken to search online and then locate the report." D.I. 245 at 7. But "the steps" that Waydoo outlined for locating the Evolo Report are abundantly clear: (i) search for it through Google, and/or (ii) follow the link published in Båtnytt. Such rudimentary computer use would be well within the skill set of a POSA. Tr. at 386:5-17 (Barry); *see also Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1349-51 (Fed. Cir. 2016) ("An adequate roadmap [to a potentially invalidating reference] need not give turn-by-turn directions . . . ."). MHL then complains that there is "no

– 2 –

evidence that anyone actually found the Evolo Report through" the Båtnytt article or a Google search.[1]  D.I. 245 at 6-7.  A Google search and the Båtnytt article are two clear, specific, and proven means by which POSAs could have found and accessed the Evolo Report.  But if the demonstrated volume of activity (*see* DTX068A) suggests that there are additional means of finding the Report, it would only *further support* the Report's public accessibility.

### 3.     MHL Doubles Down on Irrelevance and Speculation

Whether Prof. Langelaan or any other specific person found the Evolo Report is legally irrelevant.  D.I. 236 at 5-6.  That there were 17 unique downloaders and 18 unique names on the face of the Evolo Report is nothing but a meaningless (near) coincidence.[2]  Unchallenged evidence that 7 downloaders were in the U.S. disproves MHL's speculation that all 17 downloaders were members of the Sweden-based Evolo team.  *Id.* at 6.  MHL tries to waive away these U.S. downloaders, claiming that Mr. Lanterman's testimony was "unsupported" and "conclusory."  D.I. 245 at 6 n.5.  But again, MHL did not even attempt to challenge this testimony at trial, so it must be credited.  *Imperium*, 757 F. App'x at 979.  Further, Mr. Lanterman also testified that 120 unique visitors accessed the Evolo project webpage and that the Report was attached to the webpage.  Tr. 730:4-11, 735:1-2 (Lanterman).  These visitors alone support the Report's public accessibility because they readily could have downloaded it.[3]  *Samsung*, 929 F.3d at 1374.

At the end of the day, the proof is incontrovertible: Every year, thousands of people visited Prof. Kuttenkeuler's course website, dozens accessed the Evolo project webpage, and handfuls of

---

[1] This is one of MHL's unsupported and heightened legal standards.  *See* Part I.A.1., *supra*.

[2] *See* DTX325B.2 (listing 18 unique names).

[3] Mr. Lanterman's testimony about the 120 visitors must be credited.  *Imperium*, 757 F. App'x at 979.  MHL's new concern about "the timeline" of when a person could have downloaded the Report from the project webpage is too late.  D.I. 245 at 7 (quoting Tr. 730:4-11 (Lanterman)).  MHL had the chance to cross Mr. Lanterman about this point, but did not.

people actually downloaded the Evolo Report. D.I. 236 at 5 (citing DTX068A; Tr. 734:22-735:9 (Lanterman)). The only reasonable conclusion from those proven volumes of activity is that the Report was publicly accessible.

### B. The Jury's Two Enablement Decisions Are Contradictory and Irreconcilable

MHL fails to grapple with the core tension demonstrated in Waydoo's motion and, instead, tries to independently address the jury's two enablement decisions. The core tension is that the Patents' entire stability disclosure was in textbooks (or otherwise known) before the Patents' priority date and before the Evolo Report was published, as Mr. Barry admitted. Tr. 1037:23-1038:18 (Barry)). So if the Patent's stability disclosure enables a POSA to make a stable eFoil, the same prior-art disclosures enable the Evolo Report too. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008) ("With the [prior art reference] providing similar, or even a partially identical, disclosure to the [asserted patent], the [reference] meets the lower enablement standard for prior art."). Conversely, if the Evolo Report and well-known stability information do not enable a POSA to make a stable eFoil, then the Patents cannot be enabling either. MHL also ignores all of the additional stability information in the Evolo Report that the Patents are missing. D.I. 236 at 11-12. That additional information strongly contributes to enablement, especially for dual-wing eFoils. Thus, the jury finding that the Evolo Report is not enabling is irreconcilable with its finding that the Patents are enabling.

#### 1. The Evolo Report Is Enabling

MHL claims that "[Mr.] Barry addressed the relevant [*In re Wands*] factors," but does not cite any testimony on any such factor. D.I. 245 at 9. In truth, Mr. Barry outright admitted that he did not form an opinion on how much experimentation the Evolo team did. Tr. 999:20-24 (Barry). In lieu of any *In re Wands* factor, MHL argues that Mr. Barry testified that the Evolo team "didn't ever do the calculations required to produce stability." D.I. 245 at 9 (quoting Tr. 973:3-9 (Barry)).

