**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MHL CUSTOM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No.: 21-091-RGA |
| v. | ) |
| | ) **REDACTED PUBLIC VERSION** |
| WAYDOO USA, INC. and SHENZHEN | ) |
| WAYDOO INTELLIGENCE TECHNOLOGY | ) |
| CO., LTD., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' BRIEF IN OPPOSITION TO**
**PLAINTIFF'S POST-TRIAL MOTIONS**

OF COUNSEL:

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Jason Kanter (*pro hac vice*)
Mark Basanta (*pro hac vice*)
Patrick Lavery (*pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, New York 10151
(212) 588-0800

Dated:  June 7, 2023

Kelly E. Farnan (#4395)
Dorronda R. Bordley (#6642)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
farnan@rlf.com
bordley@rlf.com

*Attorneys for Defendant Waydoo USA, Inc.*
*and Defendant/Counter Plaintiff Shenzhen*
*Waydoo Intelligence Technology Co., Ltd.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.      Nature & Stage of the Proceedings ..................................................................... 1

II.     Summary of Arguments ....................................................................................... 1

III.    Statement of Facts & Argument ......................................................................... 2

        A.      MHL Is Not Entitled to a Permanent Injunction ..................................... 2

                1.      MHL Will Not Be Irreparably Harmed Without an
                        Injunction ..................................................................................... 3

                        a.      MHL Has Licensed and Is Still Willing to  License
                                the Asserted Patents ......................................................... 4

                        b.      MHL And Waydoo Are Not Direct Competitors ............ 4

                        c.      MHL Has Not Shown That It Lost Any Sales to
                                Waydoo .............................................................................. 5

                        d.      MHL Failed to Show That It Lost Market Share to
                                Waydoo .............................................................................. 5

                        e.      Failure to Seek a Preliminary Injunction & MHL's
                                Delay .................................................................................. 6

                        f.      MHL Has Failed to Show a Nexus Between the
                                Patented Features and Demand for Waydoo's
                                Products ............................................................................. 7

                2.      Damages Are an Adequate Remedy ............................................. 7

                3.      The Balance of Hardships Favor Denying an Injunction ............. 8

                4.      The Public Interest Favor Denying an Injunction ....................... 8

        B.      MHL Is Not Entitled to Ongoing or Supplemental Damages
                Because It Did Not Request Them From the Jury ................................... 9

        C.      MHL Is Not Entitled to Its Requested Pre- & Post-Judgment
                Interest ................................................................................................... 11

D.  MHL Is Not Entitled to Enhanced Damages ..........................................................12

    1.  There Is No Evidence Waydoo Copied Anyone.........................................13

    2.  Waydoo Had A Good Faith Belief That the Patents Were
Invalid ........................................................................................................14

    3.  Waydoo's Litigation Conduct Was Reasonable .......................................14

    4.  Waydoo's Financial Condition Does Not Justify
Enhancement..............................................................................................18

    5.  This Case Was Closer Than MHL Wants to Believe ...............................19

    6.  Waydoo Did Not Conceal Its Conduct .....................................................19

E.  MHL Is Not Entitled to Its Attorneys' Fees.........................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

### <u>Cases</u>

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)........................................................................ 4

*Apple Inc. v. Samsung Elecs. Co.*,
  695 F.3d 1370 (Fed. Cir. 2012)........................................................................ 3

*Apple Inc. v. Samsung Elecs. Co.*,
  735 F.3d 1352 (Fed. Cir. 2013)........................................................................ 7

*Babby v. City of Wilmington*,
  614 F. Supp. 2d 508 (D. Del. 2009)............................................................. 9, 10

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021)......................................................................... 11

*Belden Techs., Inc. v. Superior Essex Commc'ns LP*,
  802 F. Supp. 2d 555 (D. Del. 2011).................................................................. 6

*Canon, Inc. v. Color Imaging, Inc.*,
  292 F. Supp. 3d 1357 (N.D. Ga. 2018)............................................................ 14

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001)................................................................... 11, 12

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962)......................................................................................... 9

*Dimick v. Schiedt*,
  293 U.S. 474 (1935)....................................................................................... 10

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)...................................................................................... 3, 9

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998)......................................................................................... 9

*First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*,
  2023 WL 2428837 (D. Del. Mar. 9, 2023) .................................................. 15, 16

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983)....................................................................................... 11

*Genband US LLC v. Metaswitch Networks Corp.*,
  861 F.3d 1378 (Fed. Cir. 2017)............................................................... 6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) .................................................................................. 12

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ................................ 8

*In re Newell Brands, Inc. Sec. Litig.*,
  837 F. App'x 869 (3d Cir. 2020) ........................................................... 8

*Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*,
  181 F.3d 446 (3d Cir. 1999)............................................................... 9, 10

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003)............................................................... 2, 8

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
  798 F. Supp. 2d 541 (D. Del. 2011) ................................................. 5

*Liquid Dynamics Corp. v. Vaughan Co.*,
  449 F.3d 1209 (Fed. Cir. 2006)........................................................... 13

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996).................................................................................. 9

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
  633 F. Supp. 2d 361 (E.D. Tex. 2009)............................................... 19

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010).................................................................................. 3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014).................................................................................. 20

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  875 F.3d 1369 (Fed. Cir. 2017)........................................................... 3

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992)....................................................... 12, 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011)....................................................... 3, 8

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  14 F.4th 1323 (Fed. Cir. 2021) ........................................................... 12

*Sun Pharm. Indus. Ltd. v. Saptalis Pharms., LLC,*
  2020 WL 5077412 (D. Del. Aug. 26, 2020) ...................................................... 20

