## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MHL CUSTOM, INC.,

               Plaintiff,

      v.

WAYDOO USA, INC. and SHENZHEN
WAYDOO INTELLIGENCE
TECHNOLOGY CO., LTD.,

               Defendants.

Civil Action No. 21-0091-RGA

## MEMORANDUM OPINION

Blake A. Bennett, COOCH AND TAYLOR, P.A., Wilmington, DE; Dennis D. Murrell, Robert J. Theuerkauf, Brian P. McGraw, Megan E. Gibson, MIDDLETON REUTLINGER, Louisville, KY.

      Attorneys for Plaintiff.


Kelly E. Farnan, Dorronda R. Bordley, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Edgar H. Haug, Robert E. Colletti, Mark Basanta, Roman Khasidov, HAUG PARTNERS LLP, New York, NY.

      Attorneys for Defendants.



September 6, 2023



**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me are Defendants Waydoo USA's and Shenzhen Waydoo Intelligence Technology's (collectively, "Waydoo") post-trial motions.

Waydoo moves for renewed judgment as a matter of law on a variety of issues. (D.I. 234). In the alternative, Waydoo moves for a new trial.[1] (*Id.*). The motions have been fully briefed. (D.I. 236, 245, 252).

## I.     BACKGROUND

Plaintiff MHL Custom ("MHL") filed suit against Waydoo alleging infringement of U.S. Patent Nos. 9,359,044 (the "'044 patent") and 9,586,659 (the "'659 patent") (collectively, the "Asserted Patents"). (D.I. 1). The Asserted Patents relate to a weight-shift controlled personal hydrofoil watercraft (often referred to as an eFoil). The Asserted Patents share a common specification.

I held a jury trial from March 24-31, 2023, on claims 1-2, 5, and 6 of the '044 patent and claims 1-2 of the '659 patent. The jury found the asserted claims to be valid and infringed, the infringement was willful, and MHL was entitled to a reasonable royalty of $500 per board sold by Waydoo (totaling $1,334,000 in damages). (D.I. 219). The parties have now filed post-trial motions.[2]

Waydoo seeks renewed judgment as a matter of law, or in the alternative, a new trial, on (1) whether the Evolo Report (a potential prior art reference) was publicly accessible; (2) whether the Evolo Report is enabled; (3) whether the Asserted Patents are enabled; (4) whether Waydoo

---

[1] Waydoo does not make any arguments in favor of its new trial motion. Instead, it simply has a perfunctory sentence that it includes at the end of the JMOL arguments. In my view, it has forfeited its new trial arguments.

[2] MHL's post-trial motions (D.I. 230-233) are addressed in a separate opinion.

infringed the '659 patent; (5) whether Waydoo's infringement of the Asserted Patents was willful; and (6) whether the jury's award of damages is supported by the evidence. (D.I. 236 at 1-2). I address each issue in turn. I note that Waydoo does not challenge the correctness of any of the jury instructions.

## II.   LEGAL STANDARD

### A. Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. FED. R. CIV. P. 50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

"To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied by the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (cleaned up). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir.

1991). The Court "must not determine credibility of witnesses, and must not substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin-Elmer*, 732 F.2d at 893. Rather, the Court must determine whether the evidence supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2524 (3rd ed. 2008) ("The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the moving party bears the burden of proof, the Third Circuit applies a different standard. This standard "'requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect.'" *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959)). The Court "'must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.'" *Id.* at 1171 (quoting *Mihalchak*, 266 F.2d at 877).

### B. Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party—... after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court...." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict

4

was facially inconsistent. *See Zarow–Smith v. New Jersey Transit Rail Operations, Inc.*, 953 F.

Supp. 581, 584–85 (D.N.J.1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district

court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v.

Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir.1993) (reviewing district court's grant or denial

of new trial motion under the "abuse of discretion" standard). Although the standard for granting

a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the

Court need not view the evidence in the light most favorable to the verdict winner—a new trial

should only be granted where "a miscarriage of justice would result if the verdict were to stand,"

the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience."

*Williamson*, 926 F.2d at 1352–53.

## III.    DISCUSSION

One of the significant issues at trial and now at JMOL was whether the "Evolo Report"

anticipated the asserted patent claims.  The jury did not reach the merits of the anticipation issue

because it found that the Evolo Report was not publicly accessible and that it was not enabled.

(D.I. 219 at 2). Each finding alone is sufficient to support the verdict. Waydoo challenges both of

these findings. In order to obtain any relief, Waydoo must be successful on both challenges.  I

address the two findings separately.

### A.  Public Accessibility of The Evolo Report

#### 1.  Legal Standard

"Whether a reference qualifies as a 'printed publication' under § 102(b) is a legal

conclusion based on underlying factual findings." *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, 895

F.3d 1347, 1356 (Fed. Cir. 2018). "A reference is considered publicly accessible if it was

disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it." *Acceleration Bay, LLC v. Activision Blizzard Inc.,* 908 F.3d 765, 772 (Fed. Cir. 2018) (citation and internal quotation marks omitted). "The test for public accessibility is not 'has the reference been indexed,'" *id.* at 774, and "'public accessibility' requires more than technical accessibility," *id.* at 773. The patent challenger bears the burden of establishing that a particular document is a printed publication by clear and convincing evidence. *See Medtronic, Inc. v. Barry*, 891 F.3d 1368, 1380 (Fed. Cir. 2018); *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007) ("Since we must presume a patent valid, the patent challenger bears the burden of proving the factual elements of invalidity by clear and convincing evidence.").

