## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MHL CUSTOM, INC.,<br><br>      Plaintiff,<br><br>    v.<br><br>WAYDOO USA, INC. and SHENZHEN<br>WAYDOO INTELLIGENCE<br>TECHNOLOGY CO., LTD.,<br><br>      Defendants. | Civil Action No. 21-0091-RGA |

## MEMORANDUM OPINION

Blake A. Bennett, COOCH AND TAYLOR, P.A., Wilmington, DE; Dennis D. Murrell, Robert J. Theuerkauf, Brian P. McGraw, Megan E. Gibson, MIDDLETON REUTLINGER, Louisville, KY.

    Attorneys for Plaintiff.

Kelly E. Farnan, Dorronda R. Bordley, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Edgar H. Haug, Robert E. Colletti, Mark Basanta, Roman Khasidov, HAUG PARTNERS LLP, New York, NY.

    Attorneys for Defendants.

September 7, 2023



**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me are Plaintiff MHL's post-trial motions. MHL seeks a permanent injunction (D.I. 230), attorneys' fees (D.I. 231), enhanced damages (D.I. 232), supplemental damages, ongoing damages, and pre- and post-judgment interest (D.I. 233). The motions have been fully briefed. (D.I. 235, 246, 250).

## I.    BACKGROUND

MHL filed suit against the Waydoo Defendants asserting infringement of U.S. Patent Nos. 9,359,044 (the "'044 patent") and 9,586,659 (the "'659 patent"). (D.I. 1). The asserted patents relate to a weight-shift controlled personal hydrofoil watercraft, often referred to as an eFoil. The asserted patents share a common specification.

I held a jury trial from March 24-31, 2023, on claims 1-2, 5, and 6 of the '044 patent and claims 1-2 of the '659 patent. The jury found the asserted claims to be valid and infringed, the infringement was willful, and MHL was entitled to a reasonable royalty of $500 per board (totaling $1,334,000 in damages). (D.I. 219). The parties have now filed post-trial motions.[1] MHL requests the following: (1) a permanent injunction; (2) supplemental damages and/or ongoing damages; (3) pre- and post-judgment interest; (4) enhanced damages; and (5) attorneys' fees. (D.I. 235 at 1-2).

## II.   PERMANENT INJUNCTION

### A.  Legal Standard

Courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v.*

---

[1] Waydoo's post-trial motions are addressed in a separate opinion. (D.I. 257).

*MercExchange, LLC*, 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

"The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008).

### B. Analysis

#### 1. Judicial Estoppel

As an initial matter, Waydoo argues that the doctrine of judicial estoppel should prevent MHL from obtaining a permanent injunction. Waydoo cites MHL's closing argument when MHL said, "MHL's not trying to put Waydoo out of business, but is asking for fair compensation for their use of these patents. Just like Fliteboard is paying a fair compensation for the use of the patents." (D.I. 244 at 1126:19-22). Waydoo contends this statement amounts "to telling the jury [MHL] was not seeking [an injunction]." (D.I. 246 at 2). Waydoo argues MHL should be estopped from seeking a permanent injunction now because "[a] permanent injunction would, of course, put Waydoo out of business in the U.S." (*Id.*).

MHL argues that judicial estoppel is inappropriate. MHL contends that it never told the jury it was not seeking a permanent injunction and that the statement in its closing argument is not "irreconcilably inconsistent" with its motion seeking a permanent injunction now. (D.I. 250 at 2-3).

The doctrine of judicial estoppel bars a party that has previously asserted a legal position from asserting an inconsistent or contrary legal position in a later proceeding. *Oneida Motor*

*Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). The equitable remedy of judicial estoppel is applied to preserve the integrity of the system. Its focus is on the relationship between the litigant and the judicial system. *Id.* The elements of judicial estoppel are: (1) the party to be estopped is taking two irreconcilably inconsistent positions; (2) the party to be estopped has changed his or her position in bad faith; and (3) the use of judicial estoppel is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done. *See Montrose Med. Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001).

