**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MHL CUSTOM, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>WAYDOO USA, INC. and SHENZHEN WAYDOO<br>INTELLIGENCE TECHNOLOGY CO., LTD,<br><br>                    Defendant. | C.A.  No. 21-0091-RGA |

**PLAINTIFF'S MOTION FOR ENTRY OF A PERMANENT INJUNCTION OR**
**ALTERNATIVE MOTION TO ALTER OR AMEND THE PRIOR ORDER DENYING**
**PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION**

Plaintiff, MHL Custom, Inc. ("Plaintiff"), submits this motion for entry of a permanent injunction, or alternative motion for relief from the Court's opinion and order denying the Plaintiff's prior motion for a permanent injunction, and in support thereof states as follows:

**INTRODUCTION**

Circumstances have changed significantly since this Court issued its Memorandum Opinion and Order denying Plaintiff's post-verdict motion for a permanent injunction, granting Plaintiff's motion for supplemental damages, and directing the parties to work together to negotiate an ongoing royalty rate.  On the one hand, since the post-trial rulings Defendants filed a notice of appeal with the U.S. Court of Appeals for the Federal Circuit. On the other, despite the rulings from the Court on supplemental damages and ongoing royalties, Defendants have wholly refused to cooperate with Plaintiff on any post-trial issues.

First, on the issue of supplemental damages, Plaintiff reached out to Defendants to get updated sales numbers for sales after December of 2022 (the date of the most recent financials produced before trial), and in response to this inquiry Defendants' counsel represented that

1

Defendants had made <u>no</u> sales in the U.S. after December of 2022.  However, this is impossible because Defendants' products have continuously been for sale in the U.S. through online and other retailers throughout 2023 and even as of this very filing. For example, the below images were taken from Amazon as well as retailer sites run by MacKite, Session Sports, and Green Hat Kiteboarding on January 18, 2024 – all of which indisputably depict the infringing products being sold in the United States through the very distributors (other than Amazon) which Defendants have used since first selling the infringing products in the United States.



*Amazon (1.18.24)*                                   *MacKite (1.18.24)*

*Green Hat Kiteboarding (1.18.24)*                    *Session Sports (1.18.24)*

It is also impossible because U.S. import records confirm that Defendants' infringing eFoils have been shipped into the United States in 2023, including hundreds of eFoils which were supplied by a company named HK Waydoo Co. Limited in China to Shred Services, LLC in South Carolina in February, July, and August of 2023.  The Court may recall that Shred Services is one of the distributor companies for Defendants owned and operated by Mr. Kevin Wade, who testified for

Defendants at trial.  *See* Trial Day Four, D.I. 242, 687:3-11 ("I own a company by the name of

Shred Services, and I use that to distribute Waydoo eFoils.").  The following image is an excerpt

from the import records confirming that just as recently as August of 2023, all of the parts for a

full Waydoo Flyer One eFoil were being imported to Shred Services in the United States:

| Date | 18-Aug-2023 |
| --- | --- |
| Hs Code | 701720 |
| Product Details | DG CARGO:UN3480 CLASS NO.9POWERFLIGHT BATTERY139CARTONS/2196.2KGS/5.48CBMNON-DG:EPP FOAM BOARD EXPLORER POWER KIT PLUS PATROLLER POWER KIT PLUS EXPLORER WING PATROLLER WING STABILIZER WING 307CARTONS/4407.01KGS/49.26CBM |
| Weight In KG | 6603 |
| Qty / Unit | 446 |

When Plaintiff reached out to Defendants' counsel and presented the evidence of continued

sales in the U.S. and asked for an explanation in light of counsel's prior representation that

Defendants were no longer selling products in the U.S., no explanation was ever given. Despite

repeated inquiries by Plaintiff over the course of months, all Plaintiff heard in response were

statements from Defendants' counsel that they had not yet received any information from their

client on the issue.

Second, Plaintiff on multiple occasions reached out to Defendants to discuss the possibility

of coming to an agreement on a continuing royalty rate for any sale of the infringing products by

Defendants moving forward.  While Defendants' counsel expressed willingness to engage in such

discussions, the discussions never took place and, again, Defendants' counsel represented that they

had not been able to receive any information from their client on the issue.