– 4 –

The issue for enablement is not whether a reference "do[es] the calculations," but whether a POSA "can practice the subject matter based on the reference, without undue experimentation." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). As Mr. Barry admitted, POSAs since the 1960s have known everything the Patents discuss about stability and so would have known how to "do the calculations" before even picking up the Evolo Report.[4] D.I. 236 at 11 (citing Tr. 1037-1038 (Barry)).

MHL also states that "[Mr.] Barry testified that by reading the Evolo Report it was clear" that the Evolo team "never considered stability in the physical design of the object." D.I. 245 at 9 (citing Tr. 973:3-9 (Barry)). But MHL does not explain (or provide any legal support for) how that bears on enablement. The jury only decided enablement, not whether the Evolo Report discloses stability (i.e., whether it anticipates).[5] D.I. 220 at 3. Moreover, Mr. Barry's claim is plainly untrue and contradicted by his own testimony. When asked whether he really thought "the Evolo team wasn't even trying to make a stable watercraft," Mr. Barry admitted that they did "tr[y] to make a stable watercraft." Tr. 973:16-23 (Barry). He further admitted that the Report "used the same definition for stability that the [P]atent[s] used." Tr. 976:13-15 (Barry).

MHL's continued focus on the Evolo prototypes misses the point of enablement. D.I. 245 at 10. None of the Evolo prototypes (including the one in the YouTube videos) embody the final Evolo design, which is the anticipating design. As explained in Waydoo's opening brief, the prototype in the YouTube videos was half powered. D.I. 236 at 8-9. MHL does not argue

---

[4] MHL argues that doing "mathematical calculations" is somehow "necessary" for enabling a stable eFoil. D.I. 245 at 9. If that were true, the Patents cannot be enabling because they also do not do "numeric stability calculations," as Mr. Barry conceded. Tr. 1015:14-1016:3 (Barry).

[5] MHL also cites Prof. Langelaan on whether the Evolo Report discloses stability. D.I. 245 at 10. The Court should disregard Prof. Langelaan's view of the prior art. *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1339-40 (Fed. Cir. 2010) (holding a district court "properly excluded" inventors "from providing expert testimony on invalidity").

otherwise. A POSA in possession of the Evolo Report would have begun their own experimentation with the final Evolo design and would have taken into account the Report's comments on the half-powered prototype.[6] *Id.* Mr. Barry had no idea—until confronted at trial—that the prototype was half powered or that the Evolo team's related comments were even there. Tr. 1005:20-1006:22, 1011:5-1013:9 (Barry) (discovering page DTX325B.551 for the first time). Moreover, his on-the-fly opinion about the team's comments is incomplete (addressing only a larger motor) and nothing more than guesswork, as Mr. Barry conceded. Tr. 1054:25-1055:15 (Barry) ("So my guess would be had they had a bigger motor . . . ."). Admittedly uninformed analysis and guesswork cannot support a jury verdict. *Intell. Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017). Mr. Barry's "automatic control system" theory is likewise based on his admitted ignorance of the Evolo Report and is entirely divorced from its text. Tr. 998:16-18 (Barry).

As to Mr. Barry's flat-plate theory, MHL argues that his "opinions are not contradicted by the factual record," which is untrue. D.I. 245 at 11 (emphasis removed). As Waydoo explained in its opening brief, Mr. Barry's flat-plate theory is nothing more than an unsupported and contradicted inherency argument. D.I. 236 at 10-11. MHL also forgets that Mr. Barry's ultimate conclusion was that the Evolo prototype was "less stable than" the Waydoo product, not that the prototype was <u>un</u>stable. *Id.* at 10 (quoting Tr. 989:25-990:5 (Barry)).

## 2. The Asserted Patents Are Not Enabling

Here too, MHL ignores Waydoo's core argument, which is that the information within the four corners of the Patents does not enable any of the commercial eFoils (i.e., dual-wing eFoils).

---

[6] A POSA would have: "F[ou]nd a larger motor that meets the requirements for power and speed," and/or "[c]hange[d the] wing configuration and weight optimization to reduce drag, leading to larger hydrofoil and smaller angles of attack." DTX325B.551.

*See id.* § III.B.4.  The Patents cover both single- and dual-wing eFoils and, therefore, must enable both.  *Id.* at 12 (citing *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1000 (Fed. Cir. 2008)).  Mr. Barry did not mention dual-wing eFoils anywhere in his testimony, nor did he disagree with Dr. Triantafyllou about all the information pertaining to dual-wing eFoils that is missing from the Patents.  *Id.* at 13.  Mr. Barry **did** agree, however, that arranging two wings in a longitudinal dihedral is the "normal way" that airplanes achieve stability (*id.* at 11), and that the Patents do not teach a longitudinal dihedral (*id.* at 11-12).