*Telcordia Techs., Inc. v. Cisco Sys., Inc.,*
  612 F.3d 1365 (Fed. Cir. 2010) ...................................................................... 10

*Thermolife Int'l LLC v. GNC Corp.,*
  922 F.3d 1347 (Fed. Cir. 2019) ...................................................................... 20

*Transclean Corp. v. Jiffy Lube Int'l, Inc.,*
  474 F.3d 1298 (Fed. Cir. 2007) ................................................................... 2, 8

*TruePosition Inc. v. Andrew Corp.,*
  568 F. Supp. 2d 500 (D. Del. 2008) ............................................................... 18

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.,*
  204 F.3d 1360 (Fed. Cir. 2000) ...................................................................... 14

*WBIP, LLC v. Kohler Co.,*
  829 F.3d 1317 (Fed. Cir. 2016) ...................................................................... 12

## **Statutes**

35 U.S.C. § 284 ................................................................................................ 9, 12

35 U.S.C. § 285 .................................................................................................... 20

## **Rules**

Fed. R. Evid. 403 ................................................................................................... 9

## I.     Nature & Stage of the Proceedings

The Court held a jury trial March 24-31, 2023, concerning MHL's claims that Waydoo infringes U.S. Patent Nos. 9,359,044 and 9,586,659 (collectively, the "Asserted Patents" or the "Patents").  D.I. 212.  The jury returned a verdict, including that Waydoo willfully infringed the asserted claims, and awarded damages of $1,334,000.  D.I. 222.  On April 12, 2023, the Court entered judgment.  D.I. 226.  On May 2, 2023, MHL moved for a permanent injunction, supplemental and ongoing damages, pre- and post-judgment interest, enhanced damages, and attorneys' fees.  D.I. 235.  Waydoo opposes each motion for the reasons set out below.

## II.     Summary of Arguments

1.     MHL is not entitled to a permanent injunction.  MHL told the jury (and the public) that it was not seeking an injunction and should be held to that.  Each of the remaining *eBay* factors favor denying MHL's request as well.  The Court has already found that MHL's willingness to license "cannot be a seriously disputed issue," and there is no evidence that MHL lost sales or market share to Waydoo (the only irreparable harms alleged).  Nor is there evidence of a nexus between those harms and infringement.  MHL also does not seriously dispute that damages would be adequate, basing its argument solely on long-resolved accounting issues.

2.     MHL is not entitled to ongoing or supplemental damages.  Any additional damages were waived by MHL not requesting them from the jury, and a Court-ordered award of additional damages (pre- or post-verdict) would violate Waydoo's Seventh Amendment right to a jury trial.  MHL did not ask the jury for damages beyond December 2022, and the jury made no implicit finding that its royalty rate would apply through March 2023, much less through October 2034 (when the patents expire) like MHL is asking.

3.     MHL is not entitled to its requested pre- or post-judgment interest.  Pre-judgment interest should denied because MHL has not justified its two-year delay before filing suit.  The

damages on which pre- and post-judgment interest is calculated should also be limited.  The damages verdict is against the clear weight of the evidence; the highest damages amount proven at trial is a 2.5% royalty on Waydoo's sales.

4.      MHL is not entitled to enhanced damages because there was nothing egregious about Waydoo's behavior before or during this litigation.  This case was close; Waydoo invalidated some claims but not others.  There is also no evidence Waydoo copied any product, acted in bad faith, or hid its sales activities.  MHL's assertion that "Defendants' overall strategy in this case can be best characterized as an *ad hoc*, shotgun style, concede nothing, take no prisoners style of defense" was plainly not written about Waydoo or this case.  Rather, it seems to be MHL's counsel's boilerplate way of characterizing opponents in every case.

5.      MHL is not entitled to attorneys' fees either.  MHL does not make a serious argument that this case is exceptional and never notified Waydoo that any of its behaviors were exceptional.  The mere fact that MHL prevailed at trial is insufficient to warrant awarding fees.

## III.    Statement of Facts & Argument

### A.    MHL Is Not Entitled to a Permanent Injunction

MHL is seeking a permanent injunction despite having told the jury that it is "not trying to put Waydoo out of business" and that it was merely "asking for fair compensation" from Waydoo, "[j]ust like Fliteboard is paying a fair compensation for the use of the patents." Tr. 1126:19-22 (MHL closing).  A permanent injunction would, of course, put Waydoo out of business in the U.S.  As a threshold issue, MHL is estopped from seeking an injunction after telling the jury it was not seeking one and then receiving a favorable verdict.  *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (stating that judicial estoppel "prevent[s] a litigant from playing fast and loose with the courts"); *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) (applying

judicial estoppel).  For that reason, and the additional reasons set out below, the Court should deny MHL's request.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).  If a plaintiff's injury can be adequately redressed with a less severe remedy, "no recourse to the additional and extraordinary relief of an injunction [is] warranted."  *Id.* at 165-66.  "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Id.*  Each *eBay* factor favors denying MHL's requested injunction.

### 1.      MHL Will Not Be Irreparably Harmed Without an Injunction

Irreparable harm is no longer presumed in patent infringement cases.  *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148-49 (Fed. Cir. 2011).  Rather, a patentee must now affirmatively establish (i) "that absent an injunction, it will suffer irreparable harm," and (ii) "that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."  *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).  "To determine whether the patentee will suffer irreparable harm absent an injunction, the court may consider factors such as the nature of competition between the patentee and the infringer, the willingness of a patentee to license, and any lost sales the patentee has proven."  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017).