### 2. Analysis

The Evolo Report is a document detailing the capstone project of a group of engineering students in Sweden. (D.I. 242 at 783:13-19 (Triantafyllou); *see also* D.I. 243 at 968:21-24 (Barry)). The students' capstone project was essentially "to create a vehicle which looks like an eFoil." (D.I. 242 at 783:15-16 (Triantafyllou)).

At trial, Waydoo argued the Evolo Report was a printed publication that anticipated the Asserted Patents. The priority date of the Asserted Patents is October 10, 2013. (D.I. 212 at 8). The jury found the Evolo Report was not publicly accessible. (D.I. 219 at 2).

Waydoo argues that it is entitled to judgment as a matter of law, or a new trial, because it presented unchallenged evidence that the Evolo Report was publicly accessible. (D.I. 236 at 4). Waydoo cites Mr. Lanterman's testimony that the Evolo Report was posted on the Evolo project webpage of Prof. Kuttenkeuler's course website in June 2009. (*Id.* (citing D.I. 242 at 724:23-725:4 (Lanterman))). Waydoo contends that the record shows there was "successful activity" on the

course website almost every day from November 2011 to October 2013 (*id.* (citing DTX068A; D.I. 242 at 734:8-16 (Lanterman))), the Evolo project webpage had 120 unique visitors, and 17 unique visitors downloaded the Evolo Report from the webpage (*id.* (citing (DTX068A; D.I. 242 at 734:22-735:9 (Lanterman)). Mr. Lanterman further testified that Google crawled and indexed the Evolo Report in January 2010. (*Id.* (citing D.I. 242 at 725:4-726:6 (Lanterman))).

In addition to accessing the Evolo Report through Google, Waydoo argues the Evolo Report was publicly accessible through the August 2009 issue of the Swedish magazine "Båtnytt" ("Boat News"). An article in that issue featured a link to the Evolo project webpage. (*Id.* at 4).

In short, Waydoo argues the Evolo Report was publicly accessible through two avenues: Google Search and the Boat News article.

MHL concedes the evidence shows the "Evolo Report existed online and may have been downloaded by 17 different people prior to the critical date." (D.I. 245 at 5). MHL, however, contends that "online availability, standing alone, is not enough to demonstrate public accessibility." (*Id.*). MHL argues it was reasonable for the jury to conclude that Waydoo failed to meet its burden to show the Evolo Report was not publicly accessible because Waydoo did not (1) present evidence that anyone accessed the Evolo Report through the Boat News article or (2) show how an interested person could find the Evolo Report through a Google Search. (*Id.* at 7).

I agree with MHL that a reasonable jury could conclude that Waydoo did not meet its heavy evidentiary burden to show the Evolo Report was publicly accessible. Waydoo's evidence establishes that the Evolo Report was technically accessible. MHL concedes that. But "'public accessibility' requires more than technical accessibility." *Acceleration Bay*, 908 F.3d at 773. I find there is sufficient evidence for a reasonable jury to conclude that the Evolo Report was not publicly

accessible, despite being technically accessible, and that Waydoo has not shown that there is "insufficient evidence for permitting any" finding other than public accessibility.

First, the Boat News article may have provided an adequate roadmap for an interested party to arrive at the Evolo Report by linking to the Evolo project page. *See Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1350 (Fed. Cir. 2016) ("An adequate roadmap need not give turn-by-turn directions, but should at least provide enough details from which we can determine that an interested party is reasonably certain to arrive at the destination: the potentially invalidating reference."). What is lacking in Waydoo's argument is evidence to establish that an interested party would be able to find or locate the Boat News magazine. Waydoo has not pointed to any evidence regarding whether Boat News, a Swedish boating magazine, is a publication that the "interested public" would have access to, have been aware of, or have been able to locate. *Cf. Voter Verified, Inc. v. Premier Election Sols., Inc.*, 698 F.3d 1374, 1380 (Fed. Cir. 2012) (finding article was publicly accessible when it was posted on a website that was "was well known to the community" interested in that subject matter); *Cornell Univ. v. Hewlett-Packard Co.*, 2008 WL 11274580 at *6 (N.D.N.Y. May 14, 2008) (finding an article in a "seminal publication" to be a "research aid" for locating a prior art reference). Therefore, I think a reasonable jury could conclude that Waydoo did not meet its burden in showing that the Evolo Report was publicly accessible through the Boat News article. Likewise, I do not think there is such "overwhelming effect" to disturb the jury's decision. *Fireman's Fund*, 540 F.2d at 1177.