I agree with MHL that judicial estoppel is inappropriate here. The statements in MHL's closing argument came in the context of discussing what a reasonable royalty would be. (*See* D.I. 244 at 1125:23-1127:13). MHL was asking for a royalty rate of $550 per board, which is approximately the same amount Fliteboard was paying per board.[2] I do not think the statement, "MHL's not trying to put Waydoo out of business," amounts to a declaration that MHL was not seeking a permanent injunction. The issue of injunctive relief was not before the jury. (D.I. 212 at 6 ("The Court held that MHL shall not present any evidence to the jury related to its claims for fees, costs, or an injunction")). Therefore, I find that neither this statement, nor the comparison with Fliteboard, is irreconcilably inconsistent with seeking a permanent injunction.

Thus, I find the judicial estoppel does not apply here.

### 2. Irreparable Injury

"To prove irreparable injury, a patentee must show '1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to

---

[2] The Fliteboard Agreement used a royalty rate that was a percentage of the sale price, rather than a flat dollar amount per board. (D.I. 241 at 556:13-14 (Stec)). Based on Fliteboard's sales price, the dollar amount per board was approximately $550. (*See* D.I. 241 at 557:19-558:2, 559:14-560:3 (Stec)).

the alleged infringement.'" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1383 (Fed. Cir. 2017) (cleaned up) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)). "To determine whether the patentee will suffer irreparable harm absent an injunction, the court may consider factors such as the nature of competition between the patentee and the infringer, the willingness of a patentee to license, and any lost sales the patentee has proven." *Presidio Components*, 875 F.3d at 1383.

### a.    Nature of Competition

Direct competition strongly suggests the potential for irreparable harm absent an injunction. *Id.* at 1363 (vacating denial of a permanent injunction based on finding no irreparable injury because the record showed "direct and substantial competition between the parties"); *see also Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."). A patentee may establish irreparable harm by showing "that [the parties] were competitors and that [the patentee] lost market share while [the infringer] gained it." *See Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1338 (Fed. Cir. 2013) (upholding the district court's grant of a permanent injunction).

MHL argues that MHL and Waydoo are direct competitors and that MHL will be irreparably harmed by losing market share to Waydoo. (D.I. 235 at 3-5). MHL points out that Waydoo and MHL, at one time, had the same distributor and MHL retailers have stated they have lost sales to Waydoo. (*Id.* at 4). MHL contends that they have lost, and will continue lose, market

share to Waydoo. From 2018 to 2022, MHL's market share decreased from 100%[3] to 55%, and Waydoo's market share grew from 0% to 10-15%. (*See* D.I. 240 at 340:25-341:16 (Wagner)).

Waydoo contends that MHL and Waydoo are not direct competitors. Waydoo argues the two parties cannot be direct competitors as they "occupy different market segments because they sell eFoils at different price points." (D.I. 246 at 4). Waydoo argues the evidence regarding competition is lacking as only one distributor, Mr. Tamayo, is alleged to have represented that he lost MHL sales to Waydoo. (*Id.* at 5).

I find MHL and Waydoo are direct competitors. Mr. Wade, the North American distributor of Waydoo eFoils (D.I. 242 at 687:6-7), admitted there was some overlap in the market between the two companies. (*See id.* at 715:24-716:9 (Wade) (testifying both companies sell eFoils and there is "certainly some overlaps" between them in the market)). While Mr. Wade tried to distinguish the two companies' products by price point by analogizing Waydoo to selling Honda Civics and MHL to selling Ferraris (*id.* at 716:7-9 (Wade)), I do not think the different price points means they are not direct competitors. *See Douglas Dynamics*, 717 F.3d at 1344 (finding irreparable harm when analogizing patentee's product to a Mercedes and infringer's product to a Ford). I think what matters here is that MHL and Waydoo both market similar products through similar distribution channels and sellers with similar end users in mind. Therefore, I think the parties are direct competitors, which weighs in favor of MHL suffering an irreparable harm absent an injunction.

### b. Willingness of Patentee to License

MHL has licensed the asserted patents to other competitors in the market, including Fliteboard, which has a larger market share than Waydoo. (D.I. 240 at 206:19-207:4 (Leason); *id.*

---

[3] At that time, MHL was the only manufacturer of eFoils.

at 340:25-341:16 (Wagner)). Mr. Leason, MHL's CEO, testified that MHL is open and willing to license the asserted patents to competitors. (*Id.* at 207:23-25 ("But, ultimately we agreed that a rising tide can raise all boats, right, and there was not much of a market."); 208:5-7 ("And so, it's perfectly fine to have a competitor out there. In fact, it makes you a better brand, you know, when you have somebody to compete with."); 212:6-7 ("I've always left that door open for the competitors.")). Mr. Leason's statements indicate that MHL would not suffer an irreparable harm by having Waydoo compete in the market.