Defendants' lack of cooperation has put Plaintiff in a difficult position given the Court's

previous denial of its motion for a permanent injunction. Defendants continue to sell infringing

products unfettered, are refusing to disclose sales information and are refusing to engage in discussions about an ongoing royalty rate. As a direct competitor found to have willfully infringed Plaintiff's patents, and who is now refusing to account to Plaintiff for the continued sales and/or refusing to work with Plaintiff as to a license moving forward, Defendants should be permanently enjoined from any sale of the infringing products in the United States. To hold otherwise, under the present circumstances, would result in rewarding a willful infringer and punishing a patent owner who obtained a jury verdict and judgment of infringement. To hold otherwise would place undue burdens on Plaintiff in trying to collect records and royalties from a foreign defendant and would result in irreparable harm in the form of loss of market share. To hold otherwise would leave Plaintiff without a remedy of any kind for Defendants' willful infringement. A permanent injunction is necessary here to protect Plaintiff, the Jury's verdict, and this Court's judgment. For these reasons, more fully articulated below, the Court should grant Plaintiff's motion for a permanent injunction.

## STATEMENT OF RELEVANT FACTS

On March 31, 2023, following a six (6) day trial, the jury rendered a verdict finding that Defendants, Waydoo USA Inc. and Shenzhen Waydoo Intelligence Technology Co., Ltd. ("Defendants") willfully infringed Plaintiff's U.S. Patent Nos. 9,359,044 (the "044 patent") and 9,586,659 (the "'659 patent"). *See* Trial Verdict, D.I. 222. The jury further found against Defendants on all of their non-infringement and invalidity defenses and counterclaims and determined that Plaintiff was entitled to recover from Defendants monetary damages in the form of a reasonable royalty of $500 per infringing unit sold. *Id*. The Court entered the trial verdict of record on April 4, 2023. *Id*.

Following the verdict, both parties filed extensive post-trial motions. Plaintiff filed motions for (1) entry of a permanent injunction, (2) supplemental damages and/or ongoing damages; (3) pre and post-judgment interest; (4) enhanced damages, and (5) attorney's fees. *See generally* Plaintiff's Opening Brief, D.I. 235 (filed under seal). In support of its motion for entry of a permanent injunction, Plaintiff argued that Defendants should be enjoined from any further manufacture, use, sale, offer for sale or importation of infringing products in the United States because such further infringement would result in irreparable harm in the form of loss of market share. *Id*., pp. 3-5. In addition, Plaintiff argued that it could not be adequately compensated through damages in the form of a continued royalty because requiring Plaintiff to maintain a continuing licensing relationship with Defendants was fraught with many issues including, primarily, being forced to rely on Defendants' accounting records, which had proven to be nebulous based on the evidence produced during the case (and as presented at trial). *Id*., pp. 5-6. *See also* Plaintiff's Reply Brief, D.I. 250, p. 4 (filed under seal).

The Court issued rulings on the parties' post-trial motions on September 7, 2023. Through its corresponding Memorandum Opinion and Order of that same day, the Court denied Plaintiff's motion for a permanent injunction. *See* D.I. 259, p. 10, PageID 16599. In so ruling, the Court held that MHL did not meet its burden to show that Defendants' infringement would result in Plaintiff suffering irreparable harm and/or that a continuing royalty would be inadequate to compensate Plaintiff for the infringement. *Id*., pp. 9-10, PageID 16598-99. The Court did, however, grant Plaintiff's motion for supplemental damages. *Id*., pp. 10-11, PageID 16599-600. The Court held that Plaintiff was entitled to supplemental damages in the form of royalties at $500 per product sold – the amount awarded by the jury for prior sales – from January 1, 2023 to April 12, 2023 (the date of the judgment). DI 259, p. 11, PageID 16600. As for Plaintiff's motion for

ongoing damages, the Court held that neither party sufficiently addressed the relevant factors for determining an ongoing royalty rate in their briefing, that the Court was not equipped to determine an appropriate royalty amount, and that the parties were best positioned to negotiate a royalty rate. *Id*., p. 13, PageID 16602. Under this reasoning, the Court denied Plaintiff's motion for ongoing damages, <u>without prejudice</u>, inviting Plaintiff to file a second motion for ongoing damages after the parties had attempted to come to an agreement on royalties. *Id*.