As for Prof. Langelaan, he only built single-wing prototypes (*e.g.*, PTX189; PTX190), which (assuming they worked) are not evidence that the Patents enable the full scope of their claims.  *See Amgen Inc. v. Sanofi*, 143 S. Ct. 1243, 1254 (2023) ("[T]he specification must enable the full scope of the invention as defined by its claims.  The more one claims, the more one must enable.").  Further, MHL accuses Waydoo of "focus[ing] solely on an out of context soundbite" from Prof. Langelaan (D.I. 245 at 13 n.8) where he admitted that a POSA "would be able to **use the textbooks** to develop a watercraft that is then passively stable" (Tr. 314:17-315:13 (Langelaan) (emphasis added)).  MHL is silent, however, on what context is allegedly missing from Prof. Langelaan's admission.  Other than conceding the shortcomings of his Patents, Prof. Langelaan's testimony about invalidity is irrelevant.  *Verizon*, 602 F.3d at 1339-40.

### C. MHL Has Not Proven Infringement of the '659 Patent

Waydoo's argument regarding the '659 patent is simple enough.  MHL's only evidence that withstands any scrutiny is Mr. Barry's eigenvalue analysis, which demonstrates that Waydoo's eFoils are dynamically <u>un</u>stable and, thus, non-infringing.  D.I. 236 at 15-16.  The remainder of MHL's purported evidence cannot overcome the eigenvalue evidence or otherwise sustain the jury's verdict because it is all unsupported, conclusory, and/or thinly veiled bunk.

The "battle" here is not between "reasonable but conflicting expert opinions."  D.I. 245

at 14.  The experts agree that the eigenvalue evidence shows that Waydoo's eFoils are <u>un</u>stable. D.I. 236 at 15 (citing Tr. 467:10-467:20, 470:6-9 (Barry); Tr. 772:5-21, 779:1-3 (Triantafyllou)). Mr. Barry all but admitted his testimony on YouTube videos is unscientific.  *See id.*  And his testimony about "damping" is cobbled together with no support from any scientific literature.  *Id.* at 16-17.  As previously discussed, it is also unquantified and contradicted by Mr. Barry himself. *Id.* at 16-17.  As another point of contradiction, Mr. Barry testified that the water's "free surface" **both** causes stability and causes instability in an eFoil.  Tr. 474:6-10 (Barry) (confirming his opinion that a "sigma [value] becomes more negative," i.e., more stable, "as a result of" the "free surface"); Tr. 1055:9-15 (Barry) ("[W]hen things are unstable in a marine environment, primarily because of the free surface, it gets worse as you go faster.").

MHL claims that Waydoo "mischaracterizes [Mr.] Barry's testimony," but does not substantiate it.  D.I. 245 at 13.  Mr. Barry unequivocally testified that he can make a "positive determination" of stability just from observing a YouTube video, confirming that he "d[id]n't need to do any mathematical calculations in order to determine stability."[7]  Tr. 481:15-482:5 (Barry). Mr. Barry is wrong about that, of course, but he said it.  D.I. 236 at 14-15.  Mr. Barry also testified—at length—that he had no support from any scientific/engineering text for his opinions about stability from YouTube videos or damping.  Tr. 479:9-480:17, 482:8-12 (Barry).  MHL's only substantiated evidence shows that Waydoo's eFoils do not infringe the '659 patent.

**D.     Any Infringement Was Not Willful**

MHL criticizes Waydoo for "ignoring the other evidence of willfulness."  D.I. 245 at 15. But aside from cease-and-desist letters, MHL has nothing but its "this cannot be a coincidence"

---

[7] MHL suggests that Dr. Triantafyllou agrees with Mr. Barry.  D.I. 245 at 13 n.9.  He does not. "[S]ome indication" of stability is entirely unlike a "positive determination" of stability.

argument and speculation that Waydoo copied MHL's eFoil. *Id.* at 15-16; *see also* D.I. 235 at 15. There is no evidence of copying and no evidence that seven months is not enough time to develop a commercial eFoil. D.I. 246 at 13-14. Further, Waydoo first learned of the Patents in August 2019, which is ***after*** it introduced its commercial eFoil to the U.S. in January 2019. Tr. 532:15-19, 542:13-19, 676:7-11 (Ping). And none of MHL's letters concerned the product that Waydoo was selling when this suit was filed. D.I. 236 at 17-18 (quoting Tr. 676:7-15 (Ping), 692:5-13 (Wade)).