### a.     MHL Has Licensed and Is Still Willing to License the Asserted Patents

Notably absent from MHL's motion is any mention of its broad willingness to license the

Asserted Patents to its competitors.  The Court itself has already said that MHL's willingness to

license "cannot be a seriously disputed issue."  D.I. 164 at 2.  For good reason.  The evidence

amply shows MHL's willingness to license competitors, including its "number one competitor,"

Fliteboard.  Tr. 206:19-22 (Leason) ("We've licensed to our number one competitor . . . ."),

211:17-212:7 ("I've always left that door open for the competitors."); *see also* PTX033

(Fliteboard license).  MHL even licensed another competitor on the eve of trial.  D.I. 208,

Tr. 83:2-85:4 (discussing MSLR license).  MHL has also been willing to license Waydoo since

April 2019.  *E.g.*, D.I. 1-4 at 29 ("MHL remains open to discussing a valid license of its

intellectual property.").  "In light of the record evidence including [MHL]'s past licensing of this

technology and its pursuit of [Waydoo] as a licensee, no fact finder could reasonably conclude

that [MHL] would be irreparably harmed by the payment of a royalty (a licensing fee)."

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1339 (Fed. Cir. 2012)

(reversing a finding of irreparable harm).  This factor strongly favors denying an injunction.

### b.     MHL And Waydoo Are Not Direct Competitors

MHL insists that it and Waydoo are "direct competitors" (D.I. 235 at 4), but the evidence

shows otherwise.  Tr. 905:14-19 (Kline) ("[T]he level of competition between [Waydoo and

MHL] was less than that between Fliteboard and MHL.");  *see also* Tr. 876:19-877:9 (Kline),

715:19-21 (Wade) ("I would call [Waydoo and MHL] indirect competitors.").  Waydoo and

MHL occupy different market segments because they sell eFoils at different price points.  "All

the MHL products," in fact, "are more expensive than all the Waydoo products."  Tr. 912:2-7

(Kline); *see also* Tr. 716:14-17, 717:12-718:1 (Wade).  MHL even admitted that its eFoils would

be too expensive for certain consumers, while Waydoo's eFoils would not be.  Tr. 353:22-354:11 (Wagner).  This factor favors denying an injunction.

### c.   MHL Has Not Shown That It Lost Any Sales to Waydoo

MHL has not proven any lost sales to Waydoo or that it stands to lose any sales moving forward.[1]   MHL's expert expressly disclaimed conducting a lost-sales analysis.   Tr. 631:7-9 (Stec) ("I have not attempted to quantify lost sales.").   Yet, MHL claims that its "retailers" (plural) have "confirmed" that they lost sales to Waydoo.  D.I. 235 at 4.  For support, MHL relies on a single distributor, "Mr. Tamayo," who is one of "over 300" MHL partners in the U.S. Tr. 340:17-24 (Wagner), 569:17-21 (Stec).  According to Dr. Stec, Mr. Tamayo "simply told me that he believes he lost sales to Waydoo."  Tr. 626:17-627:24 (Stec).  Mr. Tamayo "didn't go into specific details regarding customers or the reasons customers have given him."  *Id.*  And Dr. Stec did not have Mr. Tamayo substantiate his "belief" that he lost sales to Waydoo.  *See id.* ("I'm going off what [Mr. Tamayo] told me.").  Such vague hearsay hardly "confirms" anything. *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 563 (D. Del. 2011) (finding patentee had not met its burden of showing that a permanent injunction was warranted where infringer had "not identified specific customers it has lost, or [stood] to lose, directly as a result of [infringer's] continued sales of the infringing [devices]").  This factor strongly favors denying an injunction.

### d.   MHL Failed to Show That It Lost Market Share to Waydoo

MHL's allegations about market share are misleading.  MHL states that by the end of 2022, its market share "had been reduced to 55% with Fliteboard at 25-30% and [Waydoo] at 10-15%."  D.I. 235 at 4 (citing Tr. 340:11-16 (Wagner)).  But these numbers are MHL's own

---

[1] MHL's loss of MACkite as a distributor was self-inflicted.  D.I. 235 at 4.  MHL's policy is to drop a distributor if they begin selling another eFoil brand, which is what happened with MACkite.  Tr. 352:19-353:1 (Wagner), 625:11-626:16 (Stec).

"estimate" of the market.  Tr. 341:11-16 (Wagner).  There is no market information in the record from any uninterested source.  But even taking MHL's estimates at face value, they show that despite (or perhaps because of) Waydoo's participation, the eFoil market is rapidly growing. MHL's sales are likewise growing, and new participants are actively entering the market.

According to MHL, the eFoil market has at least five participants and is growing annually by more than Waydoo's estimated market share.  *See* PTX183 at MHL_0102101 (showing "Lift" and competitors "A" through "D"); Tr. 347:25-349:21 (Wagner) (confirming that "Competitor C" is Waydoo).  MHL projects it will see consistent year-over-year sales growth, even with Waydoo on the market, resulting in $600M in sales by 2027.  PTX183 at MHL_0102102; Tr. 350:6-15 (Wagner).  Given that the eFoil market was/is growing so sharply and that there are at least five participants, MHL needs much more evidence for the Court to conclude that Waydoo has harmed MHL's market position.  *See Belden Techs., Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 577 (D. Del. 2011) ("As plaintiffs and defendants are not the only competitors in this multi-supplier market, defendants' infringement has not necessarily affected plaintiffs' market position.").  This factor favors denying an injunction.

e.      **Failure to Seek a Preliminary Injunction & MHL's Delay**

Courts also consider a patent owner's delay and its failure to seek a preliminary injunction when deciding on a permanent injunction.  *See Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1385 (Fed. Cir. 2017).  By 2019, MHL had already concluded that Waydoo infringed the Asserted Patents, yet it waited two more years to file suit.  Tr. 347:10-24 (Wagner).  MHL also never sought a preliminary injunction despite believing that Waydoo's defenses were "borderline frivolous."  D.I. 235 at 14.  MHL's delay and failure to seek a preliminary injunction strongly favors denying a permanent one.