Second, I think a reasonable jury could conclude that Waydoo did not meet its burden to prove that the Evolo Report was publicly accessible through Google Search. The Federal Circuit has cautioned that indexing, by itself, is not sufficient to prove public accessibility. *Acceleration Bay, LLC*, 908 F.3d at 774 ("We have explained that where indexing is concerned, whether online

or in tangible media, the ultimate question is whether the reference was available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it." (citation and internal quotation marks omitted)). Mr. Lanterman testified that the Evolo Report was accessible, but his testimony pertained to technical accessibility (i.e., Google confirmed the link was active, crawled, and indexed). (D.I. 242 at 746:12-24 (Lanterman)). While Mr. Lanterman testified that an interested person could have found the Evolo Report through Google (*id.* at 745:7-11), he also testified that he did not perform a Google search to locate the Evolo Report (*id.* at 743:9-13) and that he did not know what a sufficient Google search would have been to locate the Evolo Report (*id.* at 727:18-23, 743:6-8, 743:14-745:11). I think a reasonable jury could conclude from Mr. Lanterman's testimony that the report was only technically accessible, and not publicly accessible such that "persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence," could locate the Evolo Report through Google.

Third, Waydoo contends that it should prevail because the evidence it provided "is uncontradicted and unimpeached," and "MHL did not present any evidence that would permit a different finding." (D.I. 236 at 6-7). I disagree. As the patent challenger, it was Waydoo's burden to prove by clear and convincing evidence that the Evolo Report was publicly accessible. *See Medtronic*, 891 F.3d at 1380; *Pfizer*, 480 F.3d at 1359. As already discussed, I think a reasonable jury could determine that Waydoo failed to meet its burden.

Therefore, I will deny Waydoo's JMOL motion as it pertains to the public accessibility of the Evolo Report. For the same reasons, I find that the jury's finding that the Evolo Report was not publicly accessible is not against the clear weight of the evidence. Therefore, Waydoo's motion for a new trial on this issue is denied.

9

### B. Enablement

#### 1. Legal Standard

A patent's "specification must enable the full scope of the invention as defined by its claims." *Amgen Inc. v. Sanofi*, 143 S. Ct. 1243, 1254 (2023). For a patent claim to be enabled, the patent specification must "contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same[.]" 35 U.S.C. § 112(a). "The enablement requirement is met where one skilled in the art, having read the specification, could practice the invention without 'undue experimentation.'" *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012) (citation omitted); *see also Amgen*, 143 S. Ct. at 1255 ("[A] specification may call for a reasonable amount of experimentation to make and use a patented invention. What is reasonable in any case will depend on the nature of the invention and the underlying art."). Factors for assessing whether a disclosure would require undue experimentation include:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

"Enablement is a question of law based on underlying facts." *Wyeth & Cordis Corp. v. Abbott Lab'ys*, 720 F.3d 1380, 1384 (Fed. Cir. 2013). The party challenging validity must prove lack of enablement by clear and convincing evidence. *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013).

## 2. Analysis

### i. Enablement of Evolo Report

At trial, the jury found that the Evolo Report is not enabled. (D.I. 219). "I presume a prior art printed publication is enabling." *Lambda Optical Sols. LLC v. Alcatel Lucent USA Inc.*, 2015 WL 5734427, at *1 (D. Del. Sept. 30, 2015) (citing *Robocast, Inc. v. Apple, Inc.*, 39 F. Supp. 3d 552, 565 (D. Del. 2014)). It is therefore the patentee's initial burden to show that a prior art reference is not enabled, but, if the patentee presents some evidence of enablement, "the burden still rests on the party asserting invalidity to ultimately demonstrate by clear and convincing evidence that the prior art is enabled." *Robocast*, 39 F. Supp. 3d 552, 566 (D. Del. 2014) (quoting *Forest Labs., Inc. v. Ivax Pharm., Inc.*, 438 F.Supp.2d 479, 487 n. 3 (D. Del. 2006), *aff'd*, 501 F.3d 1263 (Fed. Cir. 2007) (internal citations omitted)).

Waydoo argues that it is MHL's burden to prove that the Evolo Report is not enabled.  (D.I. 236 at 7 (citing *Apple Inc. v. Corephotonics, Ltd.*, 861 F. App'x 443, 449 (Fed. Cir. 2021))). I do not think shifting the evidentiary burden back to Waydoo after MHL presents some evidence of non-enablement is contrary to *Corephotonics*. *See Corephotonics*, 861 F. App'x at 450 (finding [the PTAB] erred when it refused to consider evidence Apple introduced in support of enablement of a printed publication after Corephotonics raised the issue of non-enablement); *see also id.* at 449 ("[T]he [PTAB] shifted the burden to Apple to provide evidence before institution (i.e., in its petition) that [a patent publication] was enabling as part of its burden to prove anticipation. This was error.").[3]

---

[3] Even if the evidentiary burden to prove a prior art reference is non-enabled ultimately lies with MHL, it would not alter my analysis because I find there is substantial evidence to support the jury's finding that the Evolo Report is not enabled.