MHL argues that licensing the asserted patents to other competitors in the market should not weigh against a permanent injunction because MHL only licensed to parties that "did not force MHL to spend significant money to litigate over the course of many years" and the parties "respected MHL's intellectual property and did the right thing." (D.I. 250 at 4).

I do not think the fact that MHL has only licensed to companies that MHL did not sue is a relevant distinction. To the contrary, I would think MHL's willingness to license the patents without requiring litigation would be evidence that licensing the patents is not an irreparable harm. "Litigation costs are undoubtedly undesirable and may take funds away from other endeavors, but they are not an irreparable harm in the injunction calculus." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012). While MHL may justifiably feel that Waydoo disrespected its intellectual property, that is not an irreparable harm.

Therefore, I think MHL's willingness to license its patents, and the fact that it has licensed its patents to a bigger competitor in the market, weighs against finding that MHL would suffer an irreparable harm absent an injunction.

7

### c.    Lost Sales

MHL argues that it has and will lose sales to Waydoo. I do not think MHL has carried its burden in showing this. At trial, the jury awarded damages in the form of a reasonable royalty, not lost sales. (D.I. 219 at 4-5).[4] The only evidence MHL cites regarding lost sales is (1) its termination of its relationship with MacKite, a distributor, and (2) a statement Mr. Tamayo, another distributor, made to Dr. Stec. (D.I. 235 at 4).

MHL, however, chose to terminate its relationship with MacKite because MacKite started carrying Waydoo eFoils. (D.I. 241 at 569:5-11 (Stec)). I do not think MHL's decision to terminate its relationship with MacKite, as opposed to MacKite dropping MHL, is enough to show that it lost sales due to Waydoo infringing the asserted patents. There is also no evidence to quantify the number of sales MHL would have had if that relationship still existed. Likewise, the statement from Mr. Tamayo to Dr. Stec did not detail or quantify the number of sales MHL allegedly lost to Waydoo. (D.I. 241 at 626:22-627:24 (Stec)). Such allegations are not sufficient to demonstrate irreparable harm through lost sales.

MHL argues that it has lost, and will continue to lose, market share to Waydoo. MHL cites the growth of Waydoo's market share over the past four years and MHL's loss of market share over that same time as evidence. (D.I. 235 at 4). I am not persuaded. As MHL concedes, during that same time Fliteboard entered the market and has grown to occupy 25-30% of the market. The absence of a two-player market does not automatically negate irreparable harm, *Robert Bosch LLC, v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011), but it is still MHL's burden to show that Waydoo's infringement caused MHL's loss in market share. "As [MHL] and [Waydoo] are not the only competitors in this multi-supplier market, [Waydoo's] infringement has not necessarily

---

[4] MHL did not pursue a damages theory based on lost sales. (*See* D.I. 211, Ex. 3 at 10).

affected [MHL's] market position." *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 802 F. Supp. 2d 555, 577 (D. Del. 2011); *see also Wonderland Switzerland AG v. Evenflo Co., Inc.*, 2022 WL 2438750, at *3 (D. Del. July 5, 2022) (finding plaintiff did not show defendant's infringement caused plaintiff to lose market share when there were many additional competitors), *appeal docketed*, No. 23-1947 (Fed. Cir. July 27, 2023). Given that Waydoo markets its products at a significantly lower price point than MHL (D.I. 243 at 716:1-7 (noting there is about a $2000 difference between the cheapest MHL product and the most expensive Waydoo product) (Kline)), I do not think a sale made by Waydoo is automatically a sale lost by MHL.

Furthermore, even if MHL has lost some market share to Waydoo, MHL has lost a more substantial portion of the market to Fliteboard, one of its own licensees. As such, I do not think losing a smaller portion of the market to Waydoo is necessarily an irreparable harm.

Therefore, I do not think that MHL has met its burden in showing that Waydoo's infringement has caused MHL to lose market share or sales such that MHL would suffer an irreparable harm.

### 3. Remedies Available at Law

MHL raises two arguments for why remedies at law are inadequate. First, MHL argues it will continue to lose market share to Waydoo and money alone cannot compensate it for this loss. I disagree for the same reasons that I find MHL will not suffer an irreparable harm.