Defendants filed their notice of appeal to the U.S. Court of Appeals for the Federal Circuit on October 12, 2023. *See* D.I. 1, Federal Circuit Docket for Case No. 24-1036. The appeal is pending, and current counsel for Defendants, Haug Partners LLP ("Haug Partners"), filed a motion seeking permission from the Federal Circuit for it to withdraw as counsel for Defendants. *See* D.I. 21-1, Federal Circuit Docket. That motion was granted on January 18, 2024, and Defendants were given 60 days to find replacement counsel or face dismissal of the appeal. *See* D.I. 25, Federal Circuit Docket.

Per the Court's instructions related to supplemental and ongoing damages, counsel for Plaintiff first reached out to counsel for Defendants on October 6, 2023, asking for Defendants' updated sales information in order to calculate supplemental damages and inviting discussion as to a proposed ongoing royalty rate. *See* 10.6.23 email, attached as **<u>Exhibit 1</u>**. Counsel for Defendants responded a few days later indicating that they had reached out to Defendants and expected to receive and produce their supplemental sales data and confirmed counsel's willingness to engage in discussions concerning the ongoing royalty rate. However, by October 20, Plaintiff had still not received any updated sales information from Defendants. As a result, Plaintiff's counsel again followed up by email. *See* 10.20.23 email thread, attached as **<u>Exhibit 2</u>**. Defendants' counsel responded that day and indicated that they were still waiting to hear back from their client

as to the requested information. *Id*. On October 25, Defendants' counsel informed Plaintiff by email that Defendants had made <u>no</u> sales of the infringing products after January 1, 2023. *See* 10.25.23 email, attached as **<u>Exhibit 3</u>** (emphasis added).

Notwithstanding counsel's position that Defendants made no sales of the infringing products at any point after December of 2022, even as of three months *before* trial, the infringing products were in fact still being sold online and in person through a number of retailers – and are still being sold as of this filing. This included, and includes, online sales through Amazon as well as Defendants' previously identified distributors including Shred Services, MacKite Boarding, Green Hat Kiteboarding, Solimar Industries, and Elite Watersports. The sales also included, and include, direct online sales available from the Waydoo website and offline sales at retail by Camrise, LLC and Action Sports Logistics. *See* collective screenshots, attached as **<u>Exhibit 4</u>**. In addition, U.S. import records likewise show that hundreds of Waydoo Flyer One eFoils were imported into the U.S. after January 1, 2023, including shipments entering the U.S. on February 3, 2023, July 9, 2023, and August 18, 2023. *See* Import Records, attached as **<u>Exhibit 5</u>**.[1]

Plaintiff confronted Defendants' counsel with this information by email on November 13, 2023. *See* 11.13.23 email, attached as **<u>Exhibit 7</u>**. Plaintiff asked for an explanation and/or clarification from Defendants as to why it appeared that Defendants were still selling infringing products in the U.S. and to otherwise provide any specific information or materials to support counsel's representation that Defendants made no sales of infringing products in the United States after 2022. *Id*. Defendants did not respond to this email.

Having no response from Defendants, on November 27, 2023, Plaintiff's counsel again followed up by email. *See* 11.27.23 email, attached as **<u>Exhibit 8</u>**. There was again no response.

---

[1] *See* generally, Supporting Declaration of Brian McGraw, attached as **<u>Exhibit 6</u>**.