The willfulness finding cannot stand because "[t]here is no evidence that shows [Waydoo] subjectively believed [it was] infringing a valid patent." *Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 8128550, at *4 (D. Del. 2019). The "garden-variety allegations" in MHL's letters "are insufficient to support a finding of willfulness." *Shopify Inc. v. Express Mobile, Inc.*, 2021 WL 4288113, at *20 (D. Del. 2021). That Waydoo continued selling eFoils after suit was filed likewise does not support willfulness. *See Bos. Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 843-45 (D. Del. 2021); *bioMérieux, S.A. v. Hologic, Inc.*, 2020 WL 759546, at *12 (D. Del. 2020).

**E.     MHL's Damages Evidence Is Not Comparable to the Hypothetical Negotiation, and the Jury's Award Is Not Reasonable**

MHL argues that the only "relevant question" is "whether the [Fliteboard] agreement reflected the settlement of actual litigation." D.I. 245 at 19. But agreements made under "a threat" of litigation likewise render a license non-comparable. *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320-21 (Fed. Cir. 2010); *see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 n.11 (6th Cir. 1978)[8]; *Rude v. Westcott*, 130 U.S. 152, 164 (1889). Dr. Stec admitted that his views are based on Fliteboard not being threatened. D.I. 236 at 19 (citing Tr. 628:15-629:22 (Stec)). An earlier license also fails to support a verdict where the

---

[8] The "settlement *Panduit* refers to took place under a *threat* of litigation." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1572 (Fed. Cir. 1988) (emphasis original).

license's "stated royalty rate[]" is "far less than the . . . rate that the jury effectively awarded." *Wordtech*, 609 F.3d at 1320. In spite of MHL's rationalizations, the Fliteboard license (5.25%) fails to explain the jury's award (16.67%).[9] *Id.* ("[A] past royalty range of 3-12% fails to explain a 26.3% hypothetically negotiated rate.").

MHL argues that Waydoo's profits do not limit damages, but fails to explain, or point to any evidence concerning, why Waydoo would agree at the hypothetical negotiation to sell eFoils at a loss. D.I. 245 at 19. MHL also defends the jury's $500 per unit royalty by "assuming" Waydoo had "a 35% profit margin." *Id.* at 20. But assumptions are not evidence, and no reasonable jury would have concluded that Waydoo's profit margin is 35%. In arguing that Dr. Stec found Mr. Ping's testimony to be "inconsistent," MHL ignores what they actually said. Mr. Ping testified that a 35% profit margin is just Waydoo's "goal," not an actual result. Tr. 615:3-7 (Stec) (discussing Mr. Ping). Dr. Stec even acknowledged that 35% was a goal, not a result. Tr. 616:3-5 (Stec). And the "inconsistency" that Dr. Stec alleged in Mr. Ping's testimony is between a profit of 10% and 15%, not between 15% and 35%. D.I. 245 at 19; Tr. 615:16-616:2 (Stec). Waydoo's argument that the awarded royalty unreasonably exceeds its profits is based on the higher, 15% margin. D.I. 236 at 19 (citing Tr. 538:9-12 (Ping)). MHL does not argue that the jury's royalty was reasonable in light of Waydoo's actual profit margin because it is not reasonable.

## II.   CONCLUSION

For the reasons set out above and in its opening brief, Waydoo respectfully requests that the Court grant the relief requested in Waydoo's renewed motions for judgment as a matter of law and motion for a new trial.

---

[9] The $500-per-unit award is about 16.67% of a $3,000 eFoil. *See* Tr. 601:23-602:3 (Stec).

| | |
|---|---|
| OF COUNSEL: | /s/ Kelly E. Farnan |
| | Kelly E. Farnan (#4395) |
| | Dorronda R. Bordley (#6642) |
| Edgar H. Haug (*pro hac vice*) | RICHARDS, LAYTON & FINGER, P.A. |
| Robert E. Colletti (*pro hac vice*) | One Rodney Square |
| Jason Kanter (*pro hac vice*) | 920 N. King Street |
| Mark Basanta (*pro hac vice*) | Wilmington, DE 19801 |
| Patrick Lavery (*pro hac vice*) | farnan@rlf.com |
| HAUG PARTNERS LLP | bordley@rlf.com |
| 745 Fifth Avenue | |
| New York, New York 10151 | *Attorneys for Defendant Waydoo USA, Inc.* |
| (212) 588-0800 | *and Defendant/Counter Plaintiff Shenzhen* |
| | *Waydoo Intelligence Technology Co., Ltd.* |
| Dated: June 21, 2023 | |