### f.   MHL Has Failed to Show a Nexus Between the Patented Features and Demand for Waydoo's Products

MHL "must show some connection between the patented feature and demand for [Waydoo's] products."  *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013).  MHL could have provided evidence that (i) "a patented feature is one of several features that cause consumers to make their purchasing decisions," (ii) "the inclusion of a patented feature makes a product significantly more desirable," or (iii) "the absence of a patented feature would make a product significantly less desirable."  *Id.*  But MHL presented no such evidence.

Instead, MHL claims, contrary to its own expert, that "if the [Waydoo] eFoils were not stable there would not be a viable product in that the eFoils would not be rideable."  D.I. 235 at 5.  Both experts agree that an unstable eFoil can be ridden.  D.I. 85-1, Ex. 4 ¶ 93 (Barry) ("While it would not be easy to ride a passively statically unstable hydrofoil watercraft, it could be done if a rider were skilled enough."); *see also* D.I. 85-1, Ex. 8, ¶ 33 (Triantafyllou).  Further, MHL's citation to Dr. Triantafyllou is misplaced because he offered no opinions about consumer behavior or the desirability of eFoil features.  His work in this case was as an expert in mechanical engineering, ocean engineering, and naval engineering.  Tr. 748:1-749:5 (Triantafyllou).  This factor favors denying an injunction.

### 2.   Damages Are an Adequate Remedy

MHL argues that accounting issues justify an injunction, but offers no legal or factual support.  Waydoo is a startup and admitted to certain growing pains in its accounting functions, but those issues ended by 2020.  Tr. 685:13-686:1 (Ping).  And whatever issues may have existed, any discrepancy would have been minimal.  D.I. 85-1, Ex. 14 Sch. 2.7 (Kline Report)

█████████████████████████████████████████████████████████████

████████████████████   In any event, MHL has already conceded that damages would be

adequate by expressing its willingness to license the Asserted Patents, including to Waydoo.  *See* Part III.A.1.a, *supra*.  This factor strongly favors denying an injunction.

### 3.      The Balance of Hardships Favor Denying an Injunction

"[T]he balance of hardships assesses the relative effect of granting or denying an injunction on the parties."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).  MHL projects its revenue will grow 43% year over year, hitting $600M by 2027—even with Waydoo on the market.  PTX183 at MHL_0102102; Tr. 350:6-15 (Wagner).  By contrast, Waydoo would lose 40% of its global revenue if an injunction were put in place.  Tr. 260:12-20 (Tao).  The balance of hardships here is not close. Waydoo would suffer much greater harm from an injunction than MHL would without one.

MHL argues that being required to compete against its own patented invention "imposes a substantial hardship" on it.  D.I. 235 at 6 (citing *Robert Bosch*, 659 F.3d at 1156).  MHL relies on *Robert Bosch*, but ignores important context.  There, the court stated that "requiring [a patentee] to compete against its own patented invention, ***with the resultant harms described above***, places a substantial hardship on [the patentee]."  *Robert Bosch*, 659 F.3d at 1156 (emphasis added).  In other words, in light of the direct competition and loss of market share demonstrated in *Robert Bosch*, competition between the parties would have been a hardship.  *Id.* at 1152.  Here, MHL has not proven any irreparable harm, much less the harms on which the *Robert Bosch* court predicated its decision on this factor.  *See* Part III.A.1., *supra*.  This factor favors denying an injunction.

### 4.      The Public Interest Favor Denying an Injunction

As mentioned above, judicial estoppel precludes MHL from seeking an injunction. *Krystal Cadillac-Oldsmobile*, 337 F.3d at 319; *Transclean*, 474 F.3d at 1307.  Moreover, trials are a public forum and the public also has an interest in not being misled.  *Cf. In re Newell*

– 8 –

*Brands, Inc. Sec. Litig.*, 837 F. App'x 869, 874 (3d Cir. 2020) (discussing "false or misleading impression[s]" in the securities context).   Juries likewise have an interest in parties not misleading them.   *See* Fed. R. Evid. 403.   During its closing, MHL told the jury (and the public) that it is "not trying to put Waydoo out of business," but is merely "asking for fair compensation," "[j]ust like Fliteboard is paying a fair compensation for the use of the patents." Tr. 1126:19-22 (MHL closing).   In likening Waydoo to Fliteboard, MHL told the jury that it would ***not*** try to exclude Waydoo from the U.S. market.   But now that it got a favorable verdict, MHL has changed its tune and is seeking an injunction after all.   The public interest is served here by holding MHL to its representations, especially in light of the jury finding for MHL.   This factor strongly favors denying an injunction.