Waydoo contends that Mr. Barry's opinions about enablement were about the Evolo prototypes, not the final Evolo Report. (D.I. 236 at 8). Waydoo explains that none of the Evolo prototypes reflect the "final" product of the Evolo Report because the last prototype built used a motor that did not have the requisite power. (*Id.* at 9). Waydoo contends the final prototype is not representative of the Evolo Report's full disclosure because the final prototype used a 2 kW motor, but the Evolo Report indicated that a more powerful 4 kW motor was required. (*See* D.I. 243 at 1011:12-1012:21). The Evolo Report discussed using a larger motor to meet the requirements for power and speed. (*Id.* at 1012:16-23 (Barry)). Waydoo argues the Evolo Report's instruction to use a 4 kW motor would render the Report enabled as the larger motor is necessary to achieve stability.

Waydoo further argues that the Evolo Report must be enabled because textbooks from the 1960's teach the same information about stability that is disclosed in the patent specification. (*Id.* at 11). Waydoo contends that "if the [Asserted] Patent's disclosure enables a POSA to make a stable eFoil, the same prior art disclosures enable the Evolo Report too." (D.I. 252 at 4).

Waydoo argues that Mr. Barry put forth an invalid "inherency" argument based on the Evolo hydrofoils being flat plates. (D.I. 236 at 10-11). Mr. Barry testified that the Evolo hydrofoils could not achieve stability because they were flat plates. (*See* D.I. 243 at 1041:21-1042:2). Waydoo contends this argument must fail because Mr. Barry contradicted himself and stated that flat plates can achieve stability. (D.I. 236 at 10-11). I take Waydoo to be framing Mr. Barry's testimony as saying the Evolo hydrofoils are inherently unstable because they are flat plates, but, because Mr. Barry contradicted himself, that argument does not support his opinion.

MHL argues there was sufficient evidence for the jury to find the Evolo Report is not enabled. Mr. Barry concluded the Evolo Report is not enabled because the Evolo team "didn't ever

do the calculations required to produce stability . . . they never considered stability in the physical design of the object." (D.I. 245 at 9 (quoting D.I. 243 at 973:3-9)). Mr. Barry concluded that a POSA would read the Evolo Report and understand that an automatic control system was required rather than understand that the watercraft had a passively stable system. (*Id.* (quoting D.I. 243 at 956:18-957:3)). Mr. Barry testified that using a higher-powered motor would not change his opinion that the Evolo Report was not enabled. (*Id.* (quoting D.I. 243 at 1055:9-15)). Mr. Barry also testified that the "delta wing" in the Evolo Report was a flat plat, which would prevent it from achieving stability. (*Id.* at 11).

I think there is substantial evidence to support the jury's finding that the Evolo Report is not enabled.

First, Mr. Barry testified that the Evolo Report was not enabled, independent of the watching the YouTube videos of the different Evolo prototypes. (D.I. 243 at 973:1-13). Therefore, MHL's evidence was about the Evolo Report itself, not just about the Evolo prototypes.

Second, Mr. Barry testified that the Evolo Report's instruction to use a 4 kW motor in the watercraft, as opposed to the 2 kW motor actually used in the final prototype, would not change his opinion that the Evolo Report was not enabled. Waydoo argues the Evolo Report instructed that a 4 kW motor was required and, as a result, would make the Evolo Report enabled. (D.I. 236 at 8). Mr. Barry explained that a more powerful motor would not make the watercraft stable because the watercraft would not reach the requisite speed to achieve stability without crashing first. (D.I. 243 at 1054:25-1055:15).

Third, Mr. Barry expressed that using a flat plate could achieve stability, but it was unlikely to do so. (*Id.* at 973:10-11 ("And, further, the use of the hydrofoil they selected is unlikely to produce stability."), 1041:18-24). I agree with Waydoo that this does not support an argument that

13

the Evolo Report discloses a watercraft that is inherently unstable because the hydrofoils are flat plates. I think, however, the fact that the Evolo Report discloses using flat plates, which may not be conducive to stability (per Mr. Barry's testimony), makes it a relevant aspect for Mr. Barry, and therefore the jury, to consider in the context of the full Evolo Report.

For each of these three points, the jury was entitled to assess the credibility of Mr. Barry and believe him over Waydoo's expert. It is not for me to weigh the credibility of the witnesses.

Fourth, I reject Waydoo's argument that the Evolo Report must be enabled because the Asserted Patents disclose information about stability that existed in textbooks. Mr. Barry testified that the Asserted Patents teach stability at the same level of detail as textbooks from the 1960's. (D.I. 243 at 1037:23-1038:11). Mr. Barry testified that the Evolo Report referred to and cited those textbooks and that the Report's authors therefore "would have had all the information." (*Id.* at 1041:3-9). Waydoo's argument seems to be that the Evolo Report must be enabled because a POSA would, or could, use the information that is disclosed in other prior art references with the Evolo Report. (*See* D.I. 236 at 11).

But the Report's authors having access to other prior art references does not mean the Evolo Report teaches how to apply that information such that the disclosure of the Evolo Report is enabled. Waydoo cites *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008) for support, but that case is distinguishable. In *SRI*, the anticipating prior art reference was found to be enabling because it provided a "similar, or even a partially identical" disclosure to the specification of the patent in that case. *Id.* ("Thus, the 1997 publication with its similarities in technical scope and description to the specification of the '212 patent meets the enabling hurdle for a prior art reference.").