Second, MHL argues that an ongoing royalty is not an adequate remedy because Waydoo's accounting records are unreliable. MHL cites inconsistencies in Waydoo's accounting of the number of eFoils it sold and Mr. Ping's testimony that Waydoo's accounting records were "not very good." (D.I. 235 at 5-6, 6 n.2). I am not persuaded this makes damages an inadequate remedy. Mr. Ping testified there were accounting issues from 2018-2020. (D.I. 242 at 685:23-686:1). The

accounting issues appear to have ceased in 2020, three years ago. MHL does not cite anything to indicate these issues are ongoing or will emerge in the future. Therefore, I find that MHL has not shown that damages are inadequate to compensate for Waydoo's infringement.

### 4. Balance of Hardships and Public Interest

Given my conclusions regarding irreparable harm and the remedies available at law, I need not make any findings concerning the balance of hardships and public interest factors.

MHL's motion for a permanent injunction is denied.

## C. SUPPLEMENTAL DAMAGES

The jury's award covered infringement up through December 31, 2022, the most recent date for which Waydoo had produced sales and financial records. (D.I. 235 at 9). MHL seeks supplemental damages at the $500 per board royalty determined by the jury for the period from January 1, 2023, to the entry of the permanent injunction. (*Id.*). I, however, have denied MHL's motion for a permanent injunction. Given that MHL has moved for ongoing royalties at the jury-determined royalty rate, I take MHL to be arguing for supplemental damages up until the date of judgment in the event I do not grant a permanent injunction or grant ongoing royalties.

Waydoo argues that MHL waived its ability to request supplemental damages by not presenting the issue to the jury. (D.I. 246 at 9). Waydoo further contends that awarding supplemental damages would violate its Seventh Amendment right to a jury trial. (*Id.*). Waydoo does not argue that MHL had any accounting by way of discovery from Waydoo of the eFoils sold after December 31, 2022. (*See id.* at 9-11).

I find that MHL is entitled to supplemental damages. First, awarding MHL supplemental damages does not violate Waydoo's Seventh Amendment right to a jury trial. "[T]he amount of supplemental damages following a jury verdict is a matter committed to the sound discretion of

the district court." *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1384 (Fed. Cir. 2013) (rejecting defendants' argument that they had a right to a jury trial with respect to plaintiff's claim for supplemental damages); *see also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 986-87 (Fed. Cir. 2021) (rejecting Seventh Amendment argument to find "the district court acted within its discretion in awarding supplemental damages" when it calculated pre-verdict supplemental damages by applying the jury's royalty rate to the actual infringing sales base).

Second, I do not think MHL waived its right to supplemental damages. In its reply brief, MHL cites its statement of legal issues for trial in the pretrial order, which recites,

> In addition, in the event that [MHL] prevails at trial, it will seek injunctive relief against further infringement and additional damages and/or an accounting for royalties accruing as a result of [Waydoo's] continuing infringement after September of 2022, the most recent date for which [Waydoo] ha[s] produced financial information in this case.

(D.I. 206-3, Ex. 3 at 11).[5] This issue was preserved in the pre-trial order. Since MHL was not seeking lump sum damages, I think MHL had no basis to ask for reasonable royalty damages for a time period for which, due to recency, it could not possibly present a royalty base. MHL has not waived its right to supplemental damages simply because the issue was not presented to the jury.

Therefore, I find that MHL is entitled to supplemental damages from January 1, 2023, to April 12, 2023, the date of the judgment (D.I. 226).

### D. ONGOING DAMAGES

Waydoo argues that MHL waived its ability to request ongoing damages by not presenting the issue to the jury. Waydoo contends that awarding ongoing damages would violate its Seventh Amendment right to have a jury decide damages. I disagree.

---

[5] It appears that shortly before trial Waydoo provided an update on what it had sold from August 2022 to December 2022. (D.I. 637:22-638:7 (Stec)). I assume that is why the pre-trial order differs from the trial testimony.

As noted above, this issue was included in the pre-trial order. (D.I. 206-3, Ex. 3 at 11). Therefore, MHL did not waive its right to ongoing damages. Furthermore, the Federal Circuit and this Court have held that "there is no Seventh Amendment right to jury trial for ongoing royalties." *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 2019 WL 1877189, at *4 (D. Del. Apr. 26, 2019) (citing *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315-16 (Fed. Cir. 2007)), *aff'd*, 967 F.3d 1380 (Fed. Cir. 2020). Therefore, I reject Waydoo's argument that it is unconstitutional to award ongoing damages.