On December 1, 2023, Plaintiff's counsel sent another email to counsel for Defendants demanding a response on all outstanding post-trial inquiries, including the issue of supplemental damages and updated sales information. *See* 12.1.23 email, attached as **Exhibit 9**. Counsel for Defendants finally responded on December 4, 2023, and indicated that "despite numerous communications, we have no additional information from Waydoo to address the substance of your emails…." and "[w]e have not yet heard from Waydoo on the issues you raise." *See* 12.4.23 email, attached as **Exhibit 10**. Then again on December 8, 2023, counsel for Defendants confirmed that they had still not received any information in response to Plaintiff's inquiries. *See* 12.8.23 email, attached as **Exhibit 11**. This December 8, 2023 communication was the last communication Plaintiff received as to supplemental damages and ongoing royalties until Defendants' counsel informed Plaintiff of their intent to withdraw from the case on December 29, 2023. *See* 12.29.23 email, attached as **Exhibit 12**. Defendants' counsel filed their unopposed motion to withdraw on January 3, 2024. *See* D.I. 270. The Court set a hearing on counsel's motion to withdraw for February 6, 2024. *See* D.I. 271.

In light of Defendants' lack of communication and the apparent inconsistencies between the representation from counsel that no infringing sales have been made since December of 2022, and the evidence confirming that products were still being imported into and then sold in the U.S. through U.S. retailers, Plaintiff files the present motion seeking entry of a permanent injunction in lieu of ongoing royalties. It is apparent that Defendants have no intentions on cooperating with Plaintiff with respect to an ongoing royalty or provide information as to their U.S. sales data. It is likewise apparent that Defendants have no intentions on respecting the Jury or the Court's

decisions made following trial and through post-trial proceedings.[2] Defendants' actions, or inaction, have forced Plaintiff to file the present motion.

## **ARGUMENT**

### I.  **THE DISTRICT COURT HAS THE AUTHORITY TO ENTER A PERMANENT INJUNCTION**

As an initial matter, the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in the appeal*." *Griggs v. Provident Consumer Discount Co*., 459 U.S. 56, 58 (1982) (emphasis added). There are exceptions to this general rule.  For example, district courts retain jurisdiction to *issue orders staying, modifying, or granting injunctive relief*, to review applications for attorney's fees, to direct the filing of supersedeas bonds, to correct clerical mistakes, and to issue orders affecting the record on appeal and the granting or vacating of bail.  *See Sheet Metal Workers' Int'l Ass'n Loc. 19 v. Herre Bros.*, 198 F.3d 391, 394 (3d Cir. 1999) (emphasis added) (citing *Bensalem Township v. International Surplus Lines Ins. Co.,* 38 F.3d 1303, 1314 & n. 9 (3d Cir. 1994) (describing exceptions to general rule)). *In Genentech, Inc. v. Wellcome Found. Ltd*., 826 F. Supp. 828, 829–30 (D. Del. 1993), for example, this court held that it had jurisdiction to issue a permanent injunction in a patent infringement case, despite there being an appeal pending in the Federal Circuit, where entry of the injunction would not interfere with the appeal. While the facts of the *Genentech* case are different than those presented here, the same reasoning can be applied if the entry of a permanent injunction would not otherwise interfere with the appeal in this case. And it won't.

---

[2] It is equally unclear whether Defendants are at all interested in continuing to pursue this case (or the appeal) and whether these post-trial and appeal proceedings have been a waste of time and money for everyone involved.

Here, while the denial of Plaintiff's previous motion for permanent injunction was part of this Court's post-trial Memorandum Opinion and Order as to Plaintiff's post-trial motions – which is one of the specific orders identified by Defendants as an order they have appealed from – the denial of the permanent injunction is not a specific issue that has been identified by either party as being before the Federal Circuit on appeal.  Indeed, Plaintiff does not intend to raise the denial of the permanent injunction as an issue on appeal.  Moreover, Defendants have indicated that their appeal is limited to "claim construction decisions", "summary judgment decisions", "Daubert decisions", "and the district court's post-verdict decisions concerning judgment as a matter of law, a new trial, and other post-trial motions." *See* Docketing Statement, D.I. 7, Federal Circuit Docket. There is nothing to indicate that Defendants intend to raise the denial of the permanent injunction on appeal, nor could it raise this issue as Defendants actually won on the issue in the district court.

There is nothing to indicate that granting the present motion and issuing an injunction preventing further infringement would interfere with the appeal in any way.  For instance, should the Federal Circuit rule in Defendants' favor on any issue which would result in the reversal of any invalidity or infringement issue, the Court would have the authority to then vacate the injunction if so requested by Defendants. Should the Federal Circuit affirm in Plaintiff's favor on the infringement and validity issues, then if this court were to grant the present motion, Defendants could separately appeal the Court's decision.  Either way, this Court maintains jurisdiction now, despite the pendency of the appeal, to grant injunctive relief in favor of Plaintiff.