### B.      MHL Is Not Entitled to Ongoing or Supplemental Damages Because It Did Not Request Them From the Jury

MHL moves for ongoing and supplemental damages under 35 U.S.C. § 284.   D.I. 235 at 9.   MHL was required to submit its request for ongoing damages (i.e., post-verdict damages) to the jury.   Not doing so amounts to a waiver.   *See Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 463 (3d Cir. 1999); *Babby v. City of Wilmington*, 614 F. Supp. 2d 508, 510-11 (D. Del. 2009).   The Court also may not award additional damages without violating Waydoo's Seventh Amendment right to have a jury decide damages.   Waydoo's right to a jury trial covers any request for damages in a patent-infringement action.   *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996) ("[Patent] infringement cases today must be tried to a jury . . . ."); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476 (1962) (recognizing a Seventh Amendment right to a jury trial in a trademark-infringement suit because the trademark holder sought monetary damages); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352-53 (1998) (stating "the 'general rule' that monetary relief is legal"; "It has long been recognized that

– 9 –

by the law the jury are judges of the damages."); *see also eBay*, 547 U.S. at 391 (distinguishing injunctive relief from "remedies available at law, such as monetary damages").  MHL acknowledges that "an ongoing royalty is not automatic."[2]  D.I. 235 at 10.

MHL did not present evidence on, or even ask the jury to decide, damages for the remainder of the Asserted Patents' term.  MHL's proposed verdict form sought damages only "Through [Date of Last Sale in Evidence]," i.e., a date that could not have been later than the verdict.  D.I. 175 at 11 (bracketed language original).  The final verdict form likewise only asked the jury to award a royalty "Through December 31, 2022."  D.I. 220 at 4.  Now, for the first-time, MHL asks the Court to award additional damages that it did not seek from the jury.  The Court should first deny this request because MHL waived ongoing damages by failing to present its complete damages theory to the jury.  *See Inter Med. Supplies*, 181 F.3d at 463; *Babby*, 614 F. Supp. 2d at 510-11.

The Court should also deny MHL's request because an award for an ongoing royalty would require improper additional fact finding that "no jury has ever passed upon either explicitly or by implication."  *Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935).  The Patents expire in October 2034, more than a decade from now.  *See* D.I. 235 at 10.  The jury made no explicit fact finding (because it was not asked to), and nothing the jury did decide implies or suggests, that its royalty rate would be appropriate for that long.  Market conditions undoubtedly will change over the next decade in ways that would be relevant and material to a determination of an ongoing royalty, especially given how new and dynamic the eFoil market is.  The first commercial eFoil was sold in 2017 and delivered in 2018, only five years ago.  Tr. 219:7-16

---

[2] While MHL acknowledges that it is not entitled to an ongoing royalty even if the Court denies a permanent injunction, the *Telcordia* case that MHL cites does not address the Seventh Amendment issues raised by Waydoo.  D.I. 235 at 10 (citing *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010)).

(Leason).  MHL also admits that it expanded its product lineup over the years to include lower-priced eFoils.  Tr. 332:7-13 (Wagner) ("For our top end product, $12,000 has been consistent [since 2018]."), 354:6 (explaining that MHL now "ha[s] a board that starts at $8,995").  And new participants are entering the eFoil market almost every year.  MHL just sued a company called GetFoil because it started selling eFoils before September 2019.  Ex. 1, Compl. ¶ 11, *MHL Custom, Inc. v. Foil Boarding Co., Inc.*, Case No. 22-21258 (N.D. Fla. Oct. 21, 2022).  Looking forward, MHL also just licensed the Asserted Patents to a company called MSLR, who is expected to begin selling eFoils in the U.S. in 2023.  Ex. 2, MHL_0105166-176 (MSLR).  And a company called Sea-Doo is expecting to sell an eFoil starting next summer.  Ex. 3 at 1 ("Sea-Doo is . . . entering the world of electric hydrofoil boards (efoil)"; "Available Summer 2024").  For those reasons, the Court should deny MHL's motion for ongoing damages.

MHL was also required to submit its request for supplemental damages to the jury.  MHL's failure to do so gives rise to the same waiver and Seventh Amendment problems set out above for ongoing damages.  Thus, the Court should also deny MHL's motion for supplemental damages.  *But see Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 985-87 (Fed. Cir. 2021).

### C.    MHL Is Not Entitled to Its Requested Pre- & Post-Judgment Interest

In certain cases, "it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit."  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).  MHL concluded that Waydoo infringed the Patents by January 2019, but waited until January 2021 to file suit.  Tr. 347:10-15 (Wagner).  MHL has not even attempted to justify this delay, and should not be rewarded for sitting on its hands with pre-judgment interest all the way back to 2019.  D.I. 235 at 10-11.  During MHL's hand-sitting period, Waydoo had a substantial number of sales that went into the jury's damage award.  D.I. 85-1, Ex. 14 Schs. 2.1, 2.7 (Kline Report).  "[MHL's]

two year delay in initiating the present suit caused the damages owed by [Waydoo] to escalate." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001). Waydoo also disputes the damages amount on which pre- and post-judgment interest would be calculated. As explained in Waydoo's JMOL motion, the verdict is against the clear weight of the evidence because MHL did not account for litigation threats and did not apportion damages, and because the Fliteboard Agreement is not economically comparable to MHL's proposed hypothetical negotiation. D.I. 236 at 18-20. Damages should not exceed the highest amount proven at trial (2.5% of sales). *Id.* Accordingly, MHL's requested interest should be denied.

### D.     MHL Is Not Entitled to Enhanced Damages

The "party seeking enhanced damages under § 284 bears the burden of proof by a preponderance of the evidence." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339 (Fed. Cir. 2016). It is within the Court's discretion whether to award enhanced damages. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104 (2016). Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 104. "Although willfulness is a component of enhancement, an award of enhanced damages does not necessarily flow from a willfulness finding." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021); *see also Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) ("[A] finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages.").

"The paramount determination in deciding to grant enhancement damages for patent infringement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read*, 970 F.2d at 826. Consistent with that principle, courts generally consider the so-called *Read* factors: "(1) whether the infringer deliberately copied the

– 12 –

ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct." *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (quoting *Read*, 970 F.2d at 826-27).