14

I do not think the fact that the Asserted Patents' disclosures about stability existed in textbooks (i.e., other prior art references) means the Evolo Report must be enabled. Even though the patent's information about stability may have been well-known in the art (D.I. 243 at 1038:12-22 (Barry)), and accessible to a POSA, I think the proper focus for determining enablement is how the Evolo Report teaches a POSA to apply those principles. Mr. Barry testified that the Evolo Report does not enable a passively stable eFoil. (*See* D.I. 243 at 998:5-14). Another way of phrasing this is that the Evolo Report applies those well-known principles to achieve an unstable watercraft. I do not think a prior art reference that applies the knowledge of a POSA to achieve a non-enabled embodiment necessarily enables a different, enabled embodiment just because it is possible to apply that same knowledge in a different manner. As such, I think it is reasonable for a jury to determine that the Evolo Report is not enabled because, if they chose to credit Mr. Barry's testimony, there was sufficient evidence to determine that the Evolo Report only teaches one to apply the principles from the textbooks to achieve an unstable watercraft. As such, the jury could conclude that undue experimentation would be required to practice a stable watercraft. Therefore, I do not think the Evolo Report is automatically enabled just because the information disclosed in the Asserted Patents existed in textbooks.

I find a reasonable jury could have considered Mr. Barry's testimony and determined that the Evolo Report is not enabled. Therefore, Waydoo's JMOL motion is denied.

For the same reasons, I find the jury's finding that the Evolo Report is not enabled is not against the clear weight of the evidence. Therefore, Waydoo's motion for a new trial is denied.

### ii.    Enablement of the Asserted Patents

Waydoo advances two arguments for why the Asserted Patents are not enabled. First, Waydoo argues that if the Evolo Report is not enabled, then the Asserted Patents must not be

15

enabled. (D.I. 236 at 11-13).  More specifically, Waydoo contends that the Asserted Patents are not enabled because they fail to disclose key information regarding stability and hydrofoil design that the Evolo Report teaches. (*Id.* at 12 (listing concepts in the Evolo Report such as longitudinal dihedral wing arrangement, location of the center of gravity, and the importance of speed with respect to stability, that are not in the patent specification); *see also* D.I. 242 at 805:2-25 (Dr. Triantafyllou); D.I. 244 at 1149:1-18 (arguing such concepts are disclosed in the Evolo Report) (Waydoo closing)). If the Evolo Report, which discloses more than the Asserted Patents, is not enabled, then, Waydoo argues, it must logically follow that the Asserted Patents are not enabled.

Waydoo appears to contend that the Asserted Patents needed to describe the missing information rather than rely on a POSA to supply it. Waydoo cites *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1284 (Fed. Cir. 2007), for the proposition that "'it is insufficient to merely state that known technologies can be used to 'achieve passive stability." (D.I. 236 at 14 (citing *Auto. Techs.*, 501 F.3d at 1283)).

In *Auto. Techs.*, the Federal Circuit found an electronic side impact sensor was not enabled in part because "side impact sensing was a new field and . . . there were no electronic sensors in existence that would detect side impact crashes." *Auto. Techs.*, 501 F.3d at 1284.

The case here is distinguishable. The Evolo Report may teach additional content not found in the patent specification, but I do not think that is sufficient to find the Asserted Patents not to be enabled. Waydoo does not argue and fails to cite evidence (e.g., expert testimony) that would indicate that the absence of this information in the Asserted Patents would mean undue experimentation is required to practice the invention. (*See* D.I. 236 at 12). In *Auto. Techs.*, the record was far more developed to show that the patent was not enabled because it was missing key information. *See* 501 F.3d at 1284 (noting expert testimony identified two problems in practicing

16

the invention and that a "'great deal of experimentation' would have been necessary to make an electronic side impact sensor after reading the specification"). Such evidence is lacking here.

Second, Waydoo argues that the Asserted Patents do not enable dual-wing crafts and, therefore, do not enable the full scope of the claims.[4] Waydoo reiterates its points that the Asserted Patents do not enable a passively stable watercraft, generally. (D.I. 236 at 12). As already discussed, I reject that argument. Waydoo further argues that the specification does not describe how to arrange or design two hydrofoil wings to achieve stability. (*Id.* at 13). Waydoo contends the specification disparages dual-wing hydrofoils as only being suitable for training purposes. (*Id.* at 13).

I think a reasonable jury could conclude that Waydoo failed to meet its burden to show that the Asserted Patents are not enabled. Waydoo contends the specification lacks guidance in designing or arranging two hydrofoil wings but offers no support that undue experimentation would be required to practice a dual-wing craft. (*See* D.I. 236 at 13). Waydoo contends that the patents are not enabled because they do not contain any experimental data or working examples. (*Id.*). Actual working examples, however, are not required to satisfy the enablement requirement. *Allergan, Inc. v. Sandoz Inc.,* 796 F.3d 1293, 1310 (Fed. Cir. 2015).