It is within this Court's discretion to impose an ongoing royalty, but granting ongoing remedies is not automatic any time a permanent injunction is denied. *Paice*, 504 F.3d at 1314-15. While an ongoing royalty is not automatic, "the Federal Circuit has indicated that a prevailing patentee should receive compensation for any continuing infringement." *Vectura Ltd. v. GlaxoSmithKline LLC*, 2019 WL 4346502, at *6 (D. Del. Sept. 12, 2019) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 6687122, at *9 (N.D. Cal. Nov. 25, 2014)).

To determine the ongoing royalty rate, courts have used the *Georgia-Pacific* factors. "Generally, the jury's damages award is a starting point for evaluating ongoing royalties." *Apple, Inc.*, 2014 WL 6687122, at *14. In assessing ongoing royalties, I must consider (1) the "change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability," *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008), (2) "changed economic circumstances, such as changes related to the market for the patented products," *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1297 (Fed. Cir. 2018), and (3) any other "post-verdict factor" that would impact "what a hypothetical negotiation would look like after the prior infringement verdict." *Id.*

MHL argues I should award ongoing royalties at the jury-determined royalty rate: $500 per board. (D.I. 235 at 10). The only rationale MHL offers to support this is the fact that the jury's damages award is a starting point (*id.* (citing *Apple*, 2014 WL 6687122, at *14)) and that ongoing royalty rates are often higher than rates awarded at trial (*id.* (citing *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 2014 WL 1457797, at *4 (D. Del. Apr. 14, 2014)). Waydoo, however, points out a series of factual issues such as potential changes in the marketplace (e.g., new competitors, new products from MHL at lower price points, etc.), which would change the royalty on which the parties would agree. (D.I. 246 at 11).

I do not think that using the jury's royalty rate of $500 per board is appropriate just because the jury's damages award is a starting point and ongoing royalties are frequently higher. Case law advises to take into consideration "additional economic factors arising out of the imposition of an ongoing royalty." *Paice*, 504 F.3d at 1315; *see also Telcordia Techs.,* 2014 WL 1457797, at *4 ("However, the court must assess an ongoing royalty in light of relevant post-verdict economic circumstances.").

Given that an ongoing royalty only becomes a ripe issue once I deny the request for a permanent injunction, and that neither party has sufficiently addressed the relevant factors in their briefing, I am not now equipped to determine what an appropriate ongoing royalty ought to be. The Federal Circuit has advised that a prudent course of action is to first let the parties attempt to negotiate an ongoing royalty rate, and then the district court can weigh in if necessary. *Paice,* 504 F.3d at 1315. I think the parties are best positioned to negotiate a royalty. Therefore, I will dismiss MHL's motion for ongoing royalties without prejudice. The parties are directed to attempt to negotiate an ongoing royalty rate. If the parties are unable to come to an agreement, MHL is free to file another motion for ongoing royalties.

## E. PRE- AND POST-JUDGMENT INTEREST

MHL seeks pre- and post-judgment interest on its damages.

Pre-judgment interest should be awarded "absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983). Waydoo argues MHL should not be entitled to pre-judgment interest because MHL delayed filing suit by two years. (D.I. 246 at 11). Waydoo contends this two-year period is an undue delay as it caused Waydoo's damages to escalate. (*Id.* at 12 (citing *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001))). I disagree.

*Crystal Semiconductor* does not stand for the rule that a two-year delay is an undue delay. The Federal Circuit rejected such an interpretation in *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1375 (Fed. Cir. 2022). The Federal Circuit, instead, has advised that "to show that delay was undue, a defendant must, at least generally, show that it was prejudiced." *Id.* Waydoo has not presented any argument that it was prejudiced by the delay. Waydoo merely argues that its damages are higher due to the delay in filing the suit. (D.I. 246 at 12). Waydoo, however, does not contend that it would have mitigated its damages but for the delay. *Kaufman*, 34 F.4th 1375 (reversing the district court's decision to withhold pre-judgment interest when the only evidence of prejudice to the defendant was that it "could have," but not that it "would have," altered the infringing product to create a non-infringing alternative). Therefore, I find that MHL is entitled to pre-judgment interest.