## II.  THE DISTRICT COURT HAS THE AUTHORITY TO ALTER OR AMEND ITS PRIOR ORDER DENYING THE MOTION FOR PERMANENT INJUNCTION

Alternatively, if the Court is concerned about the procedural propriety of entering a permanent injunction against Defendants while the appeal is pending, Federal Rule of Civil Procedure 60(b) outlines a procedure for altering or amending a prior judgment subject to the

appeal while the appeal is still pending.  Specifically, Rule 60(b) allows a party to seek relief from a final judgment on the grounds of, *inter alia*, newly discovered evidence or any reason that justifies relief.  *See* FRCP 60(b)(1-6).  When an appeal is pending, a motion made under Rule 60(b), requesting relief from judgment due to newly discovered evidence, should be filed in the district court and the district court should proceed to hear the motion.  If the district court indicates that it will grant the motion, the Court of Appeals should then be requested to remand so that the district court may grant the requested relief. *See United States v. Contents of Accts. Numbers 3034504504 & 144-07143 at Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 971 F.2d 974, 988 (3d Cir. 1992) (recognizing this procedure for determination of a Rule 60(b) motion within the Third Circuit). *See also Egger v Phillips*, 710 F.2d 292 (7th Cir. 1983) (recognizing same within the Seventh Circuit); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356 (6th Cir. 2001) (recognizing same for the Sixth Circuit); and *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55 (1st Cir. 2015) (same for the First Circuit).

To be clear, it is Plaintiff's position that the Court can act without falling back on this procedure if it concludes that it has the authority to grant injunctive relief without appellate permission.  However, if the Court were to rule there is no authority to grant a permanent injunction in light of the pendency of the appeal, then this procedure can be used to procedurally grant Plaintiff's motion once the Federal Circuit remands to allow for such relief to be granted.

### III. A PERMANENT INJUNCTION SHOULD ENTER BASED ON DEFENDANTS' REFUSAL TO COOPERATE AND TO PAY AN ONGOING ROYALTY

Plaintiff reiterates and incorporates by reference all arguments previously made in support of its post-verdict motion for entry of a permanent injunction.  *See* Opening Brief, D.I. 235, pp. 2-8, and Reply Brief, D.I. 250, pp. 1-5.  Some of those arguments are referenced herein.  Generally speaking, as a direct competitor found to have willfully infringed Plaintiff's patents, Defendants

should be permanently enjoined from any further manufacture, use, sale, offer for sale or importation of infringing products in the United States. This result would prevent Plaintiff from suffering any continued loss of market share and would prevent Plaintiff from having to deal with an untrustworthy licensee, with admittedly poor accounting records, who now refuses to provide any accounting records or cooperate with Plaintiff with respect to an ongoing royalty.  Further, the hardships weigh in favor of an injunction and an injunction would serve the public interest by rewarding and encouraging innovation.

More specifically, with respect to irreparable harm, this Court already agreed with Plaintiff and found that the parties are direct competitors and that the competition between the parties weighs in favor of Plaintiff suffering irreparable harm absent an injunction. *See* Memorandum Opinion, D.I. 259, p. 6, PageID 16595.  However, despite this direct competition, the Court held that Plaintiff's willingness to license its patents to direct competitors, as well as the perceived failure to establish any lost sales as a result of Defendants' infringement, weigh against a finding of irreparable harm, thus warranting denial of a permanent injunction. *Id*., pp. 9.