### 1.    There Is No Evidence Waydoo Copied Anyone

MHL's expert admitted that he "ha[s] no knowledge of" whether Waydoo "actually went out and copied [MHL's products], or whether they figured it out from scratch by themselves." D.I. 85-1, Ex. 6, Barry Dep. 369:22-25.   Without any evidence of copying, MHL argues that "seven short months" is not enough time to develop a commercial eFoil.   D.I. 235 at 13.   But MHL presents no evidence that seven months is not enough to develop a commercial eFoil. Rather than provide evidence concerning relative product-development times between the U.S. and China—or any other relevant evidence—MHL resorts to insinuation and "coincidence."[3]

There is not even evidence of when Waydoo first learned of MHL's Lift product.   In reality, the evidence shows that in 2017 or 2018, Waydoo learned of the Evolo Report.   Ex. 4, Tao Dep. 74:24-75:23.   Then in January 2019, Waydoo exhibited its first-generation product at the Consumer Electronics Show (CES) in Las Vegas.   Tr. 683:20-23 (Ping).   It was in August 2019, only after Waydoo launched its eFoil, that it learned of the Patents and MHL's infringement allegations.[4]   Tr. 532:15-19, 542:13-19 (Ping).

---

[3] This is MHL's second substantive argument that boils down to: "This cannot be a coincidence." D.I. 235 at 13.   The other concerned the Evolo Report's public accessibility.   *See* D.I. 236 at 6.

[4] MHL incorrectly states that Waydoo "admittedly knew about the asserted patents since . . .

Moreover, Waydoo's current-generation product, "which made up the majority of the infringing sales at issue in this case" is visually different than MHL's products. *See Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1357, 1364 (N.D. Ga. 2018). For instance, the Flyer ONE's motor housing is integrated with its wing assembly, whereas in MHL's eFoils they remain separate. *Compare* PTX233 (Waydoo), *with* PTX167 at 08 (Lift).

### 2.     Waydoo Had A Good Faith Belief That the Patents Were Invalid

MHL's argument that there was no evidence that Waydoo was "even aware of [its] defenses until the litigation began," or that Waydoo "legitimately harbored a good faith belief that the asserted patents were invalid or that they did not infringe," attempts to flip the burden on enhanced damages and ignores the testimony of Waydoo's witnesses. D.I. 235 at 14. As previously mentioned, Waydoo learned of the Evolo Report in 2017 or 2018. Ex. 4, Tao Dep. 74:24-75:23. When asked what actions Waydoo took after learning of the Asserted Patents, Waydoo's witness responded that it concluded that the Asserted Patents were invalid in light of the Evolo. *Id.* 86:12-17 (Q: "Did the founder take any action with respect to the design of Waydoo's eFoil products when he became aware of the patent here?" A: "But we have seen first the report and then video of Evolo, so we don't think this patent issue is valid.").

### 3.     Waydoo's Litigation Conduct Was Reasonable

MHL argues that Waydoo's non-infringement arguments "could be considered weak at best and borderline frivolous at worst" because Waydoo "presented nothing to rebut" MHL's infringement evidence. D.I. 235 at 14. But Waydoo had no obligation to present evidence of non-infringement—"it is axiomatic that the *patentee* bears the burden of proving infringement." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000).

Even setting aside the burden, Waydoo's non-infringement arguments were far from

August of 2018," citing the testimony of MHL's president, Steward Wagner. D.I. 235 at 17.

frivolous.   What MHL calls "admissions" that Waydoo's eFoils are stable or weight-shift controlled are no such thing.   D.I. 235 at 15 n.9 (citing Tr. 710:25-711:14 (Wade), 255:14-256:8 (Tao), 211:24-212:16 (Leason)); D.I. 235 at 15 n.10 (citing Tr. 710:12-24 (Wade), 249:9-253:15 (Tao)).   Mr. Wade and Mr. Tao are non-experts and were not testifying under the Court's construction of "stability" or under the plain-and-ordinary meaning of "weight-shift controlled." *See* Tr. 239:24-240:6 (the Court stating that it interpreted lay witnesses as using "stable in the common sort of sense that one might use the word, not that he was opining on stability as defined by . . . aeronautical tests").   And it goes without saying that nothing Mr. Leason had to say could be considered an admission by Waydoo.

Further, it was never "abundantly clear" that Waydoo infringed here.   For instance, MHL's own expert testified that MHL's only empirical evidence of dynamic stability showed Waydoo's products to be unstable.   D.I. 236 at 15-16.   Not to mention that the Court denied MHL's motion for summary judgment of infringement (D.I 153 §§ III.B, III.D) and denied its JMOL motion of infringement (Tr. 1063:5-1066:12).   Just because the jury found that Waydoo infringed does not mean that Waydoo should have conceded infringement before trial.   *See First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*, 2023 WL 2428837, at *3 (D. Del. Mar. 9, 2023) (denying an exceptional-case motion; "That the jury did not find [an expert's] testimony sufficient to prove infringement does not show that Plaintiff should have conceded non-infringement before trial.").