I also disagree that the patent disparages dual-wing hydrofoils or that the statements in the specification would prevent a POSA from practicing a dual-wing hydrofoil without undue

---

[4] This is the first time that Waydoo is raising the argument that the claims are not enabled for practicing dual-wing crafts, specifically. At trial, Waydoo moved for judgment as a matter of law for lack of enablement because the patents "teach you nothing new." (D.I. 243 at 1067:14-16). Thus, Waydoo may have forfeited this argument. *See United States v. Dowdell,* 70 F.4th 134, 140 (3d Cir. 2023) ("[A]n example of [forfeiture] is an inadvertent failure to raise an argument." (alteration in original) (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017))). MHL, however, does not object to Waydoo raising this argument now. Because MHL fails to argue the issue is forfeited, MHL has forfeited any forfeiture argument, and I address the issue.

experimentation. The patent indicates that hydrofoils can be designed to have certain tradeoffs (i.e., lower speed, but greater stability). (*See* '044 patent at col. 2:26-35). The specification indicates that designs with greater stability may be better used for training. (*Id.*). The specification indicates that a hydrofoil design that includes a "fixed canard" (i.e., a second wing) increases stability and is "suitable for training." (*Id.* at col. 5:36-37; *see also id.* at col. 5:45-50). The specification does not state that these designs are only suitable for training, or that even being suitable for training is undesirable. The specification is just explaining an advantage of a particular embodiment.

I think a reasonable jury could conclude that Waydoo failed to carry its burden in showing the Asserted Patents are not enabled. Therefore, Waydoo's JMOL motion is denied.

For the same reasons, I find the jury's finding that the Asserted Patents are enabled is not against the clear weight of the evidence. Therefore, Waydoo's motion for a new trial is denied.

### C. Infringement of the '659 Patent

Waydoo contends there is insufficient evidence to show that the Waydoo eFoils are stable. As such, Waydoo argues there is insufficient evidence to show that Waydoo infringed the '659 Patent.[5] Waydoo contends that the only evidence regarding whether Waydoo's eFoils are dynamically stable[6] are Mr. Barry's testimony from watching videos of individuals riding Waydoo's boards and Mr. Barry's eigenvalue analysis. (D.I. 236 at 14-15). Waydoo contends that stability cannot be assessed from watching videos of the eFoils being ridden. Waydoo argues Mr. Barry's determination about stability from the video clips was unscientific for the additional reason

---

[5] I construed the preamble of claim 1 of the '659 patent to be limiting and to require static and dynamic stability. (D.I. 212 at 7). Claim 2 of the '659 patent depends from claim 1.

[6] Waydoo does not argue that its eFoils are not statically stable.

that the clips viewed were shorter than 20 seconds, which was the shortest time frame he indicated was necessary to make a determination about stability. (*Id.* at 15).

Waydoo argues the results from the eigenvalue analysis show Waydoo's eFoils are dynamically unstable as each board has at least one positive sigma value.[7] (D.I. 236 at 15). Waydoo contends that Mr. Barry's "damping" theory to explain why the eFoils are stable, despite the positive sigma values, is unsupported.

MHL contends that Mr. Barry did not rely solely on videos to determine if the Waydoo eFoils were stable. (D.I. 245 at 13). MHL argues that Mr. Barry explained that the eigenvalue analysis was a conservative estimate and that in the real world there would be damping effects that would stabilize the eFoil. (*Id.* at 14 (citing D.I. 241 at 472:20-473:2)).

I find a reasonable jury could have determined the '659 patent was infringed. Mr. Barry testified that the Waydoo eFoils were stable based on watching videos. The jury saw at least some of the same videos. (*See e.g.*, D.I. 241 at 487:11-24 (playing a video Mr. Barry used to "make a positive determination of stability of the Waydoo products")). Waydoo contends that whether a watercraft is stable cannot be evaluated just from watching videos. (D.I. 236 at 14-15). The record shows that watching a video of a watercraft can, at least, give some indication about stability. (D.I. 242 at 840:24-841:11 (Triantafyllou); D.I. 241 at 482:2-5 (Barry)). Therefore, it was reasonable for the jury to consider Mr. Barry's testimony about stability based on the videos of the Waydoo eFoils.

---

[7] As I noted when addressing Waydoo's motion for summary judgment on non-infringement of the '659 patent, "The parties agree that this type of analysis can be used to assess whether a watercraft is dynamically stable." (D.I. 153 at 8 (citing D.I. 83 at 31; and then citing D.I. 91 at 43)). "If an eigenvalue analysis reports a positive 'sigma value,' it indicates that [a watercraft] is unstable." (D.I. 153 at 8 (quoting D.I. 83 at 3)).

The jury did not just have the video evidence and Mr. Barry's testimony about the stability of Waydoo's eFoils. The jury also had Mr. Barry's testimony about the eigenvalue analysis he performed, from which he concluded that the eFoils were stable. (D.I. 241 at 423:10-424:15).