MHL argues the interest rate and compounding period should be the prime rate, compounded quarterly. (D.I. 235 at 11). Waydoo does not argue for a different interest rate or

compounding period.[6] Therefore, I will award pre-judgment interest at the prime rate, compounded quarterly.[7]

Post-judgment interest is governed by 28 U.S.C. § 1961. Section 1961(a) provides, "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Waydoo has not presented any argument as to why I should not assess post-judgment interest. Accordingly, I will award MHL post-judgment interest at the Treasury bill rate as defined in § 1961(a), compounded annually.

### F. ENHANCED DAMAGES

#### 1. Legal Standard

"[T]he court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," which is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016). Enhanced damages are "not to be meted out in a typical infringement case." *Id.* at 103. A jury's finding of willful infringement is a prerequisite to the

---

[6] Waydoo disputes the amount of damages on which the interest is assessed by contending the amount of damages awarded by the jury is against the clear weight of the evidence. (D.I. 246 at 12). Waydoo raises this issue in its motion for renewed judgment as a matter of law. (D.I. 234). I denied that motion. (D.I. 257 & 258).

[7] This is what I have done for a number of cases. *See Bayer Healthcare LLC v. Baxalta Inc.*, 2019 WL 4016235, at *7 n.9 (D. Del. Aug. 26, 2019) (collecting cases), *aff'd*, 989 F.3d 964 (Fed. Cir. 2021).

enhancement of damages but is not by itself sufficient. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017).

Although not required, the court may consider the non-exclusive *Read* factors as part of its analysis. *Id.* at 1382–83 (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)). The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct. *Read*, 970 F.2d at 827.

For *Read* factor one, MHL argues there is direct evidence of copying "from the fact that Waydoo's first iteration . . . was a carbon copy of the patented product's design." (D.I. 250 at 9). MHL, however, does not cite to anything to support its assertion that the products are so alike that they must have been copied. MHL contends there is circumstantial evidence of copying based on the timeline for Waydoo forming a company and bringing its eFoil to market. (D.I. 235 at 13). I do not think this factor weighs in favor of enhancing damages. MHL essentially argues that Waydoo must have copied because there can be no other explanation for how Waydoo developed a complete eFoil ready for the market in seven months when it took MHL and Dr. Langelaan years to accomplish the same feat. (*Id.*). I do not think the record makes it more likely than not that Waydoo copied MHL's product.

For *Read* factor two, MHL argues that Waydoo did not have a good faith belief that the asserted patents were invalid or not infringed. MHL contends Waydoo's defenses are merely

"litigation-inspired" defenses. (*Id.* at 14). MHL further cites to the jury's finding of willful infringement. Waydoo contends that it had a good faith belief that the asserted patents were invalid as anticipated by the Evolo Report. (D.I. 246 at 14 (citing D.I. 246-2, Ex. 4, at 74:24-75:23)).[8] In view of the willful infringement verdict, I find this factor weighs in favor of enhancing damages.

For *Read* factor three, MHL contends that Waydoo's litigation was not reasonable because they presented arguments that "could be considered weak at best and borderline frivolous at worst." (D.I. 235 at 14). I disagree.

I do not think Waydoo's arguments were unreasonable or particularly weak. I denied MHL's motions for summary judgment that Waydoo infringed the '044 patent and that the asserted patents were not invalid as anticipated. (D.I. 154). I found genuine issues of material fact for both. MHL takes issue with the fact that Waydoo relied primarily on expert testimony for many of its arguments regarding obviousness and enablement. (D.I. 235 at 15-16). I do not think that alone makes Waydoo's arguments frivolous or its actions misconduct. I note that it is the norm in patent litigation to rely primarily upon expert testimony for such arguments.

Overall, I do not think Waydoo's conduct was unreasonable. Indeed, I think many of these issues were closer than how MHL portrays them. Therefore, I find this factor weighs against enhancing damages.

For *Read* factor four, MHL argues that Waydoo will not be jeopardized by enhancing damages as Waydoo does millions of dollars in revenue each year. Waydoo contends that MHL cites Waydoo's revenues, not its profits, and that its profits over the relevant period were approximately $900,000. (D.I. 246 at 18; D.I. 85-1 at 1024-25 of 1039). Waydoo argues that

---

[8] There was no testimony at trial about Waydoo's beliefs.

enhancing damages would jeopardize its financial well-being as the jury award ($1,334,000) by itself exceeds its profits. (D.I. 246 at 18).