While Plaintiff's irreparable harm arguments have not changed based on the recent activities of Defendants, the irreparable harm and inadequate remedy at law arguments here are inextricably linked, and the failure of the contemplated ongoing licensing relationship between the parties would result in Plaintiff being left with no remedy for Defendants' willful infringement, much less an adequate one.  *See Id*., p. 9 ("I disagree [on remedies available at law] for the same reasons that I find that MHL will not suffer an irreparable harm."). That is, Defendants' refusal to (a) cooperate with Plaintiff, (b) provide accurate sales information and/or an explanation for why infringing products are still for sale at retail in the U.S. despite counsel's representations to the contrary, (c) engage in negotiations over an ongoing royalty rate, or (d) respond to any of Plaintiff's

post-trial inquiries, all render meaningless any proposed ongoing license between the parties. In other words, the result here should an injunction <u>not</u> issue would be that Plaintiff's direct competitor would be permitted to continue selling infringing products without restriction, and without any compensation flowing to Plaintiff for such license and sales. This result would undoubtedly be inadequate to compensate Plaintiff for the infringement and would undoubtedly result in at least some loss of market share given the direct competition between the parties. Moreover, this result would place an impossibly undue burden on Plaintiff, as the patent owner, to police Defendants' U.S. sales activity and take actions to attempt to collect on such sales and recover anything it could from Defendants in the United States in order to cover payment for the royalties that Defendants refuse to pay.

Defendants' refusal to cooperate turns the tide in Plaintiff's favor with respect to injunctive relief as it establishes both irreparable harm and inadequate remedies at law and itself warrants the issuance of a permanent injunction. A permanent injunction reflects the only way to adequately protect Plaintiff's judgment and the jury's verdict under the present circumstances.

As for the other injunction factors, Plaintiff reiterates its prior arguments that there is a causal nexus between the infringement and the harm. The asserted patents cover the product in its entirety in that the patents are directed to a personal hydrofoil watercraft. The high demand and successful sale of these products in the market, in and of itself, establishes that there is a nexus between the infringement and the harm. *See* Opening Brief, D.I. 235, pp. 4-5.

With respect to the harm to the parties and the public, Plaintiff also reiterates the general argument cited in its Opening Brief that requiring a patentee to compete against its own patented invention imposes a substantial hardship on the patentee. *Id.*, D.I. 235, p. 7, *citing Robert Bosch LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142, 1156 (Fed. Cir. 2011). Conversely, an infringer who

elects to build its business on an infringing product "cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int.'l v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir. 1986).  And finally, the public interest weighs in favor of protecting intellectual property rights and against granting a willful infringer an unfettered right to continue to willfully infringe with no repercussions and with no remedy provided to the patent owner.  To allow otherwise would stifle innovation and would disincentivize anyone from ever trying to respect the intellectual property rights of others when they know they can just continue to sell infringing products, reap significant financial benefits from those infringing sales, and not have to pay the patent owner anything in return for those infringing sales.  A permanent injunction should be granted in this case.

## **CONCLUSION**

For the reasons discussed herein, the Court should enter an order permanently enjoining Defendants from the further manufacture, use, sale, offer for sale or importation of infringing products in the United States. Alternatively, the Court should enter an order indicating that it is inclined to grant Plaintiff's motion so that Plaintiff can present that Order to the Federal Circuit to support a remand.

Dated:  January 19, 2024

COOCH AND TAYLOR, P.A.

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
The Brandywine Building
1000 N. West St., Suite 1500
Wilmington, DE 19801
(302) 984-3800
bbennett@coochtaylor.com

Dennis D. Murrell (*pro hac vice*)

14

Robert J. Theuerkauf (*pro hac vice)*
Brian P. McGraw (*pro hac vice*)
Megan E. Gibson (*pro hac vice*)
GRAY ICE HIGDON, PLCC
4600 Shelbyville Road #8022
Louisville, KY 40257
(502) 625-2739
dmurrell@grayice.com
rjt@grayice.com
bmcgraw@grayice.com
mgibson@middletonlaw.com


*Attorneys for Plaintiff MHL Custom, Inc*

### *CERTIFICATE OF SERVICE*

The undersigned certifies that this 19th day of January, 2024, a copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)

### <u>RULE 7.1.1 CERTIFICATE OF COUNSEL</u>

I hereby certify that I made reasonable efforts to reach agreement with Defendants over the contents of this Motion but no resolution could be reached.

*/s/Blake A. Bennett*

_____
ATTORNEY FOR PLAINTIFF
MHL CUSTOM, INC.

16