MHL also criticizes Waydoo for using videos at trial.   *See* D.I. 235 at 15 n.11.   But it was MHL that insisted on using videos.   Waydoo consistently argued against their use because they lacked probative value.   D.I. 83 § IV.A.2.; D.I. 167; D.I. 208, Tr. 34:7-11 ("[Wadyoo] has made it pretty clear that they don't want the videos in the case.").   Moreover, MHL continues to

– 15 –

misunderstand how Waydoo used videos at trial.  *See* D.I. 235 at 15 n.11.  One point of Waydoo using videos, including DTX309, was to expose Mr. Barry's theory about positively determining stability from a YouTube video as bunk—not even Mr. Barry considers it scientific.  *See* D.I. 236 at 14-15.  A second point was to show that a video of someone learning to ride a Waydoo eFoil was indistinguishable from a video of someone learning to ride the Evolo prototype.  Again, just because the jury found against Waydoo does not support an exceptional-case finding.  *See First Quality Tissue*, 2023 WL 2428837, at *3.

MHL also argues that Waydoo was wrong even to have "advanced trial positions fighting the claim element[] of . . . weight-shift control."[5]   D.I. 235 at 15.  Waydoo required MHL to prove weight-shift control at trial because testimony on infringement would be highly relevant to invalidity—as Waydoo explained to MHL while drafting the pre-trial order.  As it turned out, Mr. Barry's trial testimony on infringement was not just relevant to invalidity, but resulted in an outright admission that the Evolo Report discloses weight-shift control.  Tr. 498:18-20 (Barry on infringement) (Q: "So, does weight-shift control mean the same thing as no movable components or steering systems?"  A: "Yes, it does."); Tr. 969:4-971:19 (Barry on invalidity) (Q: "And then you have to agree that . . . the Evolo Report also discloses that it is weight-shift controlled; do you agree?"  A: "Yes.  It's weight-shift controlled.").  Mr. Barry's admission came after 10 months of MHL denying that the Evolo was weight-shift controlled.  *E.g.*, D.I. 212 § IV.B; D.I. 85-1, Ex. 4 ¶¶ 99-100 (Barry Rebuttal).  Waydoo would not have gotten that admission if it had simply conceded infringement of the weight-shift-control element.

MHL's accusation of misconduct because of disputed claim elements is ironic given its

---

[5] MHL criticizes Waydoo for "refusing to forego any of their defenses pretrial."  D.I. 235 at 15.  Notwithstanding that Waydoo actually did forgo some of its defenses, MHL continued to assert 30 patent claims until the Court ordered it to drop all but 8.  D.I. 208, Tr. 13:6-16:13.

own conduct.  MHL again argued for 10 months that the Evolo Report lacked a "motor speed controller."  Ex. 5, MHL's Resp. to Interrog. No. 12 (June 23, 2022).  MHL even moved for summary judgment of no invalidity based on that argument.  D.I. 80, § IV.B.3.f.iii.  But at trial, Mr. Barry admitted that the Evolo Report actually does disclose a motor speed controller. Tr. 990:6-993:20 (Barry).  All Waydoo did to elicit this admission was show Mr. Barry two pages from the Evolo Report—the same two pages that Dr. Triantafyllou had already brought to his attention.  Tr. 991:23-993:20 (Barry) (discussing Evolo Report (DTX325 at 496)); D.I. 85-1, Ex. 9 ¶¶ 89-91 (Triantafyllou Reply) (citing Evolo Report at 495-99).  Incredibly, all Mr. Barry had to say for himself was "I stand corrected, sir."  Tr. 993:13-20 (Barry).

MHL's criticisms of Waydoo's other arguments fare no better.  MHL admitted that either *Woolley* or *Namanny* disclose almost every claim element of the asserted claims.  *See* D.I. 212 § IV.B.  Thus, what remained was for Waydoo to show that a POSA would have been motivated to combine the two references with a reasonable likelihood of success.  Even MHL's own patentee, Fliteboard, recognizes that improvements in battery technology allowed eFoils to develop.[6]  Ex. 6 at 6 ("2016"; "Electric motors and batteries had developed to the point that the propulsion system could be light and powerful enough to . . . provide enough speed to lift the board.").  As for enablement, MHL still fails to understand the legal standards for enablement and the significance of the relevant trial testimony.  *See* D.I. 236 § III.B.

Lastly, MHL argues that "Defendants' overall strategy in this case can be best characterized as an *ad hoc*, shotgun style, concede nothing, take no prisoners style of defense." D.I. 235 at 15.  But that accusation is insincere, at best, and was plainly not written about Waydoo's actions in this case.  It seems to be MHL's counsel's boilerplate way of characterizing

---

[6] Incidentally, Fliteboard also recognizes that the Evolo was the world's first eFoil.  Ex. 6 at 6.

opponents in every case—they levied that exact, word-for-word accusation as recently as four months ago.  Ex. 7, Pl.'s Mot. for Enhanced Dmgs at 9, *Sioux Steel Co. v. Prairie Land Millwright Servs., Inc.*, Case No. 16-02212 (N.D. Ill. Feb. 10, 2023), ECF No. 572-1 ("Defendants' overall strategy in this case can be best characterized as an *ad hoc*, shotgun style, concede nothing, take no prisoners style of defense.").  That case involved different parties, different (opposing) lawyers, different patents, and different products.  In truth, there was nothing wrongful about Waydoo's conduct, and this element favors denying MHL's request.

### 4. Waydoo's Financial Condition Does Not Justify Enhancement

MHL argues that courts compare a jury's damages award to the "total profits from" infringing products.  D.I. 235 at 16.  Yet MHL compares the jury award to Waydoo's revenues, ***not profits***.  Waydoo's U.S. revenue from 2019 to July 2022 was roughly ██████ while its operating profit for that period was roughly ██████ D.I. 85-1, Ex. 14, Schs. 1.5, 2.1 (Kline Report).  The damages award ($1.334M) already exceeds Waydoo's lifetime operating profits.  Looking forward, the award also exceeds Waydoo's profit at the unit level.  *Compare* D.I. 222 ($500 per unit), *with* D.I. 85-1, Ex. 14, Sch. 1.5 (██ operating profit per unit).  Tripling the jury's damages award, as MHL is requesting, would no doubt "jeopardize [Waydoo's] financial well-being."  *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 528 (D. Del. 2008).