The eigenvalue analysis produced at least one marginally positive sigma value for the Waydoo eFoil, indicating that the eFoils are dynamically unstable. (*Id.* at 471:22-25). Mr. Barry, however, testified that there are real-world damping effects that the analysis program did not consider. (*Id.* at 474:1-5, 474:11-16). The damping effects, if considered, would result in lesser sigma values than the program would indicate. (*Id.* at 471:6-10). Mr. Barry did not quantify the damping effects, but provided testimony that the damping effects would be "very large." (*Id.* at 476:6-17). Mr. Barry concluded the eigenvalue analysis supported his dynamic stability conclusion notwithstanding the one marginally positive sigma value.

Thus, the jury was free to consider Mr. Barry's testimony about the videos and his eigenvalue analysis and weigh it against the testimony of Waydoo's expert. It is not my place to determine the credibility of the witnesses. *Perkin-Elmer*, 732 F.2d at 893.

I think there is substantial evidence to support the jury's determination. Therefore, Waydoo's JMOL motion is denied.

Likewise, I find that the jury's determination that Waydoo infringed the '659 patent is not against the clear weight of the evidence. Therefore, Waydoo's motion for a new trial is denied.

### D. Damages

Waydoo contends that the jury's damages award of a reasonable royalty of $500 per board is not supported by the evidence. Waydoo contends that damages should be limited to a 2.5% royalty rate. (D.I. 236 at 20). Waydoo raises four arguments as to why the royalty rate of $500 per board is not a *reasonable* royalty. I address each one in turn.

First, Waydoo challenges the comparability of the Fliteboard Agreement, which Dr. Stec used as a comparable license agreement, because it was made under the threat of litigation and Dr. Stec did not account for such threats in his analysis. (D.I. 236 at 18). MHL counters that the Fliteboard Agreement was not the product of threats of litigation nor was it used to settle active litigation.

I addressed a similar "threat of litigation" argument in Waydoo's *Daubert* motions. (D.I. 155 at 3). When I denied Waydoo's *Daubert* motion to exclude Dr. Stec's testimony, I noted that the Fliteboard Agreement was not used to settle litigation and that Dr. Stec had a "plausible case for economic comparability." (*Id.*). The jury was free to consider Dr. Stec's testimony regarding the Fliteboard Agreement.

Second, Waydoo contends that the Fliteboard Agreement is not comparable because it included two other patents, in addition to the Asserted Patents, and Dr. Stec failed to apportion any value to those two patents in the Fliteboard Agreement. (D.I. 236 at 19). MHL contends that Dr. Stec did an apportionment analysis of the Fliteboard Agreement and concluded that the two non-asserted patents here had no value. I agree with MHL that Dr. Stec did an apportionment analysis. He testified that he apportioned no value to the two non-asserted patents as they were "thrown in" as Mr. Wagner, President of MHL Custom, informed him that those patents "didn't guide the license in any way, shape or form." (D.I. 241 at 617:16-25). Waydoo contends that Dr. Stec relied on Mr. Wagner's representation about the value of the other patents and Mr. Wagner never valued a patent before. Dr. Stec, however, clarified he relied on Mr. Wagner for his perspective of the negotiations. (*Id.* at 618:1-7). The jury was free to consider Dr. Stec's testimony.

Third, Waydoo maintains that the $500 per board royalty is not reasonable because it exceeds Waydoo's 15% profit margin (i.e., $450 per board) and, thus, would not have been the

agreed upon royalty in a hypothetical negotiation. (D.I. 236 at 19). MHL argues that the $500 per board royalty is reasonable because Mr. Ping testified, at least at one point, that Waydoo's profit margin was 35%. Even though Mr. Ping also testified that Waydoo's profit margin was 15%, MHL argues it was up to the jury to consider the inconsistent testimony to ascertain Waydoo's profit margin.

I think there is substantial evidence to support the jury's determination that $500 per board is a reasonable royalty. Mr. Ping's testimony about Waydoo's profit margin is inconsistent. At one time he indicated it was 35%. (D.I. 241 at 535:17-536:9). At another time he indicated it was 15% and the 35% value was just a goal. (D.I. 241 at 616:3-5). When a party's witness gives conflicting testimony about something that is solely within the party's knowledge, a jury will usually have a substantial basis to credit either version.  Thus, I think the jury to determine that Waydoo's profit margin is 35%.

Even if the 35% profit margin was just Waydoo's goal, however, I think a jury could still consider it when determining a reasonable royalty from a hypothetical negotiation. A hypothetical negotiation takes place on the eve of infringement. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) ("Indeed, the basic question posed in a hypothetical negotiation is: if, on the eve of infringement, a willing licensor and licensee had entered into an agreement instead of allowing infringement of the patent to take place, what would that agreement be?"). It seems reasonable to me that in a hypothetical negotiation the parties would take into account the parties' expectations, such as Waydoo's expected (or even hoped-for) 35% profit margin.