This Court has looked beyond just profits when considering the fourth factor. *See TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 528 (D. Del. 2008) (considering a party's revenues and research expenditures). Even when it is shown that the defendant has not turned a profit, this factor is considered neutral. *Bio-Rad Lab'ys Inc. v. 10X Genomics, Inc.*, 2019 WL 3322322, at *10 (D. Del. July 24, 2019), *vacated on other grounds*, 967 F.3d 1353 (Fed. Cir. 2020). Waydoo has not cited any evidence to indicate that it would be jeopardized by an enhanced damages award. Given that Waydoo generates millions of dollars of revenue, has turned a profit, and may continue to sell products globally, I do not think Waydoo would be jeopardized by enhancing damages. Therefore, I find this factor slightly favors enhancing damages.

For *Read* factor five, MHL argues this case was not close as it prevailed on every issue presented to the jury. While MHL is correct that it prevailed at trial, I do not think that means this case was not close. As discussed in *Read* factor three, I do not think Waydoo's case was particularly weak. Therefore, I find this factor weighs against enhancing damages.

For *Read* factor six, MHL argues that Waydoo has been infringing for four years, including throughout this litigation. Waydoo does not address this factor. Because infringement has been ongoing for so long, I find this factor weighs in favor of enhancing damages. *See Vectura Ltd. v. GlaxoSmithKline LLC*, 2019 WL 4346502, at *4 (D. Del. Sept. 12, 2019) (finding infringement for "nearly three years, which includes a period of post-litigation infringement," favored enhancing damages).

For *Read* factor seven, MHL argues that Waydoo has not taken any remedial action. Waydoo does not address this factor. Therefore, I find this factor favors enhancement.

18

For *Read* factor eight, MHL concedes there is no motivation to harm. This factor is therefore neutral.

For *Read* factor nine, MHL argues Waydoo attempted to conceal its misconduct as Waydoo only produced one engineering report during discovery, despite Waydoo's head of research and development indicating that there were other reports. (D.I. 235 at 18). Waydoo argues that MHL is raising a discovery dispute for the first time and has not shown how it was harmed by it. (D.I. 246 at 19). Waydoo contends that it has been operating in the open (*id.*), which MHL does not dispute. Because Waydoo has been operating in the open, I find this factor weighs against enhanced damages. *See Vectura*, 2019 WL 4346502, at *5 (finding *Read* factor nine weighed against enhancement when it was not in dispute that the defendant operated in the open).

I find that MHL is not entitled to enhanced damages. The *Read* factors, on balance, do not favor enhancing damages. I do not think MHL has demonstrated that Waydoo's conduct warrants enhancing damages. Therefore, MHL's motion for enhanced damages is denied.

## G. ATTORNEYS' FEES

### 1. Legal Standard

The Patent Act provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Under the statute there are two basic requirements: (1) that the case is "exceptional" and (2) that the party seeking fees is a "prevailing party." The Supreme Court defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion,

considering the totality of the circumstances." *Id.* The Supreme Court has provided a non-exclusive list of factors for district courts to consider in deciding whether a case is exceptional, including frivolousness, deterrence, motivation, and objective unreasonableness in the factual and legal components of the suit. *Id.* at 554 n.6.

MHL refers to the same arguments it presented under the *Read* factors for enhanced damages. (D.I. 235 at 20 ("As discussed in connection with the enhanced damages argument, above, one could reasonably infer based on the result that this case was never close."); *id.* ("Finally, as to the last factor, which is the litigation behavior of [Waydoo], much of this analysis is presented above in connection with the enhanced damages request.")). As discussed above, I found this to be a close case. Waydoo did not engage in misconduct or unprofessional behavior. Therefore, MHL's motion for attorneys' fees is denied.

**III.   CONCLUSION**

For the foregoing reasons, MHL's motion for pre- and post-judgment interest is GRANTED, MHL's motion for supplemental damages is GRANTED-IN-PART and DENIED-IN-PART, MHL's motion for ongoing royalties is DISMISSED without prejudice, MHL's motion for a permanent injunction is DENIED, MHL's motion for enhanced damages is DENIED, and MHL's motion for attorneys' fees is DENIED.

An appropriate order will issue.