MHL also speculates about Waydoo's investors, DJI and "Chinese government investors," but does not meaningfully tie them to ***Waydoo***'s size and financial condition in a way that is relevant to enhanced damages.  For example, MHL cites a news article to speculate about DJI's business.  *See* D.I. 235 at 17 n.13 (quoting D.I. 235-5).  The article states that DJI has "more than 70% market share" in a "$3 billion" market, but attributes those figures to lawyers for one of DJI's litigation opponents, not DJI or any other reliable source.

### 5.      This Case Was Closer Than MHL Wants to Believe

MHL confuses success in front of a jury with closeness of the case.  While the jury found for MHL on each issue presented to it, the case was not as "lopsided" as MHL wants it to be.  D.I. 235 at 17.   MHL seems to have forgotten that Waydoo invalidated one-third of its independent claims during summary judgment.  D.I. 153 § III.C.  MHL also seems to forget that the Court denied each of MHL's summary judgment motions (including on infringement and invalidity) (D.I 153 at §§ III.B, III.D), and denied each of MHL's JMOL motions (Tr. 1063:5-1066:12).  In the lead up to trial, MHL also admitted that Waydoo's anticipatory reference (the Evolo Report) and its obviousness references (*Woolley* and *Namanny*) disclosed all but a handful of claim elements.  D.I. 212 § IV.B.  MHL leans on the jury's finding of willfulness, which it calls "most notabl[e]."  D.I. 235 at 17.  However, the Court remarked that MHL's willfulness case was "relatively thin."  Tr. 890:13-16 (the Court).

### 6.      Waydoo Did Not Conceal Its Conduct

Absent from MHL's brief is any suggestion that Waydoo attempted to conceal its infringing conduct.  *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 391 (E.D. Tex. 2009) (declining to enhance damages partly because "[t]here was no evidence that [defendants] ever attempted to conceal its infringement from [plaintiff]").  As MHL admits, Waydoo operated out in the open.  MHL first learned of Waydoo from its "marketing campaign to the public," and because Waydoo "also brought a board to the [Consumer Electronics Show], which is a big electronics expo in Las Vegas."  Tr. 212:14-20 (Leason); *see also* D.I. 235 at 13 (noting Waydoo introduced the first accused product "at the January, 2019 CES show in Las Vegas.").  Instead of relevant conduct, MHL fixates on a meaningless and newly manufactured discovery dispute about "testing report[s]."  D.I. 235 at 18-19.  MHL does not allege any harm from the supposed lack of testing reports, nor could it.   These reports are seemingly

immaterial—MHL did not even try to show the jury the testing report it had and Waydoo's other documents proved sufficient for MHL to prevail at trial on infringement.

### E.     MHL Is Not Entitled to Its Attorneys' Fees

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  Courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*  A movant must establish its entitlement to attorneys' fees by a preponderance of the evidence. *Id.* at 557-58.  One "important" consideration is whether the party seeking fees "provide[d] early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior." *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019).

MHL does not make a serious argument that this case is exceptional, arguing instead that the outcome "speaks for itself."  D.I. 235 at 20.  Here again, the fact that Waydoo did not prevail at trial "is insufficient by itself to warrant an award of fees." *Sun Pharm. Indus. Ltd. v. Saptalis Pharms., LLC*, 2020 WL 5077412, at *2 (D. Del. Aug. 26, 2020).  Attorneys' fees are not "a penalty for failure to win," but are appropriate only "in extraordinary circumstances." *Octane Fitness*, 572 U.S. at 548.  MHL then reiterates its enhanced-damages arguments in summary form (D.I. 235 at 20), which Waydoo addresses above.  MHL also did not provide any notice of exceptional litigation behavior because it was never subjected to such behavior.

OF COUNSEL:

Edgar H. Haug (*pro hac vice*)
Robert E. Colletti (*pro hac vice*)
Jason Kanter (*pro hac vice*)
Mark Basanta (*pro hac vice*)
Patrick Lavery (*pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, New York 10151
(212) 588-0800

Dated:  June 7, 2023

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Dorronda R. Bordley (#6642)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
farnan@rlf.com
bordley@rlf.com

*Attorneys for Defendant Waydoo USA, Inc.
and Defendant/Counter Plaintiff Shenzhen
Waydoo Intelligence Technology Co., Ltd.*

– 21 –

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2023, true and correct copies of the foregoing document

were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
Blake A. Bennett
Andrew Ralli
Cooch and Taylor, P.A.
The Nemours Building
1007 N. Orange Street
Suite 1120
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Dennis D. Murrell
Robert J. Theuerkauf
Brian P. McGraw
Megan E. Gibson
Gray Ice Higdon, PLCC
4600 Shelbyville Road #8022
Louisville, KY 40257

**BY ELECTRONIC MAIL**
Joseph S. Naylor
Swartz Campbell LLC
300 Delaware Avenue, Suite 1410
P.O. Box 330
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Rudolph A. Telscher, Jr.
Daisy Manning
Kara Renee Fussner
Husch Blackwell LLP
190 Carondelet Plaza
St. Louis, MO 63105

Dustin L. Taylor
Husch Blackwell LLP
1801 Wewatta Street, Suite 1000
Denver, CO  80202

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)