Fourth, Waydoo contends that "the percent royalty of the Fliteboard Agreement is not economically comparable to MHL's per-unit hypothetical negotiation." (D.I. 236 at 19-20). Waydoo contends that for the Fliteboard Agreement to be comparable the royalty should be

22

assessed at $157.50 per board, which is a 5.25% royalty, as used in the Fliteboard Agreement. I

addressed a similar issue in Waydoo's *Daubert* motion. (D.I. 155 at 3 ("It is about whether the

license should be evaluated on a royalty rate based on percentage of sales price or a royalty rate

based on a dollar amount per sales unit."). I determined, "It is for the jury to decide how convincing

Dr. Stec's analysis is." (*Id.*). The jury considered Dr. Stec's testimony and chose, at least to some

extent, to credit it. Therefore, I do not see this as a reason to grant Waydoo's motion for judgment

as a matter of law or a new trial.

I think there was sufficient evidence for the jury to determine a reasonable royalty to be

$500 per board. Therefore, Waydoo's JMOL motion is denied.

For the same reasons, I find the jury's award of damages is not against the clear weight of

the evidence. Therefore, Waydoo's motion for a new trial is denied.

**E. Willfulness**

Waydoo contends there is not substantial evidence that Waydoo's infringement was

willful. Waydoo argues that MHL did not present any evidence that Waydoo had the specific intent

to infringe MHL's patents. (D.I. 236 at 17). Waydoo argues that the only evidence produced at

trial were the cease-and-desist letters MHL sent Waydoo on January 31, 2019, April 9, 2019, and

April 12, 2019. (*Id.*). Waydoo disputes that it received these letters. (*Id.* at 17 n.13). Waydoo

further argues those letters are not sufficient to support a finding of willfulness because the letters,

even if received, did not provide specificity regarding the infringement (e.g., no claim charts).

(*Id.*). Waydoo argues that none of the cease-and-desist letters refer to Waydoo's Flyer ONE

product, which is the product Waydoo is currently selling.

MHL contends there is substantial evidence that infringement was willful. MHL argues

that the short amount of time between Waydoo's formation as a company and Waydoo's

development of an eFoil ready for market implies that Waydoo copied MHL. (D.I. 245 at 15).
MHL contends that the cease-and-desist letters informed Waydoo in 2019 that Waydoo was
infringing the Asserted Patents. (*Id.* at 16). MHL sent the first two letters to the email address on
Waydoo's website and the third letter via mail to Waydoo's physical address. (D.I. 240 at 344:12-
19 (Wagner)).

"Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or
intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enterprises, Inc.*, 946 F.3d
1367, 1378 (Fed. Cir. 2020) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016)).
Taking all reasonable inferences in MHL's favor, I think it is reasonable for the jury to infer that
Waydoo received the letters given that they were sent to the email address listed on Waydoo's
website.

With respect to the content of the cease-and-desist letters, I think they are specific enough
for the jury to conclude Waydoo's infringement was willful. The letters referenced the Asserted
Patents. (D.I. 240 at 342:24-343:1 (Wagner)). Mr. Wagner testified that the letters referenced the
Waydoo Flyer (*id.* at 343:2-5, 343:20-21), which was the eFoil Waydoo was marketing at the time
(D.I. 236 at 17).

Waydoo contends that the letters were not specific because they did not include a claim
chart. (D.I. 236 at 17). I do not think a claim chart is required to establish that Waydoo had
knowledge that it was infringing the Asserted Patents. I think the reference to the patents and the
product Waydoo was marketing is sufficient for the jury to infer that Waydoo knew of the
infringement.[8] *See Purewick Corp. v. Sage Prod., LLC*, 2023 WL 2734418, at *9 (D. Del. Mar.

---

[8] Waydoo appears to argue that the letters only "'assert[]' that a Waydoo eFoil infringes" the
Asserted Patents." (D.I. 236 at 17 (citing D.I. 240 at 342:14-343:5 (Wagner)). Even if the letters
only referenced a Waydoo eFoil, rather than the Flyer by name, I think that is sufficient to put

31, 2023) ("Plaintiff must show that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge." (citation and internal quotation marks omitted)), *appeal dismissed*, 2023 WL 4230367 (Fed. Cir. June 28, 2023).

I also do not think that Waydoo started marketing the Flyer One, the second-generation product, in June 2020, necessarily means Waydoo's infringement with respect to the Flyer One is not willful. Waydoo merely points to the fact that the product was not accused in the 2019 letters, which were sent before Waydoo began marketing the Flyer One. Waydoo does not point to any differences between the models that would lead one to think the Flyer One was different from the Flyer with respect to infringing the Asserted Patents. Taking all reasonable inferences in MHL's favor, I think a jury could infer that Waydoo knew the Flyer One was infringing the Asserted Patents because of its knowledge that the Flyer was infringing.

I think there is substantial evidence that Waydoo knew of the Asserted Patents and that its products infringed the Asserted Patents. Therefore, Waydoo's JMOL motion is denied.

For the same reasons, I find the jury's finding of willful infringement is not against the clear weight of the evidence. Therefore, Waydoo's motion for a new trial is denied.

## IV.   CONCLUSION

For the reasons discussed above, Waydoo's renewed JMOL motions and motions for a new trial are denied.

An appropriate order will issue.

---

Waydoo on notice as it was only marketing one eFoil at the time. (D.I. 236 at 17 (noting the Flyer ONE was not introduced until June 2020)).